JAURIGUE LAW GROUP
Michael J. Jaurigue (SBN 208123)
Abigail A. Zelenski (SBN 228610)
David Zelenski (SBN 231768)
Christine M. Pham (SBN 278247)
114 North Brand Boulevard, Suite 200
Glendale, California 91203
michael@jlglawyers.com
abigail@jlglawyers.com
david@jlglawyers.com
christine@jlglawyers.com
Telephone: (818) 630-7280
Facsimile: (888) 879-1697

*Attorneys for Plaintiff John Luna*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| JOHN LUNA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SHAC, LLC dba SAPPHIRE GENTLEMEN'S CLUB, a Nevada corporation,<br><br>Defendant. | Case No. CV 14-00607 HRL<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>*Assigned to Hon. Howard R. Lloyd*<br><br>Date: May 13, 2014<br>Time: 10:00 a.m.<br>Courtroom: 2 |

***Table of Contents***

*I.* *Introduction* .... 1

*II.* *SHAC's Motion to Dismiss* .... 1

*A.* *The Allegations and Evidence Applicable to Motions to Dismiss for Lack of Personal Jurisdiction* .... 1

*1.* *The Applicable Standard of Proof* .... 1

*2.* *The Relevant Facts* .... 3

*B.* *Argument* .... 5

*1.* *The Court Has Specific Personal Jurisdiction over SHAC Under the Relevant Test* .... 5

*a.* *SHAC Purposefully Directed Its Activities at California Residents* .... 6

*b.* *Plaintiff's Claims Arise out of SHAC's Contacts* .... 8

*c.* *Exercising Jurisdiction over SHAC Is Reasonable* .... 8

*2.* *Cases Decided Under the TCPA Support the Exercise of Jurisdiction* .... 11

*III.* *SHAC's Motion to Transfer* .... 12

*IV.* *Conclusion* .... 14

## *Table of Authorities*

***Cases***

ADO Fin., AG v. McDonnell Douglas Corp.
931 F. Supp. 711 (C.D. Cal. 1996) ....................2

Asahi Metal Indus. Co., Ltd. v. Superior Court
480 U.S. 102 (1987)....................9

Baker v. Caribbean Cruise Line, Inc.
2014 WL 880634 (D. Ariz. Mar. 6, 2014) ....................11

Ballard v. Savage
65 F.3d 1495 (9th Cir. 1995) ....................8

Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.
223 F.3d 1082 (9th Cir. 2000) ....................7

Blair v. CBE Group, Inc.
2013 WL 2029155 (S.D. Cal. May 13, 2013)....................11, 12

Brainerd v. Governors of the Univ. of Alberta
873 F.2d 1257 (9th Cir. 1989) ....................5, 7

Brayton Purcell LLP v. Recordon & Recordon
606 F.3d 1124 (9th Cir. 2010) ....................2–3

Burger King Corp. v. Rudzewicz
471 U.S. 462 (1985)....................8, 9–10

Calder v. Jones
465 U.S. 783 (1984)....................6, 8

Commodity Futures Trading Comm'n v. Savage
611 F.2d 270 (9th Cir. 1979) ....................13

CoolSavings.Com, Inc. v. IQ.Commerce Corp.
53 F. Supp. 2d 1000 (N.D. Ill. 1999) ....................10–11

Crystal Cruises, Inc. v. Moteurs Leroy-Somer S.A.
2011 WL 2604886 (C.D. Cal. July 1, 2011)....................1–2

Data Disc, Inc. v. Sys. Tech. Assocs., Inc.
557 F.2d 1280 (9th Cir. 1977) ....................2

Digital Equip. Corp. v. AltaVista Tech., Inc.
960 F. Supp. 456 (D. Mass. 1997) ....................10

Doe v. Unocal Corp.
248 F.3d 915 (9th Cir. 2000) ....................2

Elecs. for Imaging, Inc. v. Coyle
340 F.3d 1344 (Fed. Cir. 2003)....................10

Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements, Ltd.
328 F.3d 1122 (9th ....................2, 5, 6, 12

Heidorn v. BDD Mktg. & Mgmt. Co., LLC
2013 WL 6571629 (N.D. Cal. Aug. 19, 2013) ....................11

Heller Fin., Inc. v. Midwhey Powder Co.
883 F.2d 1286 (7th Cir. 1989) ....................14

Holliday v. Lifestyle Lift, Inc.
2010 WL 3910143 (N.D. Cal. Oct. 5, 2010)....................6

In re Apple, Inc.
602 F.3d 909 (8th Cir. 2010) ....................13

Int'l Shoe Co. v. Washington
326 U.S. 310 (1945)....................6

Internet Doorway, Inc. v. Parks
138 F. Supp. 2d 773 (S.D. Miss. 2001)....................9

j2 Global Commc'ns, Inc. v. Blue Jay, Inc.
2009 WL 29905 (N.D. Cal. Jan. 5, 2009) ....................11

Kasey v. Molybdenum Corp. of Am.
408 F.2d 16 (9th Cir. 1969) ....................14

King v. Am. Family Mut. Ins. Co.
632 F.3d 570 (9th Cir. 2011) ....................6

Kirsch v. Cuadra
2005 WL 2677026 (N.D. Cal. Oct. 20, 2005)....................11–12

Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League
89 F.R.D. 497 (C.D. Cal. 1981) ....................13

