IMRAN KHALIQ (SBN 232607)
**ARENT FOX LLP**
55 Second Street, 21st Floor
San Francisco, CA 94105-3470
Telephone: 415.757.5500
Facsimile: 415.757.5501
Imran.Khaliq@arentfox.com

Attorneys for Defendants
CALLFIRE, INC. AND
CLUB TEXTING, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOHN LUNA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SHAC, LLC., dba SAPPHIRE GENTLEMEN'S CLUB, a Nevada corporation; CLUB TEXTING, INC., a corporation; and CALLFIRE, INC., a corporation,<br><br>Defendants. | Case No. CV 14-00607 HRL<br><br>CLASS ACTION<br><br>**DEFENDANTS CALLFIRE, INC. AND CLUB TEXTING, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**<br><br>Date: October 21, 2014<br>Time: 10 AM<br>Courtroom: 2<br>Magistrate Judge: Howard R. Lloyd<br><br>[Filed concurrently with Declaration of Jagannathan Thinakaran and Declaration of Shahriyar Neman; Request for Judicial Notice, [Proposed] Order submitted] |

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on Tuesday, October 21, 2014 at 10 AM, or as soon as the matter may be heard before the Magistrate Judge Howard R. Lloyd in Courtroom 2 of the United States District Court for the Northern District of California, San Jose Division, located at 280 South 1st Street, San Jose, CA 95113, defendants CallFire, Inc. ("CallFire") and Club Texting, Inc. ("Club Texting")[1] will and hereby do move to dismiss as to CallFire and Club Texting the First Amended Complaint ("Complaint") brought by plaintiff John Luna ("Plaintiff") with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, to dismiss or stay the Complaint pursuant to the doctrine of primary jurisdiction. This motion is based on the grounds that Plaintiff has failed to plausibly allege that CallFire initiated the message that is the subject of the Complaint and because CallFire is a common carrier exempt from liability under the Telephone Consumer Protection Act ("TCPA").

In the alternative, the Court should either stay the entire case or dismiss CallFire without prejudice under the doctrine of primary jurisdiction. To the extent Plaintiff asks the Court to create a new standard of liability under the TCPA for common carriers that allegedly assist in the transmission of their users' messages when they passively transmit such messages, a referral is critical. Plaintiff's novel theory of liability would conflict with existing FCC precedent regarding common carriers' and fax broadcasters' immunity from TCPA claims, and risks conflicting with pending FCC action on the issue, and thus a referral to the FCC is appropriate should the Court decline to dismiss the Complaint as to CallFire for failure to state a claim.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities below, the concurrently filed Declaration of Jagannathan Thinakaran and all exhibits attached thereto, the Request for Judicial Notice and all exhibits attached thereto, all pleadings and papers on file in this action, and on such other oral and documentary evidence as may be presented at the time of hearing on the motion if requested by the Court.

---

[1] As explained more fully below, Club Texting has not been a going concern since all of its assets were acquired by CallFire in 2012. CallFire therefore operated and controlled EZTexting.com at all times relevant to the Complaint. Unless indicated otherwise, "CallFire" will be used to refer to both CallFire and Club Texting.

Dated: September 11, 2014

**ARENT FOX LLP**

By: */s/ Imran Khaliq*
IMRAN KHALIQ
Attorney for Defendants
CALLFIRE, INC. AND
CLUB TEXTING, INC.

## TABLE OF CONTENTS


STATEMENT OF THE ISSUES TO BE DECIDED .......... 1

CALLFIRE'S COMMON CARRIER SERVICES .......... 1

ARGUMENT .......... 3

I. THE COMPLAINT FAILS TO STATE A CLAIM AGAINST CALLFIRE .......... 5

A. Legal Standard For Failure To State A Claim .......... 5

B. The Allegations In The Complaint Are Insufficient To Establish That CallFire Violated The TCPA .......... 6

1. TCPA Liability Is Limited To Those Who Initiate The Call; A Common Carrier That Transmits Its Customers' Messages Does Not Initiate Them .......... 6

2. Plaintiff Does Not Allege A Plausible Right To Relief From CallFire .......... 11

II. IF THE COURT DOES NOT DISMISS CALLFIRE, THE ISSUES RELATING TO CALLFIRE SHOULD BE REFERRED TO THE FCC UNDER THE PRIMARY JURISDICTION DOCTRINE .......... 13

A. A Primary Jurisdiction Referral Is Appropriate .......... 13

B. The Court Should Stay The Entire Case Or Dismiss CallFire Without Prejudice .......... 16

CONCLUSION .......... 17

## TABLE OF AUTHORITIES

Page(s)

FEDERAL CASES

*All Am. Semiconductor, Inc. v. Peoplesoft, USA, Inc.*,
CIV No. 07-12963-BKC-LMI, 2010 WL 2854153 (Bank. S.D. Fla. July 20, 2010) ............. 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............ 5, 11

*Baltimore-Washington Tel. Co. v. Hot Leads Co., LLC*,
584 F. Supp. 2d 736 (D. Md. 2008) ............ 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............ 5

*Beyard v. Caddo Parish Comm'n*,
CIV No. 06-2296, 2007 WL 1741970 (W.D. La. Apr. 27, 2007) ............ 12

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
511 U.S. 164 (1994) ............ 12

*Charvat v. EchoStar Satellite, LLC*,
630 F.3d 459 (6th Cir. 2010) ............ 14

*Clark v. Avatar Technologies PHL, Inc.*,
CIV No. H-13-2777, 2014 WL 309079 (S.D. Tex. Jan. 28, 2014) ............ 7

*Clark v. Time Warner Cable*,
523 F.3d 1110 (9th Cir. 2008) ............ 14

*Coppes v. Wachovia Mortgage Corp.*,
2:10-CV-01689-GEB, 2010 WL 4483817 (E.D. Cal. Nov. 1, 2010) ............ 1

