JAURIGUE LAW GROUP
Michael J. Jaurigue (SBN 208123)
Abigail A. Zelenski (SBN 228610)
David Zelenski (SBN 231768)
Christine M. Pham (SBN 278247)
114 North Brand Boulevard, Suite 200
Glendale, California 91203
michael@jlglawyers.com
abigail@jlglawyers.com
david@jlglawyers.com
christine@jlglawyers.com
Telephone: (818) 630-7280
Facsimile: (888) 879-1697

*Attorneys for Plaintiff John Luna*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| JOHN LUNA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SHAC, LLC dba SAPPHIRE GENTLEMEN'S CLUB, a Nevada corporation; and CALLFIRE, INC., a corporation,<br><br>Defendants. | Case No. CV 14-00607 HRL<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT CALLFIRE, INC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>*Assigned to Hon. Howard R. Lloyd*<br><br>Date: October 21, 2014<br>Time: 10:00 a.m.<br>Courtroom: 2 |

***Table of Contents***

*I. Introduction* ... 1

*II. CallFire's Common-Carrier Contentions* ... 2

*A. Statement of the Legal Standard and of the Facts* ... 2

*1. The Legal Standard Under Rule 12(b)(6) of the Federal Rules of Civil Procedure* ... 2

*2. Overview of the Extrinsic Facts Submitted by CallFire, None of Which Can Be Considered in Ruling on CallFire's Motion* ... 5

*3. Overview of the Facts Alleged in the First Amended Complaint, All of Which Are Presumed True for Purposes of Ruling on CallFire's Motion* ... 9

*B. Argument* ... 11

*1. CallFire Cannot Demonstrate at this Stage of the Litigation that It Is Exempt from the TCPA as a Common Carrier* ... 11

*2. CallFire Likewise Cannot Demonstrate at this Stage of the Litigation that the Primary-Jurisdiction Doctrine Applies* ... 14

*III. CallFire's* Twombly *and* Iqbal *Contentions* ... 16

*A. The Legal Standard Under Rule 8 of the Federal Rules of Civil Procedure* ... 16

*B. Argument: The First Amended Complaint Adequately Alleges that CallFire Made the At-Issue Call* ... 18

*IV. Conclusion* ... 20

## *Table of Authorities*

### *Cases*

Abrego v. Dow Chem. Co.
443 F.3d 676 (9th Cir. 2006) ....................2

Allison v. Cal. Adult Auth.
419 F.2d 822 (9th Cir. 1969) ....................4, 9

Alpharma, Inc. v. Pennfield Oil Co.
411 F.3d 934 (8th Cir. 2005) ....................16

Ashcroft v. Iqbal
556 U.S. 662 (2009)....................4, 5, 17

Baltimore-Washington Tel. Co. v. Hot Leads Co., LLC
584 F. Supp. 2d 736 (D. Md. 2008)....................10

Barker v. Riverside Cnty. Office of Educ.
584 F.3d 821 (9th Cir. 2009) ....................4, 9

Bell Atl. Corp. v. Twombly
550 U.S. 544 (2007)....................4–5, 17–18

Benavides v. City of Arvin
2012 WL 1910259 (E.D. Cal. May 25, 2012) ....................4, 8

Bryant v. Carleson
444 F.2d 353 (9th Cir. 1971) ....................3

Byrd v. Fransworth, Saperstein & Seligman
1996 WL 721683 (N.D. Cal. Dec. 9, 1996)....................4, 9

Cactus Corner, LLC v. U.S. Dep't of Agric.
346 F. Supp. 2d 1075 (E.D. Cal. 2004)....................4, 8

Cafasso , U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.
637 F.3d 1047 (9th Cir. 2011) ....................17

Cellco P'ship v. Plaza Resorts, Inc.
2013 WL 5436553 (S.D. Fla. Sept. 27, 2013) ....................10

Clark v. Time Warner Cable
523 F.3d 1110 (9th Cir. 2008) ....................15–16

Coppes v. Wachovia Mortg. Corp.
2010 WL 4483817 (E.D. Cal. Nov. 1, 2010)....................6

Couser v. Pre-Paid Legal Servs.
994 F. Supp. 2d 1100 (S.D. Cal. 2014) ........ 12–16, 18–19

Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC
369 F.3d 1197 (11th Cir. 2004) ........ 8

Durning v. First Boston Corp.
815 F.2d 1265 (9th Cir. 1987) ........ 4, 9

Eden Toys, Inc. v. Marshall Field & Co.
674 F.2d 498 (2d Cir. 1982) ........ 8

Fried v. Sensia Salon, Inc.
2013 WL 6195483 (S.D. Tex. Nov. 27, 2013) ........ 15

Gomez v. Campbell-Ewald Co.
--- F.3d ---, 2014 WL 4654478 (9th Cir. Sept. 19, 2014) ........ 10

Gray v. Evercore Restructuring L.L.C.
544 F.3d 320 (1st Cir. 2008) ........ 19

Hart v. Parks
450 F.3d 1059 (9th Cir. 2006) ........ 9

Hernandez-Cuevas v. Taylor
723 F.3d 91 (1st Cir. 2013) ........ 17

Hung Dong v. ITT Educ. Servs., Inc.
2014 WL 4634993 (E.D. Cal. Sept. 10, 2014) ........ 4, 8

In re Google, Inc. Privacy Policy Litig.
2012 WL 6738343 (N.D. Cal. Dec. 28, 2012) ........ 6

In re Sony Gaming Networks & Customer Data Sec. Breach Litig.
903 F. Supp. 2d 942 (S.D. Cal. 2012) ........ 6

Int'l Audiotext Network, Inc. v. AT&T
62 F.3d 69 (2d Cir. 1995) ........ 6

Knievel v. ESPN
393 F.3d 1068 (9th Cir. 2005) ........ 2

Knutson v. Schwan's Home Serv., Inc.
2013 WL 3746118 (S.D. Cal. July 15, 2013) ........ 10

Kramer v. Autobytel, Inc.
759 F. Supp. 2d 1165 (N.D. Cal. 2010) ........ 18

Lee v. City of Los Angeles
250 F.3d 668 (9th Cir. 2001) ....................2, 4

Legg v. Voice Media Group, Inc.
990 F. Supp. 2d 1351 (S.D. Fla. 2014) ....................10

Lussier v. Runyon
50 F.3d 1103 (1st Cir. 1995) ....................3

Manning v. Boston Med. Ctr. Corp.
725 F.3d 34 (1st Cir. 2013) ....................17

Maronyan v. Toyota Motor Sales, U.S.A., Inc.
658 F.3d 1038 (9th Cir. 2011) ....................15

Navarro v. Block
250 F.3d 729 (9th Cir. 2001) ....................2

Parrino v. FHP, Inc.
146 F.3d 699 (9th Cir. 1998) ....................2

Radware, Ltd. v. A10 Networks, Inc.
2014 WL 61047 (N.D. Cal. Jan. 7, 2014) ....................2

Ritter v. Hughes Aircraft Co.
58 F.3d 454 (9th Cir. 1995) ....................3

Robbins v. Coca-Cola Co.
2013 WL 2252646 (S.D. Cal. May 22, 2013) ....................10

Skilstaf, Inc. v. CVS Caremark Corp.
669 F.3d 1005 (9th Cir. 2012) ....................3

Skinner v. Mountain Lion Acquisitions, Inc.
2014 WL 3853424 (N.D. Cal. Aug. 1, 2014) ....................2