McGee v. Int'l Life Ins. Co.
355 U.S. 220 (1957)....................10

Martensen v. Koch
942 F. Supp. 2d 983 (N.D. Cal. 2013) ....................13

Menken v. Emm
503 F.3d 1050 (9th Cir. 2007) ....................8

Patent Rights Prot. Group, LLC v. Video Gaming Techs., Inc.
603 F.3d 1364 (Fed. Cir. 2010)....................10

Provenz v. Miller
102 F.3d 1478 (9th Cir. 1996) ....................15

Rano v. Sipa Press, Inc.
987 F.2d 580 (9th Cir. 1993) ....................9

Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.
148 F.3d 1355 (Fed. Cir. 1998)....................10

Rhapsody Int'l Inv. v. Lester
2014 WL 709899 (N.D. Cal. Feb. 24, 2014) ....................2, 7

Roe v. Doe
2009 WL 1883752 (N.D. Cal. June 30, 2009)....................14–15

Satterfield v. Simon & Schuster, Inc.
569 F.3d 946 (9th Cir. 2009) ....................5

Schneider v. Hardesty
669 F.3d 693 (6th Cir. 2012) ....................7

Schwartz v. Upper Deck Co.
183 F.R.D. 672 (S.D. Cal. 1999) ....................15

Schwarzenegger v. Fred Martin Motor Co.
374 F.3d 797 (9th Cir. 2004) ....................7

Secs. Investor Prot. Corp. v. Vigman
764 F.2d 1309 (9th Cir. 1985) ....................13

Sher v. Johnson
911 F.2d 1357 (9th Cir. 1990) ....................9

Sleep Sci. Partners v. Lieberman
2009 WL 4251322 (N.D. Cal. Nov. 23, 2009) ....................7

Ticketmaster-New York, Inc. v. Alioto
26 F.3d 201 (1st Cir. 1994)....................10

Trindade v. Reach Media Corp, LLC
2013 WL 3977034 (N.D. Cal. July 31, 2013)....................12

WNS, Inc. v. Farrow
884 F.2d 200 (5th Cir. 1989) ....................2

World-Wide Volkswagen Corp. v. Woodson
444 U.S. 286 (1980)....................6

Yahoo! Inc. v. La Ligue Contre Le Racisme
433 F.3d 1199 (9th Cir. 2006) ....................7

***Statutes***

47 U.S.C. § 227....................1, 4

28 U.S.C. § 1404....................1, 12, 13

Cal. Civ. Proc. Code § 415.20 ....................15

***Rules and Regulations***

Fed. R. Civ. Proc. 4....................15

Fed. R. Civ. Proc. 12....................1, 12, 15

47 C.F.R. § 64.1200....................4–5

***Secondary Sources***

William W Schwarzer, *et al.*
California Practice Guide: Federal Civil Procedure Before Trial (The Rutter Group 2014) ....................15

## *I. Introduction.*

In this action, Plaintiff John Luna alleges that he received an advertising text message from Defendant SHAC, LLC dba Sapphire Gentlemen's Club ("SHAC") in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. He seeks to represent a Class of individuals who received such text messages from SHAC since October 16, 2013. SHAC now moves to dismiss Plaintiff's Complaint under rule 12(b)(2) of the Federal Rules of Civil Procedure on the ground that the Court lacks personal jurisdiction. In the alternative, SHAC argues that the case should be transferred under 28 U.S.C. § 1404(a) to the District of Nevada, where SHAC resides.

SHAC's boilerplate Motion fails to cite a single personal-jurisdiction case decided under the TCPA. As detailed below, the relevant cases hold that California district courts have specific personal jurisdiction over non-California residents sued under the TCPA for sending unsolicited calls or faxes to California residents, so long as the California residents received the communication while in California. Because Plaintiff received the at-issue text message—along with additional text messages from SHAC—while he was in California, the Court has specific personal jurisdiction over SHAC. SHAC's Motion therefore fails.

SHAC's tacked-on request that the matter be transferred to Nevada also fails. As explained below, in order to effect a convenience transfer under 28 U.S.C. § 1404(a), the moving party must come forward with admissible, *specific* evidence in favor of transfer. The only evidence submitted with SHAC's Motion, though, is a page-and-a-half long Declaration conclusorily stating that "all" witnesses and evidence are located in Nevada and that it would be "cost-prohibitive" for SHAC to have to litigate in California. This is inadequate, and, in the absence of the required evidence, the Motion to transfer must be denied.

## *II. SHAC's Motion to Dismiss.*

### *A. The Allegations and Evidence Applicable to Motions to Dismiss for Lack of Personal Jurisdiction.*

#### *1. The Applicable Standard of Proof.*

In evaluating personal jurisdiction, a court need only determine whether the plaintiff has *alleged* facts sufficient to confer jurisdiction over the defendant. E.g., Crystal Cruises, Inc. v. Moteurs Leroy-

Somer S.A., 2011 WL 2604886 at *2 (C.D. Cal. July 1, 2011). As with, then, a motion to dismiss for failure to state a claim, the court is supposed to assume the truth of the plaintiff's factual allegations. See id. (stating that, "[f]or purposes of a motion to dismiss [for lack of personal jurisdiction], factual allegations are taken as true").

Having said that, it is proper "when considering jurisdictional issues to look beyond the pleadings." Id. Both sides are therefore permitted to supplement the plaintiff's allegations with evidence "to assist [the court] . . . on the jurisdictional question." Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2000) (citing Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977)). Allowing such jurisdictional evidence, though, does not mean that the plaintiff is required to demonstrate the requisite jurisdictional facts by a preponderance of the evidence—particularly when a motion to dismiss is the defendant's initial response to the plaintiff's complaint. At such an early stage, "proof by a preponderance of the evidence would permit a defendant to obtain a dismissal simply by controverting the facts established by the plaintiff." Data Disc, Inc., 557 F.2d at 1285. Of course, the court will ultimately have to "determine its jurisdiction in a plenary pretrial proceeding" or at trial under the preponderance standard. Id. at 1285 n.2. But in response to a preliminary motion to dismiss, a plaintiff "is required only to establish a *prima facie* showing of jurisdictional facts." Id.