*Fried v. Sensia Salon, Inc.*,
CIV No. 4:13-312, 2013 WL 6195483 (S.D. Tex. Nov. 27, 2013) ............ 15, 16

*Garcia v. Seterus, Inc.*,
CIV No. 12-2049-LJO-SAB, 2013 WL 1281565 (E.D. Cal. Mar. 27, 2013) ............ 6

*Gauvin v. Trombatore*,
682 F. Supp. 1067 (N.D. Cal. 1988) ............ 5, 7

*Hurrle v. Real Time Resolutions, Inc.*,
CIV No. C13-5765-BHS, 2014 WL 670639 (W.D. Wash. Feb. 20, 2014) ............ 16

*In re Google, Inc. Privacy Policy Litigation*,
CIV No. 12-01382-PSG, 2012 WL 6738343 (N.D. Cal. Dec. 28, 2012) ............ 2

*In re Sony Gaming Networks and Customer Data Security Breach Litigation*,
903 F. Supp. 2d 942 (S.D. Cal. 2012) ............ 2

*International Audiotext Network, Inc. v. AT&T*,
62 F.3d 69 (2d Cir. 1995) ............ 2

*Kauffman v. CallFire, Inc.*,
CIV No. 3:14-1333-H-DHB, Order Granting Motion to Dismiss with Leave to Amend (ECF No. 9) (S.D. Cal. Sep. 9, 2014) ........ 4

*Lacey v. Maricopa Cnty.*,
649 F.3d 1118 (9th Cir. 2011)........ 5

*Mendez v. C-Two Group, Inc.*,
CIV No. C-13-5914-EMC, Order Granting Defendant MobileStorm's, Inc.'s Motion to Dismiss (N.D. Cal. Apr. 21, 2014) ........ 4, 7

*Pac-West Telecomm., Inc. v. MCI Commc'ns Servs., Inc.*,
No. 1:10-cv-01051, 2011 WL 1087195 (E.D. Cal. Mar. 23, 2011)........ 14

*Petrovic v. Princess Cruise Lines, LTD.*,
CIV No. 12-21588, 2012 WL 3026368 (S.D. Fla. July 20, 2012)........ 12

*Reiter v. Cooper*,
507 U.S. 258 (1993)........ 16

*Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*,
307 F.3d 775 (9th Cir. 2002)........ 13, 14

*Total Telecomms. Servs., Inc. v. Am. Tel. & Tel. Co.*,
919 F. Supp. 472 (D.D.C. 1996) ........ 14

*Unimat, Inc. v. MCI Telecomms. Corp.*,
No. 92-5941, 1992 WL 391421 (E.D. Pa. Dec. 16, 1992)........ 14

*Williams v. Gerber Prods. Co.*,
523 F.3d 934 (9th Cir. 2008)........ 5

*Wolfkiel v. Intersections Ins. Servs. Inc.*,
CIV No. 1:13-7133, Memorandum Opinion and Order (N.D. Ill. March 5, 2014) ........ 5

FEDERAL STATUTES

47 U.S.C. § 151........ 14

47 U.S.C. § 153(11) ........ 8

47 U.S.C. § 227(b) ........ 6, 14

OTHER AUTHORITIES

47 C.F.R. § 64.1200 ........ 6, 8, 9

Fed. R. Civ. P. 8........ 5, 7, 12

Fed. R. Civ. P 12(b)(6)........ 5, 16

*In the Matter of Enforcement of Prohibitions Against the Use of Common Carriers for the Transmission of Obscene Materials*
2 FCC Rcd. 2819 (1987) ........ 3, 8

*In the Matter of GroupMe, Inc./Skype Commc'ns S.A.R.L. Petition for Expedited Declaratory Ruling, Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
Declaratory Ruling, CG Docket No. 02-278 (Mar. 27, 2014) ........ 10, 11

*In the Matter of the Joint Petition filed by Dish Network, LLC, The United States of America, and the States of California, Illinois, North Carolina, and Ohio for Declaratory Ruling Concerning the Telephone Consumer Protection Act (TCPA)* 28 FCC Rcd. 6574 (2013) ........ 9, 10, 11

*In the Matter of Rules and Regulations Implementing the TCPA of 1991* 18 FCC Rcd. 14014 (2003) ........ 15

*In the Matter of Rules and Regulations Implementing the TCPA of 1991* 7 FCC Rcd. 8752 (1992) ........ 9

*Rules and Regulations Implementing the TCPA of 1991*, 68 F.R. 44144-01, 44155, 44169 (2003) ("*TCPA Rules 2003*") ........ 9, 15

S. Rep. No. 102-178, 1991 U.S.C.C.A.N. 1968 (1991) ........ 7

## MEMORANDUM OF POINTS AND AUTHORITIES

## STATEMENT OF THE ISSUES TO BE DECIDED

1. Whether the Complaint[2] states a claim against CallFire, Inc. ("CallFire"),[3] a certificated common carrier registered with the Federal Communications Commission,[4] for violating the Telephone Consumer Protection Act ("TCPA") based on the message its customer is alleged to have sent to Plaintiff when Plaintiff never alleges that CallFire had actual notice that Plaintiff allegedly did not provide consent to receive the message at issue, or that CallFire controlled the content, timing or recipient of the message allegedly received by Plaintiff.

2. Whether this case should be stayed or dismissed pursuant to the doctrine of primary jurisdiction pending a determination by the Federal Communications Commission ("FCC") as to whether a common carrier such as CallFire is exempt from TCPA liability when it does not control the content, timing, or recipients of the telephone calls its customers choose to send through CallFire's common carrier service.

## CALLFIRE'S COMMON CARRIER SERVICES

CallFire provides its customers various web-based telecommunications services that allow its customers to develop and send their own voice and text messages to recipients of the customers' choosing. Thinakaran Decl.[5] ¶ 3. Indeed, CallFire is an FCC licensed common carrier whose service enables customers to create messages and transmit them to telephone

---

[2] First Amended Complaint (ECF No. 44) ("Complaint").