Starr v. Baca
652 F.3d 1202 (9th Cir. 2011) ....................5

Swartz v. KMPG LLP
476 F.3d 756 (9th Cir. 2007) ....................2

Swearingen v. Late July Snacks LLC
2014 WL 2215878 (N.D. Cal. May 29, 2014) ....................15–16

Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.
307 F.3d 775 (9th Cir. 2002) ....................15

Tellabs, Inc. v. Makor Issues & Rights, Ltd.
551 U.S. 308 (2007) .......... 3

Thomas v. Lind
2012 WL 6020101 (N.D. Cal. Dec. 3, 2012) .......... 19

U.S. v. Corinthian Colleges
655 F.3d 984 (9th Cir. 2011) .......... 2–3, 4, 6–7

U.S. v. Lewis
833 F.2d 1380 (9th Cir. 1987) .......... 3

U.S. v. Mariscal
285 F.3d 1127 (9th Cir. 2002) .......... 3

Vaccaro v. CVS Pharmacy, Inc.
2013 WL 3776927 (S.D. Cal. July 16, 2013) .......... 17–18

Weisbuch v. Cnty. of Los Angeles
119 F.3d 778 (9th Cir. 1997) .......... 19

Wyatt v. Terhune
315 F.3d 1108 (9th Cir. 2003) .......... 8

Xechem, Inc. v. Bristol-Myers Squibb Co.
372 F.3d 899 (7th Cir. 2004) .......... 19

***Statutes***

47 U.S.C. § 227 .......... 7, 10–11, 14, 18

***Rules and Regulations***

Fed. R. Civ. Proc. 8 .......... 16–17

Fed. R. Civ. Proc. 12 .......... 2–4, 19

Fed. R. Civ. Proc. 41 .......... 1

Fed. R. Evid. 201 .......... 3, 6

In the Matter of GroupMe, Inc./Skype Communications S.A.R.L. Petition for Expedited Declaratory Ruling, Rules and Regulations Implementing the Telephone Consumer Protections Act of 1991, Declaratory Ruling, CG Docket No. 02-278 .......... 13

In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of America, and the States of California, Illinois, North Carolina, and Ohio for Declaratory Ruling Concerning the Telephone Consumer Protections Act (TCPA) Rules, 28 FCC Rcd. 6574 (2013)....................13

In the Matter of Rules and Regulations Implementing the TCPA of 1991, 7 FCC Rcd. 8752....................14, 16–17

N.D. Cal. Civ. R. 7-3 ....................5, 9

Rules and Regulations Implementing the TCPA of 1991, 68 F.R. 44144-01 ....................14, 17

47 C.F.R. § 64.1200....................11, 14

***Secondary Sources***

Hon. Robert E. Jones, *et al.* Rutter Group Practice Guide: Federal Civil Trials and Evidence (The Rutter Group 2014) ....................3, 6

Hon. William W Schwarzer, *et al.* California Practice Guide: Federal Civil Procedure Before Trial (The Rutter Group 2014) ....................17

## *I. Introduction.*

The within Motion to dismiss appears to be virtually the same motion filed by Defendant CallFire, Inc. ("CallFire") in no fewer than *four* recent Ninth Circuit district-court cases under the Telephone Consumer Protections Act ("TCPA").[1] In recently ruling on the arguments made in the Motion, the Southern District of California rightly concluded that the extrinsic evidence submitted in support thereof—including the Declaration of Jagannathan Thinakaran, submitted in virtually identical form in the within action—is not properly subject to judicial notice. Simply put, it is premature to determine, on the basis of CallFire's unilateral evidence alone, that CallFire is, in fact, the "common carrier" it claims to be. The Motion to dismiss therefore must be denied.

For similar reasons, CallFire's request that the action be referred to the Federal Communications Commission ("FCC") under the "primary-jurisdiction" doctrine should also be denied. This argument, too, has been made at least four times by CallFire in Ninth Circuit district-court cases, and it has *never* been granted in any of those actions. As explained below, referral is appropriate only if, first and foremost, CallFire actually is a common carrier. Because, again, any such determination is premature, a primary-jurisdiction referral is improper at this time.

Finally, CallFire's alternative argument that Plaintiff has not adequately alleged under Twombly and Iqbal that CallFire made or initiated any calls or text messages should also be rejected. CallFire, it appears, has included this argument—nearly verbatim—in each of the four prior-filed Motions regardless of the specific allegations pled by the respective plaintiffs. Plaintiff's First Amended Complaint clearly alleges (a) that CallFire had been hired by Defendant SHAC, LLC ("SHAC") to conduct SHAC's text-messaging campaign and (b) that CallFire itself was the entity that sent the text messages to consumers, including Plaintiff. This is sufficient under the Federal Rules' notice-pleading standard. Indeed, CallFire clearly has adequate notice of the claims pled against it in light of the extrinsic materials submitted in support of the Motion—materials describing the service that CallFire provides as *sending text messages to consumers*. CallFire's boilerplate Motion should therefore be

[1] The within Motion was also filed on behalf of an entity named "Club Texting, Inc." On September 23, 2014, Plaintiff voluntarily dismissed Club Texting, Inc. from this action without prejudice. (Sept. 23, 2014, Notice of Voluntary Dismissal as to Def. Club Texting, Inc. Pursuant to Fed. R. Civ. Proc. 41(a)(1)(A)(i) [ECF No. 56] at 2:6–8.)

denied, in whole.

## *II. CallFire's Common-Carrier Contentions.*

### *A. Statement of the Legal Standard and of the Facts.*

#### *1. The Legal Standard Under Rule 12(b)(6) of the Federal Rules of Civil Procedure.*

CallFire's Motion is brought pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure. (CallFire's Notice of Mot. & Mot. to Dismiss First Am. Compl.; Mem. of P. & A. in Supp. of Mot. ("CallFire's Mot. to Dismiss") [ECF No. 52] at 2:2–9.[2]) A rule 12(b)(6) motion "tests the legal sufficiency of a complaint." E.g., Skinner v. Mountain Lion Acquisitions, Inc., 2014 WL 3853424 at *2 (N.D. Cal. Aug. 1, 2014) (citing Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001)). To that end, "[a] court *cannot* review on a [rule 12(b)(6)] motion to dismiss" evidence that is "extrinsic" to the plaintiff's complaint. E.g., Radware, Ltd. v. A10 Networks, Inc., 2014 WL 61047 at *4 (N.D. Cal. Jan. 7, 2014) (citing Swartz v. KMPG LLP, 476 F.3d 756, 762 (9th Cir. 2007)) (emphasis supplied).

In the Ninth Circuit, there are only "two exceptions" to the general rule that extrinsic facts must be disregarded. E.g., Lee v. City of Los Angeles, 250 F.3d 668, 688–89 (9th Cir. 2001). The first is the "'incorporation by reference' doctrine, which permits [a court] to take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005). Under this doctrine, if "the plaintiff's claim [for relief] depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document," then the document may be considered in ruling on the motion. Id. (citing Parrino v. FHP, Inc., 146 F.3d 699, 705–06 (9th Cir. 1998) (superseded by statute on other grounds as stated in Abrego v. Dow Chem. Co., 443 F.3d 676, 681 (9th Cir. 2006))). Central to this doctrine, then, is the notion that the complaint "'necessarily rel[y]'" on the extrinsic document, which, the Ninth Circuit has explained, has three requirements: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; *and* (3) no party questions the authenticity of the document." U.S. v.

[2] Page-number references to ECF-filed documents are to the page numbers in the file-stamp header, not to the page numbers at the bottom of the document.

Corinthian Colleges, 655 F.3d 984, 999 (9th Cir. 2011) (quoting Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006)) (emphasis supplied).