Further to this precept, where—as here—the defendant's initial response is a jurisdictional challenge to the plaintiff's complaint, any "conflicts between the [parties' respective] facts *must* be resolved" in the plaintiff's favor. Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements, Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003) (emphasis supplied) (internal quotations omitted). As a result, to the extent that the plaintiff's evidence and allegations are uncontroverted, they "are deemed true" for purposes of analyzing jurisdiction. ADO Fin., AG v. McDonnell Douglas Corp., 931 F. Supp. 711, 714 (C.D. Cal. 1996) (citing WNS, Inc. v. Farrow, 884 F.2d 200, 204 (5th Cir. 1989)). See also, e.g., Rhapsody Int'l Inv. v. Lester, 2014 WL 709899 at *3 (N.D. Cal. Feb. 24, 2014) (explaining that "[a] plaintiff need only make a *prima facie* showing of jurisdictional facts to avoid the granting of a motion to dismiss," meaning that "'[u]ncontroverted allegations in [the plaintiff's] complaint must be taken as true'" and that "'conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor'") (quoting Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1127 (9th

Cir. 2010)). In keeping with this standard, the facts set forth in the following section are taken from Plaintiff's uncontroverted allegations, the affirmative evidence submitted with SHAC's Motion (*i.e.*, the Affidavit of Peter Feinstein), and the Declarations and Request for judicial notice filed herewith by Plaintiff.

### *2. The Relevant Facts.*

SHAC is a Nevada limited-liability company with its principal place of business in Las Vegas. (Aff. of Peter Feinstein in Supp. of Def.'s Mot. to Dismiss ("Feinstein Aff.") [ECF No. 10-1] ¶ 4.) According to SHAC, it "does not currently conduct any business, maintain any employees, or operate any facilities within the State of California"; it does not own any property in California; and it does not have any California bank accounts. (Feinstein Aff. [ECF No. 10-1] ¶¶ 5, 8–9.) SHAC also claims that, since October 16, 2013, it "has not conducted any business within," and has "not advertise[d] or intentionally solicit[ed] any business from," California. (Feinstein Aff. [ECF No. 10-1] ¶¶ 6–7.)

SHAC avers, though, that it "is authorized to conduct business in the State of California." (Feinstein Aff. [ECF No. 10-1] ¶ 10.) SHAC, in fact, has a California registered agent: Jack Rifenbark. (Req. for Judicial Notice in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Req. for Judicial Notice") Ex. 1.) Both the California Secretary of State and the California State Bar list Mr. Rifenbark as having a California address, and, according to Mr. Rifenbark himself, he also serves as general counsel for Sapphire Gentlemen's Club—the dba for SHAC.[1] (Pl.'s Req. for Judicial Notice Exs. 1–2; Decl. of David Zelenski in Opp'n to Def.'s Mot. to Dismiss ("Zelenski Decl.") Ex. 1.) In addition, according to the Nevada Secretary of State, SHAC's managing member is SHAC MT LLC—itself listed as having a Los Angeles address.[2] (Pl.'s Req. for Judicial Notice Ex. 3.)

Notwithstanding SHAC's representation that it did not solicit any business from California during the relevant time period, SHAC sent an advertising text message to Plaintiff's cellular telephone on or around January 22, 2014. (Class-Action Compl. [ECF No. 1] ¶ 9; Decl. of John Luna in Opp'n to Def.'s Mot. to Dismiss ("Luna Decl.") ¶ 3.) Plaintiff resides in Santa Clara County, California, and he

---

[1] SHAC's general-counsel contact information seems to throw into question the veracity of Mr. Feinstein's claim that SHAC does not employ anyone in California.

[2] This likewise throws into question the facts set forth in Mr. Feinstein's Affidavit.

received the text message while he was in San Jose, California. (Class-Action Compl. [ECF No. 1] ¶¶ 7, 9; Luna Decl. ¶¶ 2–3.) In addition, his cellular telephone had a 408 area-code prefix—the area code associated with Santa Clara County. (Luna Decl. ¶¶ 2–3; Pl.'s Req. for Judicial Notice Ex. 4.)

The at-issue text message stated:

> -SAPPHIRE- Hosts the BIGGEST & SEXIEST UFC/SUPER SUNDAY WEEKEND IN LV! Food, Raffles , Prizes & Half Time $1 Dances. 4 more info click http://bit.ly.slvsupersun

(Class-Action Compl. [ECF No. 1] ¶ 9; Luna Decl. ¶ 3.) At no time did Plaintiff give signed, express permission to SHAC to use his cellular telephone for advertising purposes. (Class-Action Compl. [ECF No. 1] ¶ 10; Luna Decl. ¶ 3.) Plaintiff, it turns out, was not the only California resident to receive text messages from SHAC. At about the same time that Plaintiff received the above text message, for instance, Sunil Daniel received the *exact same message*—replete with the same typos—on his cellular telephone. (Decl. of Sunil Daniel in Opp'n to Def.'s Mot. to Dismiss ("Daniel Decl.") ¶ 3.) Mr. Daniel resides in Los Angeles County, California, and he received the text message while he was in California. (Daniel Decl. ¶¶ 2–3.) Similar to Plaintiff, Mr. Daniel's cellular telephone has a 310 area-code prefix—an area code associated with Los Angeles County. (Daniel Decl. ¶ 2; Pl.'s Req. for Judicial Notice Ex. 5.) Also similar to Plaintiff, Mr. Daniel never gave signed, express permission to SHAC to use his cellular telephone for advertising purposes. (Daniel Decl. ¶ 3.)