[3] CallFire purchased the assets of Defendant Club Texting, Inc. ("Club Texting") prior to the occurrence of the events alleged in the Complaint. *See* Declaration of Shahriyar Neman in Support of Motion to Dismiss ¶¶ 2-4. Club Texting now exists in name only, and CallFire owns and operates all of the assets previously operated by Club Texting. *Id.* Accordingly, Club Texting should be dismissed from this case on this ground alone, but Club Texting nevertheless joins in this motion because CallFire has operated EZTexting.com at all times relevant to this Complaint. Compl. ¶ 9.

[4] Defendant's Request for Judicial Notice ("RJN"), Exhibit A *See* http://apps.fcc.gov/cgb/form499/499detail.cfm?FilerNum=829923 (last accessed September 3, 2014). The Court can and should consider CallFire's regulatory status in ruling on its Motion to Dismiss. *See, e.g., Coppes v. Wachovia Mortgage Corp.*, 2:10-CV-01689-GEB, 2010 WL 4483817 (E.D. Cal. Nov. 1, 2010) (taking judicial notice of Department of Treasury and Federal Deposit Insurance Corporation records and documents demonstrating Wachovia Mortgage's status as a federal savings bank).

[5] Declaration of Jagannathan Thinakaran in Support of Motion to Dismiss ("Thinakaran Declaration").

numbers selected solely by the customers. *Id.* ¶¶ 4-5. CallFire does not control the content, destination or timing of its customers' telephone calls. *Id.* ¶ 4; *see also* Compl. ¶ 10 ("Defendant SHAC retained the right to control – and, in fact, did control – the content of those messages, as well as to whom" the messages were transmitted). Rather, CallFire simply acts as a conduit between its customers and the downstream telecommunications carriers that deliver the messages to the ultimate recipients selected by CallFire's customers. Thinakaran Decl. ¶¶ 4-5.

Further, because CallFire is a common carrier that has no relationship with the ultimate recipients of the messages its customers choose to send, all of CallFire's customers must agree to CallFire's Terms of Service[6] in order to use CallFire's common carrier services. See Defendant's RJN; Exhibit A to Thinakaran Declaration *Id.* ¶ 7. Relevant here, CallFire's Terms of Service[7] contain the following requirements related to its customers' use of its common carrier services:

> You represent and warrant that the owners of the phone numbers you initiate messages to through the CallFire services have consented or otherwise opted-in to the receipt of such messages and broadcasts as required by any applicable law or regulation…. You agree to familiarize yourself with and abide by all applicable local, state, national and international laws and regulations and are solely responsible for all acts or omissions that occur under your account, including without limitation the content of the messages and broadcasts that you create and initiate through the CallFire Services. Without limiting the foregoing, you agree to familiarize yourself with the legalities of any messages, calls, broadcasts, and campaigns transmitted through the CallFire Services….

---

[6] The Terms of Service are attached as **Exhibit A** to the Thinakaran Declaration, and are electronically available at http://www.callfire.com/legal/terms (last accessed September 9, 2014).

[7] CallFire's Terms of Service are properly before the Court because Plaintiff put the content of CallFire's Terms of Service at issue by discussing CallFire's services and its provision of service to its customers, Compl. ¶¶ 10, 13, 14. The Terms of Service are therefore "'integral' to the Complaint, and [the Court can] consider [their] terms in deciding" CallFire's Motion to Dismiss "without converting the proceeding to one for summary judgment." *International Audiotext Network, Inc. v. AT&T*, 62 F.3d 69, 72 (2d Cir. 1995). Further, the Court can take judicial notice of a company's publicly available Terms of Service. *See In re Google, Inc. Privacy Policy Litigation*, CIV No. 12-01382-PSG, 2012 WL 6738343, at *4 (N.D. Cal. Dec. 28, 2012) (taking judicial notice of Google's prior and current Terms of Service and ruling that a district court can consider such terms "if the contract's authenticity is not contested and the complaint necessarily relies on that contract."); *see also In re Sony Gaming Networks and Customer Data Security Breach Litigation*, 903 F. Supp. 2d 942, 954 (S.D. Cal. 2012) (taking judicial notice of Sony's publicly available terms of service because their authenticity was not questioned and they were relevant to the case). Finally, there is no prohibition against including additional material referenced in a complaint to provide context for the Court to properly consider a motion for primary jurisdiction referral.

> You accept that the Services are provided for professional use only, and you agree that your use of the CallFire Sites or Services shall not include:
>
> Sending unsolicited marketing messages or broadcasts (i.e. spam). . . .[8]

CallFire's role is thus as a common carrier that receives instructions and transmits its customers' messages based on those instructions, without alteration, to downstream telecommunications carriers, after its customers initiate the messages themselves.

**ARGUMENT**

Plaintiff's Complaint should be dismissed as to CallFire because Plaintiff fails to state a TCPA claim against it. The FCC exempts common carriers from liability for their customers' transmissions. Common carriers are exempt from liability for the legality of a call unless they have a "high degree of involvement" or "actual notice" of the illegal use of their services.[9] The crux of Plaintiff's allegations as to CallFire is that CallFire assists with the transmission of its customers' messages, just as any other common carrier assists its customers with message transmission.

Dispositive here, Plaintiff alleges (1) that CallFire transmitted messages on behalf of its customer, Defendant Shac LLC ("Shac"), Compl. ¶ 10, and (2) that Defendant Shac "retained the right to control – and, in fact, did control – the content of those messages, as well as to whom Defendants CLUB TEXTING and CALLFIRE delivered the messages," *id.*, but fails to allege that CallFire had either actual notice of, or a high degree of involvement in, its customer's alleged unlawful use of its services. Plaintiff has therefore pled himself out of court as against CallFire.