The other exception to the general prohibition against extrinsic facts concerns judicially noticeable materials. See, e.g., Skilstaf, Inc. v. CVS Caremark Corp., 669 F.3d 1005, 1016 n.9 (9th Cir. 2012) (explaining that "'[c]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on [r]ule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice'") (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)). A putative fact is judicially noticeable (a) if it "is generally known within the trial court's territorial jurisdiction" or (b) if it is "readily" ascertainable. Fed. R. Evid. 201(b). A matter is "generally known" in the trial court's territorial jurisdiction if it is within "the unrefreshed, unaided recollection of the [territory's] populace at large." Lussier v. Runyon, 50 F.3d 1103, 1111 (1st Cir. 1995). See also U.S. v. Mariscal, 285 F.3d 1127, 1132 (9th Cir. 2002) (citing Lussier with regard to judicial notice). Examples include "the locality of a certain street, whether a certain area is residential," and "[f]acts frequently reported in the [local] news." Hon. Robert E. Jones, *et al.*, Rutter Group Practice Guide: Federal Civil Trials and Evidence (The Rutter Group 2014) ¶¶ 8:826, 8:837 (citing Ritter v. Hughes Aircraft Co., 58 F.3d 454, 458 (9th Cir. 1995)).

A matter is "readily ascertainable," on the other hand, if it "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned," Fed. R. Civ. Proc. 201(b), that is, if it is "capable of immediate and accurate verification through reliable sources," Jones, Rutter Group Practice Guide: Federal Civil Trials and Evidence ¶ 8:827. It follows, then, that a judge may not, for example, take judicial notice of a fact simply because he or she believes it to be true on the basis of his or her own personal experience; instead, whether the fact is admissible must be gauged "through the usual methods [for] assur[ing] trustworthiness in our adversarial system of justice." U.S. v. Lewis, 833 F.2d 1380, 1385 (9th Cir. 1987). An official act of the legislative, executive, or judicial branch of the U.S government—including a court record—is one example of a judicially noticeable matter under the readily-ascertainable prong. E.g., Bryant v. Carleson, 444 F.2d 353, 357 (9th Cir. 1971) (taking judicial notice of various court actions). Even with respect to court records or administrative filings, though, the

"truth" of the matters asserted in those records and filings are decidedly *not* judicially noticeable. See, e.g., Lee, 250 F.3d at 690 (stating that, "[o]n a [r]ule 12(b)(6) motion to dismiss, when a court takes judicial notice of another court's opinion, it may do so" only "for the *existence of the opinion*" itself, which "is not subject to reasonable dispute," as opposed to "*the facts recited therein*," which are subject to reasonable dispute) (internal quotations omitted) (emphasis supplied). In other words, although a court may judicially notice the fact that a particular court opinion or administrative action was filed on a particular date, the court may not accept as true the specific "facts" asserted in that opinion or administrative action. See, e.g., Hung Dong v. ITT Educ. Servs., Inc., 2014 WL 4634993 at *6 (E.D. Cal. Sept. 10, 2014) (stating that "[t]he [c]ourt may take judicial notice as to the authenticity and existence of a declaration filed in a different court, but may not take judicial notice of the veracity of the content of the declaration") (citing Cactus Corner, LLC v. U.S. Dep't of Agric., 346 F. Supp. 2d 1075, 1099 (E.D. Cal. 2004)); Benavides v. City of Arvin, 2012 WL 1910259 at *3 (E.D. Cal. May 25, 2012) (stating that, "[w]hile some public records are the proper subject of judicial notice, th[e] [c]ourt may not take judicial notice[] of documents filed with an administrative agency to prove the truth of the contents of the documents") (citing cases).

All of which is to say, then, that courts "may not, on the basis of evidence outside of [a] complaint, take judicial notice of facts favorable to [d]efendants that could reasonably be disputed." Corinthian Colleges, 655 F.3d at 999. Absent some sort of conclusive contradiction brought to bear either through the incorporation-by-reference doctrine or through judicial notice, the allegations in a complaint—no matter how unlikely—must be presumed true for purposes of ruling on a motion to dismiss. E.g., Byrd v. Farnsworth, Saperstein & Seligman, 1996 WL 721683 at *1 (N.D. Cal. Dec. 9, 1996) (explaining that "[m]aterial allegations must be accepted as true no matter how improbable they may seem and without regard to any potential difficulties in proof," so long as they are not "contradict[ed] [by] matters properly subject to judicial notice" or by "exhibits to the complaint") (citing Allison v. Cal. Adult Auth., 419 F.2d 822, 823 (9th Cir. 1969); Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987)). Similarly, courts "must draw [all] inferences in the light most favorable to the plaintiff." Barker v. Riverside Cnty. Office of Educ., 584 F.3d 821, 824 (9th Cir. 2009). This is true even in light of the arguably heightened pleading standards set forth by Twombly and Iqbal, discussed

below in section III.A of this Memorandum. See, e.g., Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011) (in a post-Twombly and -Iqbal decision, explaining that, when a complaint's allegations are capable of more than one inference, the court must still adopt whichever plausible inference supports a valid claim).

### *2. Overview of the Extrinsic Facts Submitted by CallFire, None of Which Can Be Considered in Ruling on CallFire's Motion.*

CallFire frontloads its Motion with a host of "facts" detailing its supposed "common-carrier" services, namely:

- "CallFire provides its customers various web-based telecommunications services that allow its customers to develop and send their own voice and text messages to recipients of the customers' choosing."
- At all relevant times, as reflected in the FCC's Form 499 Filer Database Listing, CallFire was "an FCC licensed common carrier whose service enables customers to create messages and transmit them to telephone numbers selected solely by the customers."
- According to CallFire's Terms of Service, "CallFire does not control the content, destination or timing of its customers' telephone calls."
- Also according to the Terms of Service, "CallFire simply acts as a conduit between its customers and the downstream telecommunications carriers that deliver the messages to the ultimate recipients selected by CallFire's customers."
- "[B]ecause CallFire is a common carrier that has no relationship with the ultimate recipients of the messages its customers choose to send, all of CallFire's customers must agree to CallFire's Terms of Service in order to use CallFire's common carrier services."
- "CallFire's Terms of Service contain the following requirements related to its customers' use of its common carrier services: [quoting language from the Terms of Service]."

(CallFire's Mot. to Dismiss [ECF No. 52] at 8:15–10:3 (citing Decl. of Jagannathan Thinakaran in Supp. of CallFire's Mot. to Dismiss ("Thinakaran Decl.") [ECF No. 52-1] ¶¶ 3–7) (internal references omitted). See also Req. for Judicial Notice in Supp. of CallFire's Mot. to Dismiss ("CallFire's Req. for Judicial Notice") [ECF No. 52-4] at 2:23–3:19.) None of these "facts," however, are properly before the Court, and Plaintiff objects to them pursuant to rule 7-3 of the Northern District's Local Rules. See N.D. Cal. Civ. R. 7-3(a) (stating that "[a]ny evidentiary and procedural objections to [a] motion must be contained within the brief or memorandum" filed in opposition to the motion).