All told, Plaintiff recalls receiving approximately four or five text messages from SHAC, and Mr. Daniel recalls receiving approximately three or four. (Luna Decl. ¶ 4; Daniel Decl. ¶ 4.) According to Plaintiff, SHAC sent these messages—along with many other advertising text messages—using automated equipment or software capable of storing, producing, or dialing telephone numbers from a compiled database. (Class-Action Compl. [ECF No. 1] ¶¶ 12–13.) According to Plaintiff, the sending of these text messages violates the TCPA, which statute specifically prohibits automated calls or messages to consumers' cellular telephone numbers without the consumers' prior express written consent. See 47 U.S.C. § 227(b)(1) (stating that "[i]t shall be unlawful for any person within the United States . . . (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . (iii) to any telephone number assigned to a . . . cellular telephone service"); 47 C.F.R. § 64.1200(a)(2) (explaining

that, after October 16, 2013, "prior express consent" as used in subsection (b)(1)(A)(iii) of the TCPA has meant "prior express *written* consent") (emphasis supplied). See also Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 954 (9th Cir. 2009) (holding that a text message is a "call" within the meaning of the TCPA). Plaintiff bases this conclusion, in part, on the fact that SHAC holds itself out as "the world's largest Las Vegas Strip club." (Class-Action Compl. [ECF No. 1] ¶ 15; Zelenski Decl. Ex. 2.)

SHAC does not dispute its status as the "world's largest" club of its kind. Nor does SHAC dispute that it sent the at-issue text message—or any text messages during the relevant time period, for that matter—using automated equipment. Instead, SHAC claims only that its text messages "disseminate[d] from a static database"—whatever that means—"of customers and individuals who had first made contact with SHAC in Nevada." (Feinstein Decl. [ECF No. 10-1] ¶ 11.) Accordingly, for purposes of this Motion, it is deemed true—as alleged—that SHAC sent "thousands of similar, generic text messages[] to the cellular telephones of members of the general public using [automated] equipment." (Class-Action Compl. [ECF No. 1] ¶ 13.) Moreover, although SHAC *generally* claims that it "lack[ed] any direct knowledge of the forum states of any persons in the database wh[o] may have allegedly received text messages" (Feinstein Aff. [ECF No. 10-1] ¶ 11), the *specific* fact remains that both Plaintiff and Mr. Daniel received text messages from SHAC on their cellular telephones—cellular telephones bearing California-specific area codes—while they were in California.

***B. Argument.***

***1. The Court Has Specific Personal Jurisdiction over SHAC Under the Relevant Test.***

A district court may exercise personal jurisdiction to the full extent authorized by the law of the state in which the court sits. E.g., Harris Rutsky & Co. Ins. Servs., Inc., 328 F.3d at 1129. California's "long-arm" statute, in turn, allows a court to exercise personal jurisdiction over a defendant to the full extent of the Constitution's Due Process Clause. Id. A California district court therefore "need only determine whether personal jurisdiction . . . would meet the requirements of due process." Id. (quoting Brainerd v. Governors of the Univ. of Alberta, 873 F.2d 1257, 1258 (9th Cir. 1989)). This determination, in turn, looks at whether a defendant "'ha[s] certain minimum contacts with [California]

such that the maintenance of the suit [will] not offend "traditional notions of fair play and substantial justice."'" Harris Rutsky & Co. Ins. Servs., Inc., 328 F.3d at 1129 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

With respect to "minimum contacts," SHAC correctly notes that a plaintiff seeking to confer specific personal jurisdiction must satisfy a three-part test:

> "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable."

(Def.'s Notice of Mot. & Mot. to Dismiss ("Def.'s Mot.") [ECF No. 10] at 6:6–11 (quoting King v. Am. Family Mut. Ins. Co., 632 F.3d 570, 579–80 (9th Cir. 2011)) (emphasis removed).[3]) Plaintiff addresses each of these elements in turn.

***a. SHAC Purposefully Directed Its Activities at California Residents.***

Generally speaking, for tort actions, the purposeful-direction—as opposed to the purposeful-availment—analysis applies. E.g., Holliday v. Lifestyle Lift, Inc., 2010 WL 3910143 at *3 (N.D. Cal. Oct. 5, 2010). Here, Plaintiff's claim sounds in tort, so the purposeful-direction test is appropriate.