Indeed, Judge Chen from this District recently dismissed a non-common carrier text-messaging platform operator from a TCPA lawsuit because the plaintiff failed to allege that this service provider was the originator or controller of the content of the messages its customer was

---

[8] *Id.* at § 3, Usage Policy.

[9] *In the Matter of Enforcement of Prohibitions Against the Use of Common Carriers for the Transmission of Obscene Materials,* 2 FCC Rcd. 2819, 2820 (1987). Skeptical of how a provider of telephone services could in fact ever be liable for illegal acts committed through those services, the FCC cited a California district court in stating that it would be "unlikely that a telephone common carrier will ever possess sufficient knowledge of an illegal use of its facilities to be held liable therefor under section 223(b)." *Id.* at 2820.

alleged to have sent through its service, or otherwise had a high degree of involvement or actual notice of the unlawful activity and failed to take steps to prevent the text transmissions. *See Mendez v. C-Two Group, Inc.*, CIV No. 13-5914-EMC, Order Granting Defendant MobileStorm Inc.'s Motion to Dismiss (ECF No. 23) (N.D. Cal. April 21, 2014). Given Plaintiff's allegations that Defendant Shac controlled its messages that it initiated through CallFire's common carrier services, Compl. ¶ 10, there are no grounds to deviate from Judge Chen's analysis in *Mendez* and similarly dismiss CallFire from this case. Further, CallFire was recently dismissed from another boilerplate TCPA complaint that contained the same conclusory allegations, also made on "information and belief," Compl. ¶ 13, that CallFire was the "sender" of its customers' messages and that its common carrier equipment used to rout its customers' messages constitutes an automatic telephone dialing system ("ATDS"). *See Kauffman v. CallFire, Inc.*, CIV No. 3:14-1333-H-DHB, Order Granting Motion to Dismiss with Leave to Amend at 4 (ECF No. 9) (S.D. Cal. Sep. 9, 2014).[10] CallFire should be dismissed from this case as well.

Alternatively, if the Court declines to dismiss the claim against CallFire entirely, it should refer the issues concerning CallFire to the FCC for resolution under the doctrine of primary jurisdiction. To the extent Plaintiff asks the Court to create a new standard of liability under the TCPA for common carriers that allegedly assist in the transmission of their users' messages when they passively transmit such messages, a referral is critical. Plaintiff's novel theory of liability would conflict with existing FCC precedent regarding common carriers' and fax broadcasters' immunity from TCPA claims, and risks conflicting with pending FCC action on the issue, and thus a referral to the FCC is appropriate should the Court decline to dismiss the Complaint entirely for failure to state a claim.

---

[10] As CallFire explained to the court in the *Kauffman* case, it is entirely implausible for a plaintiff to allege that CallFire operates an automatic telephone *dialing* system because all of the normal functions associated with dialing a telephone number occur when CallFire's customers initiate their own messages from their telephone and associated cellular network. Stated differently, if CallFire's common carrier equipment and systems used to transmit and rout its customers telephone calls can be considered an ATDS, all telephone calls would be considered autodialed and the TCPA's ATDS definition would become meaningless. Adopting Plaintiff's apparent theory that common carriers must ensure that their customers have the consent to call the people they choose to send messages to would effectively shut down the telephone industry.

## I. THE COMPLAINT FAILS TO STATE A CLAIM AGAINST CALLFIRE

### A. Legal Standard For Failure To State A Claim

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). Moreover, when considering a motion to dismiss, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555); *see also Lacey v. Maricopa Cnty.*, 649 F.3d 1118, 1136 (9th Cir. 2011) (affirming dismissal of claim where complaint failed to provide enough factual content to permit reasonable interference of unlawful conduct).

"A district court should grant a motion to dismiss if plaintiffs have not pled 'enough facts to state a claim to relief that is plausible on its face.'" *Williams v. Gerber Prods. Co.*, 523 F.3d 934, 938 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). As the Supreme Court explained, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citation omitted).

Further, in cases where there are multiple defendants, a plaintiff fails to satisfy Rule 8's requirement to plead "a short and plain statement of the claim showing that the pleader is entitled to relief" by simply lumping all of the defendants together. Fed. R. Civ. P. 8(a)(2); *see also Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (dismissing complaint because of plaintiff's failure to "allege the basis of his claim against each defendant" individually); *Wolfkiel v. Intersections Ins. Servs. Inc.*, CIV No. 1:13-7133, Memorandum Opinion and Order, at 5-6 (N.D. Ill. March 5, 2014) (dismissing TCPA claim lodged against two defendants because

of plaintiff's conclusory, yet implausible, allegations that defendants "engage in joint telemarketing efforts" without alleging any actual facts about each defendant's relationship to products that were marketed to plaintiff). Rather, a plaintiff must allege with specificity the actions of each individual defendant that gives rise to the plaintiff's claims. *See Garcia v. Seterus, Inc.*, CIV No. 12-2049-LJO-SAB, 2013 WL 1281565, at *5 (E.D. Cal. Mar. 27, 2013) (dismissing complaint because it "lumps defendants and others together and fails to distinguish adequately claims and alleged wrongs among defendants."). As shown below, despite his many lapses into undifferentiated "Defendants"-style pleading, Plaintiff has not shown that he has a *plausible* right to relief against CallFire.

## B. <u>The Allegations In The Complaint Are Insufficient To Establish That CallFire Violated The TCPA</u>

### 1. TCPA Liability Is Limited To Those Who Initiate The Call; A Common Carrier That Transmits Its Customers' Messages Does Not Initiate Them

Plaintiff's apparent theory of the case is that any entity that has some involvement in the transmission of a message, regardless of how passive that involvement is, can be held liable under the TCPA. But this novel interpretation of the TCPA conflicts with the express language of the TCPA itself, Congress' intent in enacting the TCPA, and subsequent FCC decisions. Plaintiff's allegations of CallFire's alleged role in the transmission of its customers' messages, even if true, fails to state a claim against CallFire.