More specifically, CallFire requests that the Court consider the foregoing "facts" under the judicial-notice exception to the prohibition against extrinsic evidence. (See CallFire's Req. for Judicial Notice [ECF No. 52-4] at 2:7–3:19. See also CallFire's Mot. to Dismiss [ECF No. 52] at 8 n.4, 9 n.7.) In support of this request, CallFire cites Coppes v. Wachovia Mortgage Corp., 2010 WL 4483817 (E.D. Cal. Nov. 1, 2010); International Audiotext Network, Inc. v. AT&T, 62 F.3d 69, 72 (2d Cir. 1995); In re Google, Inc. Privacy Policy Litigation, 2012 WL 6738343 (N.D. Cal. Dec. 28, 2012); and In re Sony Gaming Networks & Customer Data Security Breach Litigation, 903 F. Supp. 2d 942 (S.D. Cal. 2012). (See CallFire's Req. for Judicial Notice [ECF No. 52-4] at 2:23–3:19; CallFire's Mot. to Dismiss [ECF No. 52] at 8 n.4, 9 n.7.) In so doing, CallFire conflates the two above-discussed exceptions to the extrinsic-evidence prohibition, as the only "fact" arguably susceptible to judicial notice is the FCC Form 499 Filer Database Listing printout. See Coppes, 2010 WL 4483817 at *2 (distinguishing between matters subject to the "incorporation by reference doctrine," on the one hand, and "publicly recorded documents" that are subject to judicial notice, on the other hand); In re Google, Inc. Privacy Policy Litig., 2012 WL 6738343 at *4 (same); In re Sony Gaming Networks & Customer Data Sec. Breach Litig., 903 F. Supp. 2d at 954 (same); Int'l Audiotext Network, Inc., 62 F.3d at 72 (discussing whether an extrinsic agreement could be considered under the incorporation-by-reference doctrine, and making no mention whatsoever of judicial notice). As the moving party, of course, CallFire bore the burden of properly bringing its "facts" to the Court's attention. Because CallFire seeks to introduce all but the FCC Form 499 Filer Database Listing printout under the incorrect exception, CallFire's Request for judicial notice should be denied as to those facts. See Jones, Rutter Group Practice Guide: Federal Civil Trials and Evidence ¶ 8:950 (explaining that "[t]he court has no affirmative obligation to take judicial notice on its own motion" and that "a party seeking judicial notice must make a proper request") (citing Fed. R. Evid. 201(c)(2)).

That nuance to the side, none of the "facts" should be considered because they are not integral—in a pleading sense—to the First Amended Complaint. Again, in the Ninth Circuit, an extrinsic document may only be considered if the complaint "necessarily relies" on it, which, in turn, requires a showing of three mandatory elements: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions its authenticity." Corinthian Colleges, 655

F.3d at 999 (internal quotations omitted). The First Amended Complaint, though, is not premised on CallFire's Terms of Service, let alone the Terms of Service appended to the Thinakaran Declaration. Plaintiff's lone cause of action seeks a remedy against CallFire under the TCPA, 47 U.S.C. § 227, and the First Amended Complaint makes no mention whatsoever of any Terms of Service. (See First Am. Compl. [ECF No. 44] ¶¶ 21–26.) Although those Terms of Service may ultimately be relevant to the TCPA claim, they are not—at least at this stage—indispensable. There is nothing in the Thinakaran Declaration, after all, indicating that these were, in fact, the Terms of Service in effect during the time that Plaintiff received the at-issue text message, in January 2014. (Compare Thinakaran Decl. [ECF No. 52-1] ¶ 7 (referring to undated Terms of Service attached as an Exhibit) with First Am. Compl. [ECF No. 44] ¶ 10 (alleging the date that Plaintiff received the unsolicited text message).) Similarly, there is nothing in the Thinakaran Declaration indicating that these were the Terms of Service in effect during the bulk of the putative class period, commencing in October 2013. (Compare Thinakaran Decl. [ECF No. 52-1] ¶ 7 (referring to undated Terms of Service attached as an Exhibit) with First Am. Compl. [ECF No. 44] ¶ 15 (alleging the class-period start date).) Indeed, according to the Terms of Service themselves, CallFire "reserve[s] the right to change these Terms from time to time." (Thinakaran Decl. Ex. A [ECF No. 52-2] at 2.) Moreover, even if these were the operative Terms of Service, there is nothing in the Thinakaran Declaration specifically averring that SHAC itself agreed to these Terms. Nor is there anything in that Declaration averring that CallFire always, without fail, adhered to those Terms during the relevant period, *i.e.*, that CallFire's practice never deviated from the articulated policy, at least with respect to the services that it performed for SHAC. At least with respect to the proffered Terms' applicability to the First Amended Complaint's TCPA claim, then, there is a significant issue as to the Terms' authenticity. This prevents application of the incorporation-by-reference doctrine.

Nor are the facts "generally known" or "readily ascertainable." First, with respect to "generally known," whether CallFire requires all of its customers—or, at the very least, those customers receiving the text messages implicated by the First Amended Complaint—to agree to the Terms of Service attached to the Thinakaran Declaration is not something that the general population in the Northern District of California would know even with a refreshed recollection. The same goes for the scope of services that CallFire provides to its customers. It simply cannot be true that the general population

understands that CallFire, in fact, "simply acts as a conduit between its customers and the downstream telecommunications carriers that deliver the messages to the ultimate recipients," *i.e.*, that CallFire is, in fact, the common carrier it claims to be. Making such a determination clearly is much more complicated—and depends on a host of factors not presently before the Court—than concluding where a street is located or whether a certain geographical area is residential. Cf., e.g., Eden Toys, Inc. v. Marshall Field & Co., 674 F.2d 498, 500 n.1 (2d Cir. 1982) (concluding that the "traditional features of a snowman" are judicially noticeable because they "are generally known" to the public); Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC, 369 F.3d 1197, 1205 (11th Cir. 2004) (taking judicial notice of the fact that ice-cream color indicates ice-cream flavor, as it is "generally known" by the public).

Second, with respect to "readily ascertainable," the only submitted "fact" capable of indisputable verification from sources whose accuracy cannot be questioned is the FCC Form 499 Filer Database Listing. But even that Form may only be judicially noticed in terms of its *existence* and in terms of what it *purports* to say, not in terms of whether the matters *set forth therein* are, in fact, true. Hung Dong, 2014 WL 4634993 at *6 (citing Cactus Corner, LLC, 346 F. Supp. 2d at 1099); Benavides, 2012 WL 1910259 at *3. Cf., e.g., Wyatt v. Terhune, 315 F.3d 1108, 1114 (9th Cir. 2003) (explaining that, even with respect to court orders, "we have held that taking judicial notice of findings of fact from another case exceeds the limits of [r]ule 201"). Indeed, according to the Form itself, CallFire appears to have been registered as a common carrier only as of April 2014—after the date that Plaintiff alleges he received the at-issue text message, in January 2014. (Compare CallFire's Req. for Judicial Notice [ECF No. 52-4] Ex. A at 1 with First Am. Compl. [ECF No. 44] ¶ 10.) Just because CallFire is presently registered as a common carrier does not establish, beyond all peradventure, that CallFire conducted itself as such at all relevant times so as to avail itself of the common-carrier exemption defense. The only way to conclusively establish such a fact—and to verify the unilateral statements in the Thinakaran Declaration—is by allowing the parties to conduct discovery. None of CallFire's advanced facts, then, can presently be accepted as true, at least not to the extent that CallFire seeks.[3]

[3] For completeness, Plaintiff notes that CallFire also requests judicial notice of a separate Declaration submitted by Shahriyar Neman, CallFire's purported Director of Corporate Development. (CallFire's Req. for Judicial Notice [ECF No. 52-4] at 2:10–12, 3:20–24; Decl. of Shahriyar Neman in Supp. of CallFire's Mot. to Dismiss ("Neman Decl.") [ECF No. 52-3] ¶ 1.) Mr. Neman provides testimony as to Club Texting's corporate status. (Neman Decl. [ECF No. 52-3] ¶¶ 2–4.) As noted

***3. Overview of the Facts Alleged in the First Amended Complaint, All of Which Are Presumed True for Purposes of Ruling on CallFire's Motion.***

As explained above, in the absence of any contradictory facts, the allegations in the First Amended Complaint must be accepted as true. Byrd, 1996 WL 721683 at *1 (citing Allison, 419 F.2d at 823; Durning, 815 F.2d at 1267. Also as explained above, courts "must draw [all] inferences in the light most favorable to the plaintiff." Barker, 584 F.3d at 824.