As SHAC correctly explains, under the purposeful-direction test, Plaintiff must "show that [SHAC] (1) committed an intentional act, which was (2) expressly aimed at [California] and (3) caused harm, the brunt of which [wa]s suffered and which [SHAC] kn[ew would] likely . . . be suffered in [California]." (Def.'s Mot. [ECF No. 10] at 6:16–19.) To the extent that Plaintiff demonstrates these three elements, local jurisdiction is *presumptively reasonable*. See Calder v. Jones, 465 U.S. 783, 790 (1984) (explaining that, when all three elements are demonstrated, the entity "must 'reasonably anticipate being haled into court'" in the forum state) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

Here, all three elements of the purposeful-direction test are met. First, SHAC unquestionably

[3] The page numbers at the bottom of SHAC's Motion do not correspond to the page numbers listed in the ECF header. All citations in this Memorandum to SHAC's Motion refer to the page numbers at the bottom of the Motion, not to the page numbers in the header.

committed an intentional act by sending advertising text messages to Plaintiff's cellular telephone. According to the Ninth Circuit, the "intentional act" prong merely refers "'to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act.'" Rhapsody Int'l, Inc., 2014 WL 709899 at *6 (quoting Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 806 (9th Cir. 2004)). Obviously, deliberately sending an advertising text message to someone is an intentional, "real-world" action—to say nothing of sending a slew of such messages to individuals across the country using automated equipment and a compiled database. SHAC, though, seems to suggest that those actions should be discounted because any text messages were sent only to those individuals "who had first made contact with SHAC in Nevada." (Def.'s Mot. [ECF No. 10] at 3:12.) That Plaintiff and putative Class Members may have somehow been responsible—through some undescribed chain of events—for initiating the contact, however, is of no moment. See Brainerd, 873 F.2d at 1259 (finding purposeful direction even though the defendant "did not initiate the contact"). Plaintiff's allegations as to the first prong of the purposeful-direction test are therefore sufficient.

The second and third elements are also easily satisfied. According to the Ninth Circuit, "express aiming" is satisfied when the intentional act is "targeted at a plaintiff whom the defendant knows to be a resident of [California]." Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1087 (9th Cir. 2000). Additionally, so long as a "'jurisdictionally sufficient amount of harm is suffered in [California],'" the alleged harm was foreseeable for purposes of personal jurisdiction. Sleep Sci. Partners v. Lieberman, 2009 WL 4251322 at *4 (N.D. Cal. Nov. 23, 2009) (quoting Yahoo! Inc. v. La Ligue Contre Le Racisme, 433 F.3d 1199, 1207 (9th Cir. 2006)). Here, SHAC's sending of text messages was, of course, "expressly aimed" at at least one California resident—Plaintiff—and it should have been obvious that Plaintiff would have received the text message while he was in California. As detailed above, SHAC sent multiple text messages to Plaintiff's cellular telephone—a telephone bearing a California-specific area code. Plaintiff, in fact, was not alone in receiving these text messages, as Mr. Daniel received the exact same message described in Plaintiff's Complaint. Like Plaintiff's telephone, Mr. Daniels' bears a California-specific area code, and both Plaintiff and Mr. Daniels received their text messages while they were in California. In any event, claiming willful ignorance of a plaintiff's location—which is the only argument that SHAC musters in its moving papers (see Def.'s Mot. [ECF

No. 10] at 6:17–7:20)—does not excuse the exercise of personal jurisdiction. See Schneider v. Hardesty, 669 F.3d 693, 700–01 (6th Cir. 2012) (explaining that "intentionally bur[ying your] head in the sand . . . cannot save [you] from being subject to jurisdiction"). Accordingly, both the second and third prongs of the purposeful-direction test are met.

***b. Plaintiff's Claims Arise out of SHAC's Contacts.***

The above analysis constitutes a *prima facie* showing that SHAC purposefully directed its text-messaging activities at Plaintiff, a California resident. The next step is for Plaintiff to demonstrate that the claim pled in his Complaint arises out of that purposeful direction.

In the Ninth Circuit, courts "rely on a 'but for' test to determine whether a particular claim arises out of forum-related activities." Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995). "The question, therefore, is this: but for [SHAC]'s contacts with . . . California, would [Plaintiff]'s claims against [SHAC] have arisen?" Id. SHAC's Motion nowhere disputes that the answer to this question is "yes," and there are no logical gymnastics required to reach that answer. Plaintiff's one and only claim, after all, is that SHAC violated the TCPA by sending him an unsolicited text message. The text message was sent to a *California telephone* and was received by a *California resident* while he was *in California*. Remove the text message itself, and the claim disappears. The but-for test is therefore satisfied.

***c. Exercising Jurisdiction over SHAC Is Reasonable.***

Plaintiff has established a *prima facie* case that SHAC purposefully directed its activities toward at least two California residents. As explained above, based on this showing, the exercise of specific personal jurisdiction is presumptively reasonable. Calder, 465 U.S. 790. As a matter of fact, because the first two prongs of the specific-jurisdiction test have been met, "the burden . . . *shifts* to [SHAC] to 'present a *compelling* case' that the exercise of jurisdiction would . . . be [un]reasonable." Menken v. Emm, 503 F.3d 1050, 1057 (9th Cir. 2007) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)) (internal quotations omitted) (emphasis supplied). SHAC has fallen woefully short of making out the requisite compelling case. In fact, the specific-personal-jurisdiction section of its Motion does not even discuss reasonableness. (See Def.'s Mot. [ECF 10] at 6:3–20 (discussing only the purposeful-direction prong of the three-part test).) Given SHAC's outright failure to include any argument on reasonableness—the very element for which it bears the burden—SHAC's Motion must be

denied.