An element of a TCPA claim is that the defendant *made a call*. 47 U.S.C. § 227(b)(1)(A) ("It shall be unlawful for any person within the United States . . . (A) to **make** any call. . . .") (emphasis added). The FCC has clarified in its regulations implementing the TCPA that making a call means to be the person or entity that initiates the message. *See* 47 C.F.R. § 64.1200(a)(1)(iii) (making it unlawful to "**initiate** any telephone call" via an automatic telephone dialing system to a cellular telephone service without the recipients prior express consent) (emphasis added). Here, CallFire has not initiated any calls to Plaintiff (or anyone else). Rather, CallFire is the common carrier that received the messages initiated by its customer and routed the messages based on the customer's instructions. Indeed, Plaintiff's allegations that are specific to

CallFire are that CallFire was "hired and/or retained by Defendant SHAC to send" text messages, Compl. ¶ 10, the content and recipients of which Plaintiff admits that "Defendant SHAC retained the right to control . . . and, in fact, did control[.]" *Id*.

Then, in order to get around CallFire's common carrier involvement in the messages allegedly received by Plaintiff and others, Plaintiff simply lumps all the Defendants together in his subsequent allegations without alleging each Defendant's specific role in the message flow. *See, e.g., id.* ¶¶ 11, 13, 14.

But Plaintiff's scattershot approach to pleading not only fails to satisfy Rule 8, *see Gauvin*, 682 F. Supp. at 1071, it also directly conflicts with Congress' intent in enacting the TCPA. *See* S. Rep. No. 102-178, 1991 U.S.C.C.A.N. 1968, 1997 (1991) ("The regulations concerning the use of [automatic telephone dialing systems] apply to the persons initiating the telephone call or sending the message and **do not apply to the common carrier** or other entity ***that transmits*** **the call or message and that is** ***not the originator or controller of the content of the call or message***.") (emphasis added). Contrary to Plaintiff's apparent theory, the TCPA thus does not impose liability on any entity simply because it was involved in the transmission of a message. *See Clark v. Avatar Technologies PHL, Inc.*, CIV No. H-13-2777, 2014 WL 309079, at *3 (S.D. Tex. Jan. 28, 2014) (dismissing TCPA claim with prejudice against VoIP provider accused of transmitting its co-defendant's messages because "Congress did not intend to allow secondary [TCPA] liability on telecommunications carriers based on an allegation of conspiracy" to transmit messages); *see also Mendez v. C-Two Group, Inc.*, CIV No. C-13-5914-EMC, Order Granting Defendant MobileStorm's, Inc.'s Motion to Dismiss (N.D. Cal. Apr. 21, 2014) (dismissing non-common carrier communications software platform provider from putative TCPA class action because plaintiff failed to plausibly allege defendant had high degree of involvement in messages initiated by defendant's customer or actual notice of the alleged unlawful activity). Plaintiff's failure to allege that CallFire had any involvement in creating the content or recipient list of the message allegedly received by Plaintiff is thus fatal to his claim against CallFire.

CallFire is a common carrier that simply receives instructions after its customers initiate

their messages from their own computer equipment and transmits its customers' messages, without alteration, based on those instructions to downstream telecommunications carriers for ultimate delivery to the intended recipient. Common carriers include telephone carriers such as AT&T and Verizon (and CallFire) that similarly assist in the transmission of their customers' messages.[11] Software providers include entities like "fax broadcasters."[12] When a consumer uses their cell phone to leave a voicemail on their friend's telephone, they are using the software on the operating system of the cell phone (*e.g.*, Apple's iOS or Google's Android) and the facilities of the common carrier (*e.g.*, AT&T, Verizon, Sprint, or CallFire) to send the message. Neither the software provider nor the common carrier can be said to have "made" or "initiated" the call and left the message – it is the consumer that crafted and directed the message to the selected telephone number.

Further, aside from a plain language reading of the TCPA and what Congress meant by "making" a call, the FCC exempts common carriers like CallFire from liability for their customers' messages. Common carriers are exempt from liability for the legality of a call unless they have a "high degree of involvement" or "actual notice" of the illegal use of their services.[13] Indeed, the essence of a common carrier is providing its customers with connectivity to the public switched telephone network, which is exactly the role Plaintiff ascribes to CallFire, i.e., it assists with the transmission of its customers' messages after they have initiated the messages. *See* Compl. ¶ 10. But nowhere does Plaintiff allege that CallFire had any notice its customer was allegedly sending Plaintiff an unsolicited message in violation of the TCPA.

Similarly, the FCC has held that fax broadcasters are immune from TCPA liability for their customers' allegedly illegal use of their software and services to send facsimiles unless the

---

[11] The FCC defines a "common carrier" as "any person engaged as a common carrier for hire, in interstate or foreign communication by wire or radio or interstate or foreign radio transmission of energy, except where reference is made to common carriers not subject to this chapter." 47 U.S.C. § 153(11).

[12] Under the TCPA, a "fax broadcaster" is "a person or entity that transmits messages to telephone facsimile machines on behalf of another person or entity for a fee." 47 C.F.R. § 64.1200(f)(7).

[13] *In the Matter of Enforcement of Prohibitions Against the Use of Common Carriers for the Transmission of Obscene Materials*, 2 FCC Rcd. 2819, 2820 (1987).

fax broadcaster has a high degree of involvement or actual notice that the faxes they are being paid to distribute are in fact unsolicited. Extending common-carrier immunity to fax broadcasters, the FCC stated, "[i]n the absence of 'a high degree of involvement or actual notice of an illegal use and failure to take steps to prevent such transmissions,'" "carriers who simply provide transmission facilities that are used to transmit others' unsolicited facsimile advertisements may not be held liable."[14] The same logic applies here; that this case involves text messages rather than faxes is of no moment to the underlying question of who *initiates* messages for purposes of TCPA liability.