Here, the First Amended Complaint either specifically alleges the following facts or, at the very least, raises the following inferences:

- In January 2014, Plaintiff received the following text message on his cellular telephone: "-SAPPHIRE- Hosts the BIGGEST & SEXIEST UFC/SUPER SUNDAY WEEKEND IN LV! Food, Raffles , [*sic*] Prizes & Half Time $1 Dances. 4 more info click http://bit.ly/slvsupersun." Because the text message facially constitutes advertising or telemarketing, it necessarily was sent with a non-emergency purpose.
- CallFire was specifically hired by SHAC to send the January 2014 text message, and, more generally, to conduct SHAC's telemarketing and advertising text-messaging campaign, as noted in SHAC's responses to Plaintiff's written discovery requests in this action.
- SHAC, however, retained the ultimate right to control—and, in fact, did control—the content of the January 2014 text message.
- In addition to the January 2014 text message, numerous other advertising or telemarketing text messages were sent as part of SHAC's CallFire-conducted text-messaging campaign using automated equipment capable of storing and/or producing telephone numbers to be dialed. Given the sheer volume of individuals to whom text messages were sent—numbering in excess of 1,000 people—the text-messaging campaign could only be conducted by using such equipment. As with the text message that Plaintiff received, SHAC also retained the ultimate right to control the content of these messages.
- Plaintiff never provided any signed written authorization to either SHAC or CallFire to send him any text messages.

(First Am. Compl. [ECF No. 44] ¶¶ 9–10, 13–16.)

Now, the Ninth Circuit has recently reconfirmed that "a text message constitutes a call for the

---

above, however, Club Texting was voluntarily dismissed on September 23, 2014. Any testimony about Club Texting therefore appears to be irrelevant to the within Motion. For this reason, the Neman Declaration is not judicially noticeable. See Hart v. Parks, 450 F.3d 1059, 1063 n.2 (9th Cir. 2006) (explaining that, even if a matter is otherwise judicially noticeable, it should not be admitted if it is irrelevant to the matter at hand). Plaintiff therefore objects to the Neman Declaration pursuant to rule 7-3 of the Northern District's Local Rules.

purpose of th[e] [TCPA]." Gomez v. Campbell-Ewald Co., --- F.3d ---, 2014 WL 4654478 at *1 (9th Cir. Sept. 19, 2014). Also according to Gomez, "ordinary tort-related vicarious-liability rules" are "incorporate[d]" into the TCPA, with such liability attaching to the entity on whose behalf a text message is sent (here, SHAC) if an "agency relationship" exists between it and the party actually making the call (here, CallFire). Id. at *4. As pled, an agency relationship exists because Plaintiff contends that SHAC retained the ultimate right to control the content of the text messages sent as part of CallFire's text-messaging campaign. CallFire, then, cannot escape liability by pointing to Plaintiff's allegation that SHAC retained the ultimate right to control the text-message content—a proper way to establish common-law agency, after all—and both SHAC and CallFire are jointly and severally liable for the alleged TCPA violations. See, e.g., Baltimore-Washington Tel. Co. v. Hot Leads Co., LLC, 584 F. Supp. 2d 736, 745 (D. Md. 2008) (explaining that, if an entity "actually committed the conduct that violated the TCPA," or if it "actively oversaw and directed the conduct," it "may be held jointly and severally liable for any TCPA damages") (internal quotations omitted); Cellco P'ship v. Plaza Resorts, Inc., 2013 WL 5436553 at *6 (S.D. Fla. Sept. 27, 2013) (citing cases allowing TCPA joint and several liability).

So long, then, as the First Amended Complaint alleges that CallFire texted Plaintiff's cellular telephone using the requisite automated equipment, with a non-emergency purpose, and without prior express consent, the First Amended Complaint makes out a *prima facie* case. See, e.g., Knutson v. Schwan's Home Serv., Inc., 2013 WL 3746118 at *8 (S.D. Cal. July 15, 2013) (explaining that "[a]ll that is required is a showing that [the defendant] called [p]laintiffs (1) using an automated dialer or artificial or prerecorded voice; (2) in non-emergency situations and without prior consent; (3) on their cellular telephones") (citing 47 U.S.C. § 227(b)(1)(A)); Legg v. Voice Media Group, Inc., 990 F. Supp. 2d 1351, 1354 (S.D. Fla. 2014) (holding that "factual allegations of mass messaging from [a defendant] that could only be achieved via an automatic telephone dialing system [are] sufficient to support a reasonable inference that [the defendant] has used such a system") (citing Robbins v. Coca-Cola Co., 2013 WL 2252646 at *3 (S.D. Cal. May 22, 2013) (holding that it is sufficient to allege the existence of an automated dialer on the basis of "indirect allegations" concerning the sheer number of text messages sent)). Because the First Amended Complaint includes these necessary allegations, it states a proper

claim for relief.

***B. Argument.***

***1. CallFire Cannot Demonstrate at this Stage of the Litigation that It Is Exempt from the TCPA as a Common Carrier.***

According to CallFire, it cannot be held liable under the First Amended Complaint because it is a "common carrier" that both Congress and the FCC sought to exempt from TCPA liability. (See CallFire's Mot. to Dismiss [ECF No. 52] at 13:14–14:3, 14:28–18:9.) Specifically, CallFire argues that "[a]n element of a TCPA claim is that the defendant made a call" and that "[t]he FCC has clarified in its regulations implementing the TCPA that making a call means to be the person or entity that initiates the message." (CallFire's Mot. to Dismiss [ECF No. 52] at 13:20–23 (citing 47 U.S.C. § 227(b)(1)(A)), 47 C.F.R. § 64.1200(a)(1)(iii)) (internal emphasis omitted).) Because CallFire merely "route[s] . . . message[s] based on [its] customer's [*sic*] instructions," those customers are the ones who "initiate" the messages, not CallFire. (CallFire's Mot. to Dismiss [ECF No. 52] at 13:27–18.) CallFire is therefore exempt from the TCPA for the same reason that "telephone carriers such as AT&T and Verizon" are exempt. (CallFire's Mot. to Dismiss [ECF No. 52] at 15:3–4.) The only entities who can be held liable, under CallFire's argument, are "the consumer[s] that crafted and directed the message[s] to the selected telephone number[s]," not any entities involved in the dissemination—marketing firms or otherwise—of the messages. (CallFire's Mot. to Dismiss [ECF No. 52] at 15:10–11.)

CallFire's argument fails for two reasons. *First*, CallFire's argument would effectively eviscerate those decisions holding that "third-party" marketers involved in text-messaging campaigns may be held jointly and severally liable under the TCPA. Again, as explained in those cases, third-party vendors may properly be held liable, together with the underlying entities that craft the text messages themselves, for TCPA violations.