Assuming, in any event, that SHAC had provided some argument as to reasonableness, the Ninth Circuit has explained that the mere fact that local litigation is inconvenient for a defendant—or that some other forum might be more convenient—"is not enough" to establish unreasonableness. Sher v. Johnson, 911 F.2d 1357, 1365 (9th Cir. 1990). Although it is generally the case that reasonableness is analyzed on a "sliding scale," with the amount of unreasonableness that a defendant must demonstrate being inversely related to the extent of the purposeful availment, that approach does *not* apply to purposeful communications like e-mails or, analogously, text messages. See, e.g., Internet Doorway, Inc. v. Parks, 138 F. Supp. 2d 773, 779 & n.4 (S.D. Miss. 2001) (explaining that the sliding-scale approach "is inapplicable to the case *sub judice*[,] as the alleged contact is . . . through an e-mail actively sent by [the d]efendant," and that the exercise of specific personal jurisdiction is therefore reasonable despite consisting of only "a single contact"). SHAC must therefore demonstrate "that jurisdiction in California would make the litigation 'so gravely difficult and inconvenient that [SHAC would be] at a severe disadvantage in comparison to [Plaintiff].'" Id. (quoting Burger King Corp., 471 U.S. at 478). And requiring SHAC—a United States company that is located in a state adjacent to California and that has retained counsel with a California office (see Def.'s Mot. [ECF No. 10] at 10:5–12)—to defend itself in California is not so "gravely difficult" in "this era of fax machines," e-mail, and "discount air travel."[4] Sher, 911 F.2d at 1365.

There is also no way for SHAC to premise any unreasonableness on an interest that Nevada might have in the litigation, or on principles of interstate comity or federalism. First of all, although it is true that Nevada is an alternative forum for the litigation of Plaintiff's claim, that is in no way dispositive on the purely *constitutional* jurisdictional issue. See Burger King Corp., 471 U.S. at 477 (explaining that whether an alternative forum exists is more properly considered in connection with a

[4] The "unreasonable" prong of the test typically rears its head when a foreign national is disputing personal jurisdiction. See, e.g., Asahi Metal Indus. Co., Ltd. v. Superior Court, 480 U.S. 102, 114 (1987) (holding that the defendant, headquartered in Japan, faced a "severe" burden in having to litigate in California); Rano v. Sipa Press, Inc., 987 F.2d 580, 588 (9th Cir. 1993) (explaining that "[w]e have held that litigation against an alien defendant requires a higher jurisdictional barrier than litigation against a citizen from a sister state"). Unlike in these cases, SHAC is a U.S. company, significantly reducing the "burdens" of local jurisdiction.

motion "seek[ing] a change of venue" or something "short of finding jurisdiction unconstitutional"). Moreover, when it comes to violations of federal law, "'the shared interest of the several States in furthering fundamental substantive social policies' is not implicated." Patent Rights Prot. Group, LLC v. Video Gaming Techs., Inc., 603 F.3d 1364, 1371 (Fed. Cir. 2010) (quoting Elecs. for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1352 (Fed. Cir. 2003) (quoting Burger King Corp., 471 U.S. at 477)). Here, of course, the TCPA is a federal statute, so there is no reason why a Nevada court would have a more vested interest in litigating this action vis-à-vis one in California. This is especially true in light of the fact that Plaintiff and Mr. Daniel are both California residents and that California "generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." Burger King Corp., 471 U.S. at 473 (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)).

On the whole, then, the "gestalt" analysis required for analyzing reasonableness favors Plaintiff and his choice of forum, not SHAC; at the very least, the sum of those factors does not establish the compelling case that must be made out to "tip the constitutional balance" in SHAC's favor. Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 209 (1st Cir. 1994). Indeed, SHAC deliberately chose to send text messages *en masse* to individuals across the country—an allegation that it does not dispute—including to California residents' cellular telephones without making any attempt to verify anyone's residence. Should SHAC be permitted to effectively insulate itself from liability by requiring all such individuals who are not Nevada residents to litigate only in Nevada? Of course not:

> We are dealing with specific personal jurisdiction, and [the defendant]'s forum-related conduct . . . forms the basis of the alleged infringement. Whether [the defendant]'s contacts are substantial and continuous is irrelevant. It is enough that [the defendant]'s . . . program, targeted at residents of all states, was accessed by people in [the forum state]. Both the Federal Circuit and the Supreme Court have observed that "[e]ven a single act can support jurisdiction" if it creates a "substantial connection" with the forum, and not merely an "attenuated affiliation" so long as it is directly related to the plaintiff's claim. Red Wing Shoe Co., 148 F.3d at 1359 (quoting Burger King, 471 U.S. at 475, 105 S. Ct. 2174). *It may seem unfair to subject [the defendant] to personal jurisdiction almost anywhere in the country, but to us it seems even more unfair to allow [the defendant] to introduce its program to the entire country while remaining subject to personal jurisdiction only in its home state and thus requiring [plaintiffs] from all over the country to go to [the defendant's state of residence] in order to litigate their . . . claims*. Accord Digital Equip. Corp. v. AltaVista Tech., Inc., 960 F. Supp. 456, 471 (D. Mass. 1997).

CoolSavings.Com., Inc. v. IQ.Commerce Corp., 53 F. Supp. 2d 1000, 1003 (N.D. Ill. 1999) (emphasis

supplied). SHAC's Motion to dismiss must therefore be denied.