The FCC reaffirmed this finding in 2003, reiterating that "if a common carrier is merely providing the network over which a subscriber (a fax broadcaster or other individual, business, or entity) sends an unsolicited facsimile message, that common carrier will not be liable for the facsimile."[15] Because the party who actually provides the recipients' fax numbers "is in the best position to ensure that recipients have consented to receive the faxes," that party "should be liable for violations of the prohibition." *Id.* To clarify any remaining ambiguity, the FCC defined a "facsimile broadcaster" to mean "a person or entity that transmits messages to telephone facsimile machines on behalf of another person or entity for a fee." *See* 47 C.F.R. § 64.1200(f)(7). Like telephone common carriers, absent a "high degree of involvement" or "actual notice" of any illegal uses, these facsimile broadcasters are immune from liability under the TCPA.[16] The FCC specified that a "high degree of involvement" exists when the fax broadcaster (1) controls the recipient lists; and/or (2) controls the content of the advertisements. *Id*.

More recently, the FCC released two decisions reinforcing the grounds supporting dismissal of Plaintiff's Complaint as against CallFire.[17] Although neither the TCPA nor the

---

[14] *In the Matter of Rules and Regulations Implementing the TCPA of 1991*, 7 FCC Rcd. 8752, 8779-80 (1992) (quoting 2 FCC Rcd. at 2820).

[15] *Rules and Regulations Implementing the TCPA of 1991*, 68 F.R. 44144-01, 44169 (2003) ("*TCPA Rules 2003*").

[16] *See TCPA Rules 2003*, 68 F.R. at 44169.

[17] *See In the Matter of the Joint Petition filed by Dish Network, LLC, The United States of America, and the States of California, Illinois, North Carolina, and Ohio for Declaratory Ruling Concerning the Telephone Consumer Protection Act (TCPA) Rules*, 28 FCC Rcd. 6574 (2013) ("*Dish Network Order*").

FCC's regulations define the term "initiate," in the *Dish Network Order*, the FCC clarified that "a person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call." *Id.* at 6583 ¶ 26. The FCC further held that "a seller can also be a telemarketer – e.g., when the seller initiates a call on its own behalf. And one can imagine a circumstance in which a seller is so involved in the placing of a specific telephone call as to be directly liable for initiating it – by giving the third party specific and comprehensive instructions as to the timing and the manner of the call, for example." *Id.* ¶ 27.

Further, in March of this year the FCC issued a declaratory ruling reaffirming that "the TCPA **holds *a caller* liable for TCPA violations** even when" the call would not have occurred but for an intermediary's independent acts.[18] In the *GroupMe Order*, the FCC favorably cited to the comments filed by Twilio, which although not a common carrier like CallFire, provides message transmission services.[19] The portion of the Twilio Comments cited by the FCC argued that "intermediaries in the transmission path should not be required to obtain consent, nor should intermediaries have any TCPA liability when they simply maintain the transmission path of a call or message initiated by a sender."[20]

As CallFire has demonstrated, CallFire simply acts as an intermediate conduit for the messages its customers initiate and which are then further transmitted, without alteration, by CallFire to the next entity in the call flow. CallFire is a common carrier that simply provides its customers web-based common carrier services that enable its customers to control the content, timing, and recipients of the messages they choose to send themselves. CallFire is exempt from TCPA liability.

---

[18] *In the Matter of GroupMe, Inc./Skype Commc'ns S.A.R.L. Petition for Expedited Declaratory Ruling, Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, CG Docket No. 02-278 at ¶ 12 (rel. Mar. 27, 2014), available at http://transition.fcc.gov/Daily_Releases/Daily_Business/2014/db0327/FCC-14-33A1.pdf (last accessed Sep. 9, 2014) ("*GroupMe Order*").

[19] *Id.* ¶ 9 n. 23 (citing to Comments of Twilio, Inc. in Support of GroupMe, Inc. Petition for Declaratory Ruling, CG Docket No. 02-278 (filed Aug. 30, 2012), available at http://apps.fcc.gov/ecfs/document/view?id=7022008778 (last accessed Sep. 9, 2014) ("Twilio Comments").

[20] Twilio Comments at 16.

In sum, CallFire is a common carrier that has no involvement in the telephone number lists allegedly used by Defendant Shac or in the content of the messages themselves. Plaintiff specifically alleges that Defendant Shac, not CallFire, "control[led]. . . the content of [the] messages, as well as to whom [CallFire] delivered the messages." Compl. ¶ 10. Further, the Complaint does not allege that CallFire had notice of the alleged illegal use of its services by Defendant Shac. As the *Dish Network Order* and *GroupMe Order* make clear, when CallFire 's customers "hit send," they are the entities initiating their own messages and CallFire is not capable of violating the TCPA simply by providing the common carrier services through which messages are transmitted.

**2. Plaintiff Does Not Allege A Plausible Right To Relief From CallFire**

Plaintiff also cannot cure the fundamental deficiency in the Complaint by simply lumping CallFire in with Defendant Shac's alleged conduct through the expediency of pleading that the Defendants collectively sent the message at issue in this case, or by its bare bones allegation that CallFire is liable under either a theory of direct liability or vicarious liability. Compl. ¶¶ 11, 14, 26. The Court should not accept Plaintiff's (impossible) legal conclusion couched as a factual allegation. *See Iqbal*, 556 U.S. at 678. Claiming that CallFire is vicariously liable for Defendant Shac's conduct is an unsupported legal conclusion and not a factual statement. Plaintiff appears to allege some sort of close coordination between CallFire and Defendant Shac by simply lumping them all together, but nowhere does the Complaint allege that CallFire provided Defendant Shac lists of telephone numbers or the content of the message promoting Defendant Shac's service, or had any other influence on the message allegedly sent to Plaintiff. In fact, Plaintiff alleges exactly the opposite. *See* Compl. ¶ 10 ("Defendant SHAC retained the right to control – and, in fact, did control – the content of the messages, as well as to whom Defendants CULB TEXTING and CALLFIRE delivered the messages.").