*Second*, even assuming CallFire's theory that only "direct" violators of the TCPA (here, SHAC) may be held liable were correct, there is nothing properly before the Court *conclusively* establishing that CallFire is, in fact, the mere conduit it so strenuously professes itself to be. Again, aside from the FCC Form, the Court cannot take judicial notice of any of the "facts" submitted with CallFire's Motion. And, as to the FCC Form, the Court may only accept as true the fact that, as of April 2014, CallFire had a

registration on file with the FCC. Because the "truth" of the contents of that Form cannot be accepted as true, this lone piece of evidence far from categorically demonstrates that CallFire is, in fact, a common carrier. The Motion to dismiss must therefore be denied.

Indeed, it appears that, at the motion-to-dismiss stage in at least four other Ninth Circuit district-court cases, CallFire has made—thus-far without success—virtually the *same* common-carrier argument set forth in the present Motion:

- Couser v. Pre-Paid Legal Services, *et al.*, Southern District of California Case No. 12-CV-2575.
- Shay v. CallFire, Southern District of California Case No. 14-CV-01257.
- Rinky Dink, Inc. v. Electronic Merchant Systems, Inc., *et al.*, Western District of Washington Case No. 13-01347.
- Kauffman v. CallFire, Southern District of California Case No. 14-CV-1333.

(See Req. for Judicial Notice in Opp'n to CallFire's Mot. to Dismiss ("Pl.'s Req. for Judicial Notice") [ECF No. --] at 2:3–3:8 & Exs. 1, 2, 4, 6.[4]) In Shay, the court never had occasion to rule on that argument, as the plaintiff dismissed his case prior to a ruling on the motion. (Pl.'s Req. for Judicial Notice [ECF No. --] Ex. 3.) Similarly, in Rinky Dink, Inc., the court has yet to rule on the motion. (Pl.'s Req. for Judicial Notice [ECF No. --] Ex. 5.) Likewise, although the court granted the motion in Kauffman, it did not do so on the basis of any common-carrier contentions; instead, the court simply concluded that the plaintiff had failed to adequately allege, without speculation, that CallFire itself had sent the improper text message. (Pl.'s Req. for Judicial Notice [ECF No. --] Ex. 7 at p. 4 of doc. no. 9.)

That leaves Couser. And in Couser, the Southern District roundly rejected CallFire's common-carrier argument on the same basis articulated at length above:

> [W]ith only pleadings to go on and no discovery as to the precise relationship between CallFire and [the defendant that the plaintiff seeks to hold vicariously liable under the TCPA], it is simply too early in this litigation for the [c]ourt to affirmatively conclude that CallFire is the middleman it claims. That certainly looks to be the case, but CallFire well knows that the evidence it submits—for example the declaration of its COO Jagannathan Thinakaran—cannot be considered at the motion to dismiss phase.

[4] Unlike CallFire, Plaintiff is not requesting that the Court take judicial notice of the veracity of the contents of any of these prior-filed motions, memoranda, or declarations. Instead, Plaintiff seeks only to judicially notice the fact that, on four prior occasions, CallFire has made the same arguments made in the present Motion, as well as the fact that, on those four occasions, CallFire sought to introduce virtually the same evidence as presented in the within Motion. (See Pl.'s Req. for Judicial Notice [ECF No. --] at 3:9–4:11.)

Couser, 994 F. Supp. 2d 1100, 1104–05 (S.D. Cal. 2014).[5] A review of the Thinakaran declaration submitted in Couser reveals that it is materially identical to the Thinakaran Declaration submitted in the within action. (Compare Pl.'s Req. for Judicial Notice [ECF No. --] Ex. 1 at pp. 2–3 of doc. no. 28-2 with Thinakaran Decl. [ECF No. 52-1] ¶¶ 1–7.) CallFire should therefore "well know[] that [this evidence] cannot be considered at the motion to dismiss phase." Couser, 994 F. Supp. 2d at 1105.

Any reliance on the FCC's decision in In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of America, and the States of California, Illinois, North Carolina, and Ohio for Declaratory Ruling Concerning the Telephone Consumer Protection Act (TCPA) Rules, 28 FCC Rcd. 6574 (2013), would be improper for the exact same reason. According to CallFire, this decision clarifies what it means to be the party "initiating" a call under the TCPA by holding that a seller who hires another party to make a telemarketing call on its behalf can be directly liable instead of simply vicariously liable. (See CallFire's Mot. to Dismiss [ECF No. 52] at 16:21–17:7 & n.17.) CallFire posits that, if a seller (like SHAC) can be held liable for a direct violation of the TCPA—instead of only vicariously liable—without actually have placed the call itself, then entities like CallFire escape liability because another direct infringer exists. But CallFire's conclusion does not necessarily flow from its premise, *i.e.*, just because it may be possible to go after SHAC for a direct violation of the TCPA does not mean that Plaintiff cannot simultaneously seek to hold CallFire directly liable as well. Direct liability, in other words, is not a zero-sum game. In any event, whether SHAC itself exercised the extent of control necessary to trigger the FCC's rule cannot be decided on the basis of the facts alleged in the First Amended Complaint.[6]

Regardless, even if the evidence were considered, it would not establish that CallFire is categorically immune from liability under the common-carrier defense. After all, the two remaining

---

[5] Unsurprisingly, CallFire nowhere cites Couser in its papers.

[6] This likewise precludes any reliance—at this stage—on the FCC's decision in In the Matter of GroupMe, Inc./Skype Communications S.A.R.L. Petition for Expedited Declaratory Ruling, Rules and Regulations Implementing the Telephone Consumer Protections Act of 1991, cited by CallFire for the proposition that "intermediaries in the transmission path should not be required to obtain consent, nor should intermediaries have any TCPA liability when they simply maintain the transmission path of a call or message initiated by a sender." (CallFire's Mot. to Dismiss [ECF No. 52] at 17:12–15 & nn. 18–20 (internal quotations omitted).) Again, whether CallFire "simply maintain[s] the transmission path of a call or message" has not been established by competent evidence. This is a matter that can only be addressed properly after the necessary discovery has been taken.

FCC decisions upon which CallFire relies in support of its interpretation of the TCPA address *facsimile* transmissions, which are covered by 47 U.S.C. § 227(b)(1)(C) of the TCPA—an entirely different set of rules from those that govern *calls* (and text messages) made to cellular telephones, covered by 47 U.S.C. § 227(b)(1)(A)(iii) of TCPA.[7] Compare also 47 C.F.R. § 64.1200(a)(4) (the TCPA's implementing regulation for facsimile transmissions) with id. § 64.1200(a)(1)(iii) (the TCPA's implementing regulation for cellular telephones). As the Couser court itself acknowledged, these rulings are therefore inapposite to the issues implicated by CallFire's alleged text-message violation. See Couser, 994 F. Supp. 2d at 1104 (stating that, with respect to the FCC sources, "there are a few problems," including that, as "analogous as facsimile transmission may be to the phone calls at issue in this case, they are prohibited by a different TCPA rule"). Given the *identical* party and *identical* factual submissions at issue in Couser, this Court should therefore reach the same conclusion reached in that case.