### *2. Cases Decided Under the TCPA Support the Exercise of Jurisdiction.*

Plaintiff's analysis, it turns out, is entirely consistent with the personal-jurisdiction cases decided in the Ninth Circuit under the TCPA. For example, in j2 Global Communications, Inc. v. Blue Jay, Inc., 2009 WL 29905 (N.D. Cal. Jan. 5, 2009), the Northern District of California held that an officer of a Nevada corporation was subject to personal jurisdiction in California for his company's sending of junk faxes to a California plaintiff, in alleged violation of the TCPA. j2 Global Commc'ns, Inc., 2009 WL 29905 at *1, 10. According to the court, because the plaintiff demonstrated that the defendant's third-party advertiser had deliberately chosen to send faxes to consumers nationwide, and because the broadcasting of those faxes was the but-for cause of the TCPA claim—*i.e.*, because the first two prongs of the specific-jurisdiction test had been easily satisfied—"[t]he defendant b[ore] a 'heavy burden' of overcoming th[e] presumption" that the exercise of jurisdiction was reasonable. Id. at *10. As with Plaintiff's analysis above, because "the balance of most of the[] factors [concerning reasonableness] either favors [the plaintiff] or is neutral as to both parties, the court f[ound] that [the defendant] . . . failed to meet his burden to present a 'compelling case' rendering the exercise of jurisdiction unreasonable." Id.

More recently, in Heidorn v. BDD Marketing & Management Co., LLC, 2013 WL 6571629 (N.D. Cal. Aug. 19, 2013), the Northern District explained that, "where an out-of-state defendant contacts a plaintiff who resides in California in violation of the TCPA," those contacts are sufficient to establish the existence of specific jurisdiction, as "the defendant has directed its activities at [California] by calling the plaintiff without the plaintiff's consent, the TCPA claims arise out of that conduct, and [the] exercise of jurisdiction is not unreasonable." Heidorn, 2013 WL 6571629 at *8 (citing j2 Global Commc'ns, Inc., 2009 WL 29905 at *5–10). Similarly, in Baker v. Caribbean Cruise Line, Inc., 2014 WL 880634 (D. Ariz. Mar. 6, 2014), the court applied both j2 Global Communications, Inc. and Heidorn to conclude that the out-of-state defendant's telephone calls to the plaintiff were "sufficient to establish specific jurisdiction" under the TCPA. Baker, 2014 WL 880634 at *2.

In response, SHAC may cite the Southern District of California's decision in Blair v. CBE Group, Inc., 2013 WL 2029155 (S.D. Cal. May 13, 2013); the Northern District's decision in Kirsch v.

Cuadra, 2005 WL 2677026 (N.D. Cal. Oct. 20, 2005); or the Northern District's decision in Trindade v. Reach Media Group, LLC, 2013 WL 3977034 (N.D. Cal. July 31, 2013). Although all of these decisions look at the TCPA, none of them support SHAC. In Blair, for instance, the court concluded that venue was improper in the Southern District because the at-issue calls "were placed from Iowa" and were "*received . . . in Indiana*." Blair, 2013 WL 2029155 at *2 (emphasis supplied). Putting aside the fact that Blair looked at whether venue was proper under rule 12(b)(3)—not at personal jurisdiction under rule 12(b)(2)—Plaintiff and Mr. Daniel both received their calls while they were in California.[5] Similarly, in Kirsch, although the court declined to extend personal jurisdiction over a defendant, it did so on the ground that the "[p]laintiff . . . failed to city to any specific statement or allegation . . . either directly stating, or from which the [c]ourt could infer, that [the defendant had] directed someone to send the 18 faxes [the p]laintiff [had] received." Kirsch, 2005 WL 2677026 at *8. The same problem, in fact, arose in Trindade. See Trindade, 2013 WL 3977034 at *6 (explaining that the "factual allegations against [the defendant] state only that he entered into an agreement," not that he had himself violated the TCPA). Unlike in Kirsch and Trindade, Plaintiff has both alleged and provided a Declaration attesting that he received a text message advertising SHAC's services while he was in California. Not only that, he has presented further evidence that he received additional text messages while in California from SHAC. Moreover, Mr. Daniel has himself provided evidence that he, too, received text messages while in California from SHAC. None of this evidence is controverted, and it sufficiently distinguishes the situations in Kirsch and Trindade. Even if SHAC were to provide conflicting evidence, at this stage of the litigation, all conflicts must be resolved in Plaintiff's favor. Harris Rutsky & Co. Ins. Servs., Inc., 328 F.3d at 1129. Based on that evidence, SHAC's Motion must be denied.

***III. SHAC's Motion to Transfer.***

Separate from the personal-jurisdiction issue, SHAC makes the alternative argument that Plaintiff's case should be transferred to the District of Nevada under 28 U.S.C. § 1404(a). (Def.'s Mot. [ECF No. 10] at 7:21–8:16.) Now, as correctly stated by SHAC, 28 U.S.C. § 1404(a) permits a district

[5] Although SHAC's Motion does challenge venue on convenience grounds under 28 U.S.C. § 1404(a)—discussed below—SHAC never argues that venue is actually *improper* in the Northern District of California.

court to "'transfer any civil action to any other district or division where it might have been brought'" for the "'convenience of parties and witnesses'" and "'in the interest of justice.'" (Def.'s Mot. [ECF No. 10] at 7:23–25 (quoting 28 U.S.C. § 1404(a)).) The burden of demonstrating that convenience and justice require transfer, though, rests squarely on the moving party, here, SHAC. See, e.g., Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir. 1979) (stating that "[the defendant] had the burden to justify by particular circumstances that the transferor forum was inappropriate"); Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League, 89 F.R.D. 497, 499 (C.D. Cal. 1981) (stating that "[t]he burden of establishing that an action should be transferred is on the moving party"); Martensen v. Koch, 942 F. Supp. 2d 983, 999 (N.D. Cal. 2013) (explaining that, "[t]ypically[,] the defendant must make a strong showing that transfer is appropriate"). Because SHAC literally devotes only a single paragraph to actually analyzing venue (see Def.'s Mot. [ECF No. 10] at 8:8–16), it has failed to carry its burden under 28 U.S.C. § 1404(a). SHAC's transfer request therefore should be denied.