Thus, the remaining allegation lodged against CallFire is that CallFire transmitted a message on behalf of its customer. *Id.* ¶ 10. But as a threshold matter, "when Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, there is no general presumption that the plaintiff

may also sue aiders and abetters." *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 182 (1994). In *Central Bank*, the Supreme Court noted that Congress knows how to impose liability for aiding and abetting a statutory violation when it chooses to do so. *Id.* at 176. But as noted above concerning the Congressional intent in enacting the TCPA and the common-sense notion that only one person initiates a call, "[i]t is clear … that the statutory language of [the TCPA] does not specifically provide for" liability arising from aiding and abetting a TCPA violation. *Baltimore-Washington Tel. Co. v. Hot Leads Co., LLC*, 584 F. Supp. 2d 736, 746 (D. Md. 2008) (ruling that "this Court will not imply expanded liability under the TCPA for aiding and abetting."). As a result, Defendant Shac is the only defendant that could potentially be liable under the TCPA because, as Plaintiff alleges, it was the entity directly communicating with Plaintiff. Compl. ¶ 10.

Further, Plaintiff is required to allege CallFire's specific role in the message allegedly received by Plaintiff, rather than simply lumping together CallFire and Defendant Shac. *See Petrovic v. Princess Cruise Lines, LTD.*, CIV No. 12-21588, 2012 WL 3026368, at *3 (S.D. Fla. July 20, 2012) (dismissing negligence action because "a complaint that lumps all the defendants together in each claim and provides no factual basis to distinguish their conduct fails to satisfy Rule 8.") (citation and internal quotations omitted); *see also All Am. Semiconductor, Inc. v. Peoplesoft, USA, Inc.*, CIV No. 07-12963-BKC-LMI, 2010 WL 2854153, at *10 (Bank. S.D. Fla. July 20, 2010) (dismissing bankruptcy action because of the "undifferentiated allegations that lump all the defendants together."); *Beyard v. Caddo Parish Comm'n*, CIV No. 06-2296, 2007 WL 1741970, at *4 (W.D. La. Apr. 27, 2007) ("Plaintiff's conclusory and generic allegations that lump all defendants in one group are insufficient").

In short, there are no facts, and Plaintiff certainly alleges none, that would show that CallFire controlled the content of the text message allegedly received by Plaintiff or that CallFire otherwise had actual notice that Plaintiff did not consent to receive the text message from Defendant Shac. Plaintiff has thus failed to state any claim that CallFire violated the TCPA and the Complaint should be dismissed in its entirety as to CallFire with prejudice.

## II. IF THE COURT DOES NOT DISMISS CALLFIRE, THE ISSUES RELATING TO CALLFIRE SHOULD BE REFERRED TO THE FCC UNDER THE PRIMARY JURISDICTION DOCTRINE

If the Court declines to dismiss the claim against CallFire, it should refer the issues related to CallFire's common carrier services to the FCC under the doctrine of primary jurisdiction. The salient issue for referral is CallFire's liability under the TCPA for providing common carrier services to the public that a customer allegedly uses to send unsolicited messages. While CallFire believes it has no liability in those circumstances, as explained above, to the extent the Court believes that this telecommunications-policy issue needs further development, a primary jurisdiction referral to the FCC is appropriate.

CallFire is aware of no decision, and Plaintiff certainly cites none in his Complaint, where a court found that a common carrier, rather than its customer, initiates a message under the TCPA when it does not control the content, timing, or direction of the text messages its customers send, just as Microsoft cannot be deemed to be "sending" Outlook users' emails. Through his Complaint, Plaintiff is thus asking the Court to expand TCPA liability beyond the plain language of the statute, Congressional intent, and the FCC's implementing regulations and orders. Because the FCC is the expert agency tasked with implementing the TCPA, the FCC should be given the first opportunity to pass on Plaintiff's novel theory of TCPA liability if CallFire is not dismissed altogether. Should the Court grant a primary jurisdiction referral, it should stay the case entirely or dismiss the case without prejudice as to CallFire.

### A. A Primary Jurisdiction Referral Is Appropriate

The primary jurisdiction doctrine supports a referral to the FCC in this case if the Court declines to dismiss the claims entirely against CallFire, as the Court would be required to expand the scope of TCPA liability beyond the boundaries currently set by the FCC, creating a clear conflict in principles that the FCC established with its conferral of TCPA immunity upon fax broadcasters and common carriers. Primary jurisdiction "is a prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decision making responsibility should be performed by the relevant agency rather than the courts." *Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002); *see also*

*Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008) (observing that the primary jurisdiction doctrine is a "prudential" doctrine under which the court determines that "an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch.").

As the Ninth Circuit has explained, the application of the primary jurisdiction doctrine is within the court's discretion and is appropriate where a case presents:

(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration. *Syntek*, 307 F.3d at 781 (citation omitted); *see also Clark*, 523 F.3d at 1115 (finding referral appropriate because the FCC had been entrusted by Congresses under the Communications Act with comprehensive regulatory authority, and the issue before the court raised a novel question regarding the application of a statute under the authority of the FCC to a new technology).