***2. CallFire Likewise Cannot Demonstrate at this Stage of the Litigation that the Primary-Jurisdiction Doctrine Applies.***

Based on the same improper "facts," CallFire makes a related argument that this action should be stayed pending a referral to the FCC under the primary-jurisdiction doctrine. (CallFire's Mot. to Dismiss [ECF No. 52] at 20:1–23:11.) Alternatively, CallFire argues that it should be dismissed without prejudice so that the issue of its liability can be addressed by the FCC while Plaintiff's claims continue against SHAC. (CallFire's Mot. to Dismiss [ECF No. 52] at 23:12–24:1.) CallFire, as before, made this same argument in the four district-court cases noted above, and those courts either did not entertain the request or have not yet ruled on it. In Couser, in fact, the court specifically denied the referral application:

[7] The fax-related FCC decisions upon which CallFire relies are In the Matter of Rules and Regulations Implementing the TCPA of 1991, 7 FCC Rcd. 8752, cited by CallFire for the proposition that "carriers who simply provide transmission facilities that are used to transmit others' unsolicited *facsimile* advertisements may not be held liable" (see CallFire's Mot. to Dismiss [ECF No. 52] at 16:4–6 & n.14 (internal quotations omitted) (emphasis supplied)); and Rules and Regulations Implementing the TCPA of 1991, 68 F.R. 44144-01, cited by CallFire for the propositions that, "if a common carrier is merely providing the network over which a subscriber . . . sends an unsolicited *facsimile* message, that common carrier will not be liable for the *facsimile*" and, "absent a high degree of involvement or actual notice of any illegal uses, these *facsimile* broadcasters are immune from liability under the TCPA" (see CallFire's Mot. to Dismiss [ECF No. 52] at 16:9–12, 16:17–18 & nn.15–16 (internal quotations omitted) (emphasis supplied)).

> [T]he question of liability will still turn on facts that are undeveloped here and need to be further developed, namely the precise relationship between CallFire and [the alleged vicariously liable defendant] and the allocation of responsibility between them. *That is an issue on which CallFire has attempted to present substantial evidence already, but only in a one-sided manner without the benefit of adversarial discovery*. Thus, it seems to the [c]ourt that this case should go forward. If, after taking discovery from CallFire and [the other defendant], [the plaintiff] still believes CallFire is liable under the TCPA, the [c]ourt will entertain a renewed motion to stay this case under the primary jurisdiction doctrine, or, assuming the FCC has spoken to the issue by then, a motion for summary judgment.

Couser, 994 F. Supp. 2d at 1106 (emphasis supplied).

The Couser court correctly understood that referral to the FCC only makes sense if CallFire, in fact, *is* a common carrier—and it is simply too premature to tell whether CallFire is what it claims to be. That is what distinguishes the lone TCPA primary-jurisdiction case cited by CallFire. (See CallFire's Mot. to Dismiss [ECF No. 52] at 22:11–24 (citing Fried v. Sensia Salon, Inc., 2013 WL 6195483 (S.D. Tex. Nov. 27, 2013).) Fried, in other words, was not decided at a preliminary motion-to-dismiss stage; instead, a referral to the FCC only occurred after an adequate evidentiary record had been put before the court sufficient to convince the court that referral was proper. See Fried, 2013 WL 6195483 at *1–2 * nn.1–23.)

Putting the premature nature of CallFire's request to the side, though, the referral request should also be denied on the merits. In terms of the elements necessary to establish a basis for referral, CallFire cites Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc., 307 F.3d 775 (9th Cir. 2002). (See CallFire's Mot. to Dismiss [ECF No. 52] at 21:6–11 (citing Syntek).) A more recent catalog of those elements, though, can be found in Maronyan v. Toyota Motor Sales, U.S.A., Inc., 658 F.3d 1038 (9th Cir. 2011). According to Maronyan, "[t]he primary jurisdiction doctrine prescribes deference to an administrative agency where (1) the issue is not within the conventional experiences of judges, (2) the issue involves technical or policy considerations within the agency's particular field of expertise, (3) the issue is particularly within the agency's discretion, and (4) there exists a substantial danger of inconsistent rulings." Maronyan, 658 F.3d at 1048–49 (internal quotations omitted). It is to be applied "only in a 'limited set of circumstances' and is 'not designed to secure expert advice from agencies every time a court is presented with an issue conceivably within the agency's ambit.'" Swearingen v. Late July Snacks LLC, 2014 WL 2215878 at *2 (N.D. Cal. May 29, 2014) (quoting Clark v. Time Warner Cable, 523 F.3d 1110, 1114 (9th Cir. 2008)) (internal quotations omitted). It therefore "is to be

invoked sparingly," particularly given that "it often results in added expense and delay." Alpharma, Inc. v. Pennfield Oil Co., 411 F.3d 934, 938 (8th Cir. 2005)).

As to these elements, Plaintiff notes that there is no reason to presume that the common-carrier issue with which CallFire is so concerned is something so outside of this Court's "conventional experience" as to render the Court incapable of making proper rulings. If it turns out that, based on competent evidence, CallFire is a common carrier, then the Court presumably need only apply those FCC regulations that CallFire contends are controlling on that issue. In other words, to the extent that the FCC regulations are what CallFire claims them to be, then no novel questions should be presented by the within litigation. (See CallFire's Mot. to Dismiss [ECF No. 52] at 21:11–15 (citing Clark for the proposition that referral to the FCC is appropriate when "the issue before the court raise[s] a novel question regarding the application of a statute").) There is thus no threat of any inconsistency. Instead, the Court will simply be tasked with applying those regulations to the facts. Because a referral to the FCC will therefore be nothing more than an attempt "to secure expert advice," it should be denied. Swearingen, 2014 WL 2215878 at *2 (quoting Clark, 523 F.3d at 1114).

### *III. CallFire's Twombly and Iqbal Contentions.*

The Motion's remaining argument is that, notwithstanding CallFire's readily understood involvement in this case, the First Amended Complaint fails to allege that CallFire itself made the call—*i.e.*, sent the text message—to Plaintiff. (CallFire's Mot. [ECF No. 52] at 14:8–27.) According to CallFire, Plaintiff has simply "lump[ed] all the Defendants together" in his allegations. (CallFire's Mot. [ECF No. 52] at 14:5.) Such a "scattershot approach to pleading," CallFire contends, "fails to satisfy [r]ule 8" of the Federal Rules of Civil Procedure.[8] (CallFire's Mot. [ECF No. 52] at 14:8.) CallFire also seems to suggest that, under rule 8, Plaintiff is required to confront head-on in his pleadings the common-carrier exemption by alleging facts sufficient to overcome that defense.[9] (See CallFire's Mot.

[8] The boilerplate nature of this argument is highlighted by the judicially noticeable materials from the other CallFire actions. Tellingly, CallFire made the exact same argument—using the exact same "lumping-together" and "scattershot" language—in Couser, Shay, and Rinky Dink, Inc. (See Pl.'s Req. for Judicial Notice [ECF No. --] Ex. 1 at p. 10 of doc. no. 28-1, Ex. 2 at p. 12 of doc. no. 4-1, Ex. 4 at p. 16 of doc. no. 58.) Because CallFire was the only defendant in Kauffman, no such argument was made in that case. (See Pl.'s Req. for Judicial Notice [ECF No. --] Ex. 6.)

[9] CallFire bases this argument on the above-noted FCC rulings applicable to *facsimile* broadcasters. (See CallFire's Mot. [ECF No. 52] at 16:2–17 (stating that, under In the Matter of Rules and Regulations

[ECF No. 52] at 15:14–15, 15:19–20 (arguing that the First Amended Complaint fails because it "does not allege that CallFire had notice of the alleged illegal use of its services").) Both of these contentions fail under rule 8.

***A. The Legal Standard Under Rule 8 of the Federal Rules of Civil Procedure.***

Rule 8 states that a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a). As CallFire correctly points out, under Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009), rule 8 also requires that the complaint allege facts instead of legal conclusions and that those facts articulate a plausible claim for relief. (CallFire's Mot. [ECF No. 52] at 12:3–21 (citing Twombly and Iqbal).) However, "[f]actual allegations do not cease to be factual . . . if they quote a statute's language." Vaccaro v. CVS Pharmacy, Inc., 2013 WL 3776927 at *2 (S.D. Cal. July 16, 2013). For example, then, an "allegation of a telephone call remains factual even though the word 'call' is found in the TCPA." Id. Similarly, "plausible" does not mean "probable." A complaint therefore should survive a motion to dismiss "even if it strikes a savvy judge that actual proof of those facts is improbable[] and that a recovery is very remote and unlikely." Twombly, 550 U.S. at 556 (internal quotations omitted).