More specifically, SHAC ignores the starting point of any analysis under 28 U.S.C. § 1404(a): where Plaintiff has chosen to bring suit. Generally speaking, under the so-called home-turf rule, a plaintiff who has commenced litigation in the district where he or she resides is accorded a measure of deference. Compare, e.g., Secs. Investor Prot. Corp. v. Vigman, 764 F.2d 1309, 1317 (9th Cir. 1985) (explaining that "plaintiffs [have a] liberal choice in the selection of a forum" and that, "unless the balance of factors is strongly in favor of the defendants, the plaintiff's choice of forum should rarely be disturbed") (internal citations omitted), with In re Apple, Inc., 602 F.3d 909, 913 (8th Cir. 2010) (stating that a *foreign* plaintiff's choice of forum is "entitled to substantially less deference" because there is an increased risk of forum shopping). As detailed above, Plaintiff resides in the Northern District of California, which is precisely where he has filed suit. His decision to simply bring suit in the District where he resides does not qualify as forum shopping, and it should be accorded a certain level of deference.

Second, there is no competent evidence before the Court supporting SHAC's conclusory claim that "[a]ll documents, electronic data, witnesses, and other tangible information . . . are located within the State of Nevada." (Def.'s Mot. [ECF No. 10] at 8:11–13.) In this regard, a party seeking transfer

cannot rely on vague generalizations as to convenience factors; instead, the party is "obligated to clearly specify the key witnesses to be called and [to] make at least a generalized statement of what their testimony would . . . include[]." Heller Fin., Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1293 (7th Cir. 1989). Here, though, the only showing made by SHAC is a *single paragraph* in Mr. Feinstein's Declaration—a paragraph that fails to identify a single witness or a single, specific piece of evidence. (Feinstein Aff. [ECF No. 10-1] ¶ 12.) This is insufficient.

Third, SHAC fails to consider the relative interest of the Nevada district court vis-à-vis that of the within Court. Relative docket congestion is relevant to the convenience-transfer analysis, see Kasey v. Molybdenum Corp. of Am., 408 F.2d 16, 20 (9th Cir. 1969) (denying a transfer-seeking writ on the ground that the action was "moving toward conclusion" in the transferor court), and the statistics demonstrate that, on a per-Judge basis, the District of Nevada is more backed-up than the Northern District of California (see Pl.'s Req. for Judicial Notice Ex. 6). In the Northern District, for example, each Judge has 482 pending cases, while each Judge in the District of Nevada has 658 pending cases. (Pl.'s Req. for Judicial Notice Ex. 6.) Similarly, while the median civil case takes 7.8 months to resolve in the Northern District, it takes 8.6 months to resolve in the District of Nevada. (Pl.'s Req. for Judicial Notice Ex. 6.) This aspect of judicial economy, then, weighs in favor of denying SHAC's transfer request—especially in the absence of any evidence whatsoever in support of transfer. SHAC's Motion therefore must be denied.

***IV. Conclusion.***

The evidence is uncontroverted that Plaintiff received the at-issue text message on his *California* cellular telephone while he was *in California*. Indeed, both he and another California resident have received nearly ten text messages from SHAC. Plaintiff has properly chosen to commence litigation under the TCPA for these improper text messages by bringing suit in the Northern District, where he resides. Because SHAC has failed to make the requisite *compelling* case that the exercise of personal jurisdiction would be constitutionally unreasonable, and because SHAC has failed to carry *its burden* that the matter be transferred, its boilerplate Motion must be denied. The time to introduce evidence in support of such a showing has now passed. See, e.g., Roe v. Doe, 2009 WL 1883752 at *5 (N.D. Cal. June 30, 2009) (refusing to consider "new evidence raised for the first time in reply," based on the

"'well[-]accepted [principle] that [the] raising of new issues and submission of new facts in [a] reply brief is improper'") (quoting Schwartz v. Upper Deck Co., 183 F.R.D. 672, 682 (S.D. Cal. 1999) (citing Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996))). Plaintiff should be permitted to purse his claim on his "home turf" without further delay, and SHAC should therefore be ordered to file an answer to the Complaint forthwith.[6]

Dated: April 21, 2014

JAURIGUE LAW GROUP

/s/ *David Zelenski*

Michael J. Jaurigue
Abigail A. Zelenski
David Zelenski
Christine M. Pham
*Attorneys for Plaintiff*

[6] Indeed, Plaintiff notes that SHAC's Motion was filed after the due date for a responsive pleading. More specifically, Plaintiff effected substitute service on SHAC of the Summons and Complaint, as well as of all other required initiating documents, on February 21, 2014. (See generally Proof of Service [ECF No. 9].) SHAC therefore had until March 24, 2014, to answer the Complaint or to file a rule 12 motion. See William W Schwarzer, *et al.*, California Practice Guide: Federal Civil Procedure Before Trial ¶ 6:13.1–15 (The Rutter Group 2014) (explaining that, although "[a] defendant generally has 21 days after service of the summons and complaint within which to answer the complaint or file a [r]ule 12 motion[,] . . . [i]f [the] defendant is served by substitute service under California law (permitted by FRCP 4(e)(1)), service is not complete until 10 days after additional copies of the summons and complaint are mailed to [the] defendant") (internal citations omitted) (citing Cal. Civ. Proc. Code § 415.20(a)). SHAC filed nothing until April 7, 2014, while Plaintiff's counsel were in the process of preparing the required default paperwork.