All of the justifications for a primary jurisdiction referral are met here. First, CallFire is aware of no final decision in which a court has found a common carrier liable under the TCPA when its only involvement is the transmission of its customers' messages alleged to have violated the TCPA. Further, the TCPA is a law within the FCC's particular field of expertise, and Congress has specifically tasked the FCC to issue rules implementing the Communications Act and the TCPA. 47 U.S.C. § 227(b)(2) (requiring the FCC to "prescribe regulations to implement" the TCPA); *see also* 47 U.S.C. § 151 (establishing FCC and charging it with task of regulating interstate communications).[21]

[21] The expertise of the FCC in addressing the Communications Act more generally is evidenced by the frequency with which a variety of courts have invoked the doctrine of primary jurisdiction when faced with issues requiring construction of statutes administered by the FCC. *See, e.g., Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459 (6th Cir. 2010); *Pac-West Telecomm., Inc. v. MCI Commc'ns Servs., Inc.*, No. 1:10-cv-01051, 2011 WL 1087195, at *2 (E.D. Cal. Mar. 23, 2011); *Total Telecomms. Servs., Inc. v. Am. Tel. & Tel. Co.*, 919 F. Supp. 472, 478 (D.D.C. 1996); *Unimat, Inc. v. MCI Telecomms. Corp.*, No. 92-5941, 1992 WL 391421, at *2 (E.D. Pa. Dec. 16, 1992).

Finally, the TCPA involves important policy issues related to protecting the rights of consumers in connection with various modes of communication, e.g., telephone, facsimile, and the Internet. Congress also intended the TCPA to be applied and administered uniformly. *See TCPA Rules 2003*, 68 F.R. at 44155; *see also In the Matter of Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, 14064 ¶ 83 (2003) ("we believe that it was the clear intent of Congress generally to promote a uniform regulatory scheme under which telemarketers would not be subject to multiple, conflicting regulations.") (citing 137 Cong. Rec. S18317-01, at 1 (1991) (remarks of Sen. Pressler) ("The Federal Government needs to act now on uniform legislation to protect consumers.")). Given the expertise of the FCC and the need for uniformity, a primary jurisdiction referral is appropriate here.

In an analogous case, the United States District Court for the Southern District of Texas recently stayed a TCPA class action pending a primary jurisdiction referral based on the court's conclusion "that the FCC is in the best position to opine, in the first instance, on the technical and potentially far-reaching issues implicated in Plaintiffs' claims, namely, whether the use of 'the defendants' "systems to transmit text messages" could violate the TCPA. *Fried v. Sensia Salon, Inc.*, CIV No. 4:13-312, 2013 WL 6195483, at *4 (S.D. Tex. Nov. 27, 2013). Although these defendants were not common carriers like CallFire, the court held that two of the defendants in *Fried* "serve as a 'conduit in the chain of transmission' of" text messages "'between content providers (those entities that draft and send text messages)'" and the ultimate recipients of the messages. *Id.* at *1. And similar to Plaintiff's allegations here, the plaintiffs in *Fried* alleged that the defendants' systems and software used to transmit text messages to downstream telecommunications carriers constituted an ATDS, i.e., "equipment that 'either had the capacity to store or produce telephone numbers to be called, or used a random or sequential number generator.'" *Id.* at *3; *see also* Compl. ¶ 13.

CallFire's web-based common carrier services do not constitute an automatic telephone *dialing* system because CallFire's customers have already selected the telephone numbers to which they choose to send messages and then the customers initiate their own messages. In other words, by the time the data associated with its customers' messages reaches CallFire, all of the

normal functions associated with dialing a telephone number have been completed by CallFire's customers and CallFire simply transmits the information supplied by its customers to other telecommunications carriers, just as these telecommunications carriers do in turn until the message reaches the intended recipient. The court in *Fried* credited the defendant's argument that such a system "indisputably does not dial," and "a finding that the system is unlawful can only be made by rewriting the statute to remove the requirement that the system be able to dial a telephone number." *Fried*, 2013 WL 6195483, at *3. The court therefore ruled that the "FCC has particular expertise in this field of telecommunications, enabling the agency to make a decision based on technical and technological knowledge not necessarily available to this Court." *Id.* at *4. The Court should reach the same conclusion here and refer the issues related to CallFire to the FCC.

### B. The Court Should Stay The Entire Case Or Dismiss CallFire Without Prejudice

Finally, if the Court believes that a primary jurisdiction referral is appropriate, the Court should either stay the entire case or dismiss CallFire without prejudice. Staying the entire case is appropriate while the FCC considers the issues related to CallFire. *See Hurrle v. Real Time Resolutions, Inc.*, CIV No. C13-5765-BHS, 2014 WL 670639 (W.D. Wash. Feb. 20, 2014) (staying proposed TCPA class action to allow FCC to first issue ruling on petition for declaratory ruling concerning legality of certain autodialed calls to wireless telephone numbers). Additionally, dismissal without prejudice in response to a primary jurisdiction referral is appropriate "if the parties would not be unfairly disadvantaged." *Reiter v. Cooper*, 507 U.S. 258, 268-69 (1993). Here, Plaintiff and Defendant Shac would face no disadvantage by the dismissal of CallFire because the case could continue without CallFire. Plaintiff would face no disadvantage because he could simply sue CallFire again if the FCC ruled that CallFire could be found liable. Moreover, staying the case only as to CallFire would create potential case-administration concerns where Plaintiff and Defendant Shac continued to litigate while the case was stayed against CallFire.

If the Court does not dismiss the claim against CallFire pursuant to Rule 12(b)(6), the Court should refer the matter to the FCC. In doing so, the Court should either stay the entire case

or dismiss the complaint against CallFire.

## CONCLUSION

For the foregoing reasons, CallFire respectfully requests that the Court dismiss the Complaint with prejudice for failure to state a claim, or in the alternative, stay the entire case or dismiss the claim against CallFire without prejudice and refer the issues related to CallFire to the FCC.

Dated: September 11, 2014

**ARENT FOX LLP**

By: */s/ Imran Khaliq*
IMRAN KHALIQ
Attorney for Defendants
CALLFIRE, INC. AND
CLUB TEXTING, INC.