Furthermore, even post-Twombly and -Iqbal, plaintiffs are entitled to the benefit of "all reasonable inferences" stemming from their complaints' allegations. E.g., Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1054 (9th Cir. 2011) (citing Aschroft). To that end, "[a] 'complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible.'" Hon. William W Schwarzer, *et al.*, California Practice Guide: Federal Civil Procedure Before Trial (The Rutter Group 2014) ¶ 8:127b (quoting Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013)) (citing Manning v. Boston Med. Ctr. Corp., 725 F.3d 34, 49 (1st Cir. 2013)). See also Vaccaro, 2013 WL 3776927 at *2 (in analyzing a motion to dismiss a TCPA claim, stating that "courts consider whether, '*read as a whole*, the complaint contains sufficient facts to show

---

Implementing the TCPA of 1991, 7 FCC Rcd. 8752, and Rules and Regulations Implementing the TCPA of 1991, 68 F.R. 44144-01, "if a common carrier is merely providing the network over which a subscriber . . . sends an unsolicited facsimile message, that common carrier will not be liable for the facsimile" absent a showing of "actual notice" that TCPA violations were occurring) (internal quotations omitted).) Again, different rules apply for facsimile transmissions under the TCPA. CallFire's argument regarding "actual notice" is therefore a non-starter.

that it is plausible that [d]efendants'" violated the TCPA) (quoting Kramer v. Autobytel, Inc., 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010)) (emphasis supplied). Fundamentally, the touchstone remains whether the complaint gives the defendant "fair notice of what the . . . claim [pled against it] is." Twombly, 550 U.S. at 555.

### ***B. Argument: The First Amended Complaint Adequately Alleges that CallFire Made the At-Issue Call.***

Under these general rules, the First Amended Complaint clearly states a plausible claim for relief. Again, Plaintiff has alleged that SHAC hired CallFire to conduct its text-messaging campaign and that, as part of that campaign, Plaintiff received a text message. Indeed, Plaintiff specifically alleges in the First Amended Complaint that SHAC itself identified CallFire as the texting entity in SHAC's written discovery responses.[10] The reasonable inference stemming from these allegations is that CallFire, in fact, was the entity that sent the at-issue text message.

Confronted with the same argument, the Couser court denied CallFire's motion after reviewing essentially the same allegations presently at issue:

> CallFire's first argument seems to be that Couser has failed to allege that CallFire even called her. If that's true, then naturally Couser's TCPA claims fail, because they require an actual call. 47 U.S.C. § 227(b)(1)(A).
>
> The [c]ourt disagrees with CallFire. The allegations against it are thin, to be sure. Couser says CallFire is a California company "that provides voice and text connectivity" and "advertises and engages in text messaging through the use of automated dialers and prerecorded messages," which doesn't speak to its actions in this case at all. And then it says "[d]efendants began contacting [p]laintiff for the purpose of soliciting [p]laintiff's business," which CallFire argues isn't an allegation with respect to it. *It essentially is, though*. The whole allegation, quoted above, is that "at the express instruction and guidance of Legal Shield, through Legal Shield's employee and representative, Frick, [d]efendants began contacting [p]laintiff for the purpose of soliciting [p]laintiff's business, on her cellular telephone . . . ." Considering that there are only three [d]efendants in this case—Legal Shield, Frick, and CallFire—this sentence only makes sense if "[d]efendants" refers to CallFire. That is, the clear meaning of this allegation is that Legal Shield, through Frick, commissioned CallFire to contact Couser. Thus, the [c]ourt isn't troubled by the fact that, as CallFire puts it, "[p]laintiff never makes an allegation specifically as to CallFire." The allegation is adequately there in ¶ 26 of Couser's complaint.

---

[10] This is what distinguishes the decision in Kauffman. Again, in Kauffman, the court granted CallFire's motion on the ground that Plaintiff's complaint "d[id] not explain how [p]laintiff knew that [CallFire] placed the text messages" to him. (Pl.'s Req. for Judicial Notice [ECF No. --] Ex. 7 at p. 4 of doc. no. 9.) Unlike the plaintiff in Kauffman, Plaintiff herein has clearly alleged in the First Amended Complaint that SHAC identified CallFire as the entity retained to conduct its text-messaging campaign.

Couser, 994 F. Supp. 2d at 1102 (emphasis supplied) (internal citations omitted).

Indeed, it seems abundantly clear that CallFire understands precisely the nature of the claim pled against it. CallFire, after all, has submitted affirmative evidence with its Motion detailing what it contends are the services it provides. According to those materials, CallFire's business is to place calls for its customers. CallFire, in other words, cannot have it both ways by feigning ignorance as to what Plaintiff's case is about while simultaneously arguing that it is categorically exempt from Plaintiff's claim under a common-carrier theory. See id. at 1103 (explaining that CallFire's own evidence submitted with its motion "describes its services in a way that suggests *it* actually places the calls," which "gives the impression that CallFire *is* the caller, or certainly close enough to the caller) (emphasis in original).

Nor may CallFire rely on the notion that Plaintiff had some sort of duty to plead around the common-carrier exemption. It would appear that the issue of exemption is an affirmative defense that CallFire bears the burden of establishing. And the law is settled that "a [r]ule 12(b)(6) motion . . . cannot be used to raise an affirmative defense" absent affirmative defenses disclosed on the face of the complaint itself. Thomas v. Lind, 2012 WL 6020101 at *5 (N.D. Cal. Dec. 3, 2012) (citing Xechem, Inc. v. Bristol-Myers Squibb Co., 372 F.3d 899, 901 (7th Cir. 2004)). See also Weisbuch v. Cnty. of Los Angeles, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (stating that, "*[i]f the pleadings* establish facts compelling a decision," the court may grant the motion) (emphasis supplied); Gray v. Evercore Restructuring L.L.C., 544 F.3d 320, 324 (1st Cir. 2008) (explaining that, to grant a rule 12(b)(6) motion on the basis of an affirmative defense, the facts establishing that defense must (a) "be definitively ascertainable from the complaint and other allowable sources of information" and (b) "suffice to establish the affirmative defense with certitude"). Again, the First Amended Complaint simply alleges that SHAC retained CallFire to conduct its text-marketing campaign and that, pursuant to that retention, Plaintiff—and upwards of 1,000 other individuals—received a telemarketing or advertising text message via an automated text-messaging system. There is nothing in the First Amended Complaint suggesting that CallFire is a common carrier, so even that issue, in and of itself, is outside the pleading's four corners. CallFire's Motion must therefore be denied.

/ / / / /

***IV. Conclusion.***

There is no need for the Court to "re-invent the wheel" in ruling on CallFire's Motion to dismiss. The Couser court—in a published opinion—has already ruled on the merits of CallFire's arguments based on the same facts, both intrinsic and extrinsic. The within Court should issue a consistent ruling by denying CallFire's Motion, in full.

Dated: September 25, 2014

JAURIGUE LAW GROUP

/s/ *David Zelenski*

Michael J. Jaurigue
Abigail A. Zelenski
David Zelenski
Christine M. Pham
*Attorneys for Plaintiff*