IMRAN KHALIQ (SBN 232607)
**ARENT FOX LLP**
55 Second Street, 21st Floor
San Francisco, CA 94105-3470
Telephone: 415.757.5500
Facsimile: 415.757.5501
Imran.Khaliq@arentfox.com

Attorneys for Defendant
CALLFIRE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOHN LUNA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SHAC, LLC., dba SAPPHIRE GENTLEMEN'S CLUB, a Nevada corporation; CLUB TEXTING, INC., a corporation; and CALLFIRE, INC., a corporation<br><br>Defendants. | Case No. CV 14-00607 HRL<br><br>CLASS ACTION<br><br>**DEFENDANT CALLFIRE, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Date: October 21, 2014<br>Time: 10 AM<br>Courtroom: 2<br>Magistrate Judge: Howard R. Lloyd<br><br>[filed concurrently with Defendant's Request for Judicial Notice] |

**TABLE OF CONTENTS**


**I. INTRODUCTION AND SUMMARY OF THE ARGUMENT** .................................... 1

**II. PLAINTIFF'S ATTEMPTS TO CAST DOUBT ON CALLFIRE'S COMMON CARRIER STATUS FAIL AS A MATTER OF LAW AND FACT** .................................... 3

**III. CALLFIRE'S TERMS OF SERVICE ARE PROPERLY BEFORE THE COURT** .................................... 6

**IV. PLAINTIFF'S RELIANCE ON *COUSER* IS MISPLACED** .................................... 10

**V. IF THE COURT DECLINES TO DISMISS THE COMPLAINT, THE COURT SHOULD REFER THIS MATTER TO THE FCC** .................................... 12

**CONCLUSION** .................................... 13

## TABLE OF AUTHORITIES

Page(s)

FEDERAL CASES

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) ..... 1

*AT&T Corp. v. City of Portland*, 216 F.3d 871 (9th Cir. 2000) ..... 11

*Bath Petroleum Storage, Inc. v. Mkt. Hub Partners, L.P.*, 129 F. Supp. 2d 578 (W.D.N.Y. 2000) *aff'd*, 229 F.3d 1135 (2d Cir. 2000) ..... 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..... 1

*Branch v. Tunnell*, 14 F.3d 449 (9th Cir. 1994) ..... 6

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991) ..... 8

*Couser v. Pre-Paid Legal Shield Servs., Inc.*, CIV No. 12-2575-LAB-WVG, 2014 WL 197717 (S.D. Cal. Jan. 16, 2014) ..... 9, 10, 11, 12

*Leckler v. Cashcall, Inc.*, CIV No. 07-4002, 2008 WL 5000528 (N.D. Cal. Nov. 21, 2008) ..... 6

*Mendez v. C-Two Group, Inc.*, CIV No. 13-5914-EMC, Order Granting Defendant MobileStorm Inc.'s Motion to Dismiss (ECF No. 23) (N.D. Cal. April 21, 2014) ..... 2, 3, 10

*Missud v. Nevada*, 861 F. Supp. 2d 1044 (N.D. Cal. 2012) ..... 2

*Olney v. Job.com, Inc.*, CIV No. 12-cv-1742, 2014 WL 1747674 (E.D. Cal. May 1, 2014) ..... 2, 6

*Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67 (2d Cir. 1998) ..... 2

*Wilson v. City of San Jose*, 111 F.3d 688 (9th Cir. 1997) ..... 1

FEDERAL STATUTES

28 U.S.C. § 2342(1) ..... 2, 6

OTHER AUTHORITIES

47 C.F.R. § 64.1200(a)(1)(iii) ..... 9

Fed. R. Civ. P. 12(b)(6) ..... 1, 2, 8, 13

Fed. R. Civ. P. 41(a)(1)(i) ..... 1

Fed. R. Civ. P. 56 ..... 8

Fed. R. Evid. 106 ..... 4

*In the Matter of Enforcement of Prohibitions Against the Use of Common Carriers for the Transmission of Obscene Materials*, 2 FCC Rcd. 2819 (1987) .......... 3

*In the Matter of GroupMe, Inc./Skype Commc'ns S.A.R.L. Petition for Expedited Declaratory Ruling, Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, CG Docket No. 02-278 (rel. Mar. 27, 2014) .......... 10

Restatement (Third) of Agency § 7.01 cmt. d.......... 9

Defendant CallFire, Inc. ("CallFire"), through counsel and pursuant to Fed. R. Civ. P. 12(b)(6), respectfully files this Reply in Support of its Motion to Dismiss Plaintiff's First Amended Complaint ("Motion to Dismiss") (Dkt. No. 52).

## I. INTRODUCTION AND SUMMARY OF THE ARGUMENT

In its Motion to Dismiss, CallFire[1] demonstrated that Plaintiff's First Amended Complaint ("Complaint") (Dkt. No. 44) should be dismissed because neither the Federal Communications Commission ("FCC") nor the courts have ever held that a passive common carrier is subject to liability for violating the Telephone Consumer Protection Act ("TCPA") by virtue of its customers' use of its telecommunications services. Mem. at 6-12.

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. Plaintiff's generic allegations that CallFire in some unspecified way "conducted Defendant SHAC's telemarketing," that Defendant Shac directed, and "CALLFIRE delivered the messages" that Defendant Shac controlled, Compl. ¶¶ 9, 10, does not state a TCPA claim against CallFire, irrespective of its common-carrier immunity. Therefore, although Plaintiff *attempts* to plead that Callfire should be liable under the TCPA, the controlling law, facts and Plaintiff's own admission that his allegations against CallFire are based on Defendant Shac's discovery responses, render such claims completely implausible and speculative at best.

Alternatively, CallFire demonstrated that if the Court declines to dismiss the claims

---

[1] CallFire's Motion to Dismiss was filed on behalf of itself and Club Texting, Inc. ("Club Texting"). As Plaintiff notes in his Opposition, however, he has since voluntarily dismissed Club Texting from this case pursuant to Rule 41(a)(1)(i). Because the voluntary dismissal was effective upon filing, this Reply is only being filed on behalf of CallFire. *See Wilson v. City of San Jose*, 111 F.3d 688, 692 (9th Cir. 1997) (holding plaintiff may dismiss particular defendant if plaintiff files notice of dismissal before such defendant serves an answer and the "dismissal is effective on filing and no court order is required.").

against CallFire entirely, it should refer the case to the FCC under the primary jurisdiction doctrine. As the expert agency with the responsibility for implementing and enforcing the TCPA, the FCC should have the first opportunity to address Plaintiff's attempt to expand liability under the TCPA far beyond its intended scope. *Id.* at 13-17.

In his Opposition,[2] Plaintiff criticizes CallFire for filing similar motions to dismiss in response to four recent putative TCPA class action complaints filed against it. Opp. at 1. Plaintiff, however, fails to provide any reason why CallFire should or would reinvent the wheel when CallFire is forced to respond to the same boilerplate TCPA complaints filed by plaintiffs that are unaware of or unwilling to recognize CallFire's status as a common carrier and the regulatory implications of that status. As discussed more fully below, under the Hobbs Act, 28 U.S.C. § 2342(1), district courts are bound by the FCC's rulings, including that a plaintiff is required to overcome CallFire's common-carrier immunity at the pleading stage. *See, e.g., Olney v. Job.com, Inc.*, CIV No. 12-cv-1742, 2014 WL 1747674, at *4 (E.D. Cal. May 1, 2014) ("The FCC's interpretations of the TCPA are controlling unless invalidated by a court of appeals."); *see Missud v. Nevada*, 861 F. Supp. 2d 1044, 1052 (N.D. Cal. 2012) (holding that plaintiff failed to allege sufficient facts in his complaint to overcome defendants' qualified immunity); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) (affirming district court's dismissal of complaint in the context of Rule 12(b)(6) motion on the basis of immunity, and rejecting argument that district court had impermissibly relied on extrinsic material).

Indeed, in this District, a TCPA class action cannot be maintained against a communications service provider unless the plaintiff alleges that the service provider was the *originator* or *controller* of the content of the messages its customer was alleged to have sent through its service, or otherwise had a high degree of involvement or actual notice of the unlawful activity and failed to take steps to prevent the text transmissions. *See Mendez v. C-Two Group, Inc.*, CIV No. 13-5914-EMC, Order Granting Defendant MobileStorm Inc.'s Motion to Dismiss

---

[2] Memorandum of Points and Authorities in Opposition to Defendant CallFire, Inc.'s Motion to Dismiss Amended Complaint ("Opposition") (Dkt. No. 57).

(ECF No. 23) (N.D. Cal. April 21, 2014). Plaintiff has not met this standard. Indeed, Plaintiff alleges here that Defendant Shac controlled the messages that Shac initiated through CallFire's common carrier services. Compl. ¶ 10. Accordingly, *Mendez* is squarely on point, and CallFire should be dismissed.

CallFire has been a common carrier at all relevant times to this case, as is made clear by the Federal Communications Commission's ("FCC") regulations. Because Plaintiff concedes that the accuracy of CallFire's FCC registration "cannot be questioned," Opp. at 8, and also concedes that common carriers are entitled to TCPA immunity for simply "sending" their customers' messages, *id.*, Plaintiff has pled himself out of court by alleging that Defendant Shac "retained the right to control – and, in fact, did control – the content of those messages, as well as to whom Defendants CLUB TEXTING and CALLFIRE delivered the messages." Compl. ¶ 10.

Further, the Complaint does not allege that CallFire had notice of the alleged illegal use of its services by its customer in this case, nor does Plaintiff plausibly allege that CallFire initiated the calls made by Defendant Shac. Plaintiff therefore fails to state a claim that CallFire violated the TCPA, either directly or vicariously. Because any further amendment would be futile, the claims against CallFire should be dismissed with prejudice. Even if the Court were to consider Plaintiff's inapposite legal authority, for the reasons discussed below, Plaintiff fails to demonstrate that his claims should not be dismissed, or alternatively, that this case should not be referred to the FCC.

## II. PLAINTIFF'S ATTEMPTS TO CAST DOUBT ON CALLFIRE'S COMMON CARRIER STATUS FAIL AS A MATTER OF LAW AND FACT

CallFire demonstrated that it was at all relevant times to the Complaint an FCC licensed carrier, and that the FCC exempts common carriers from liability for their customers' transmissions unless they have a "high degree of involvement" or "actual notice" of the illegal use of their services.[3] Mem. at 3-4. Plaintiff failed to allege that CallFire had a high degree of

[3] *In the Matter of Enforcement of Prohibitions Against the Use of Common Carriers for the Transmission of Obscene Materials*, 2 FCC Rcd. 2819, 2820 (1987). Contrary to Plaintiff's assertion that CallFire is basing its common-carrier immunity on "FCC rulings applicable to *facsimile* broadcasters," Opp. at 16 n. 9 (emphasis in original), this FCC order has nothing to do

involvement or actual notice of the alleged illegal use of its service in this case. To the contrary, Plaintiff alleges that Defendant Shac controlled its own messages, including the content and the recipients of these messages. Compl. ¶ 10. As a result, Plaintiff fails to state a claim against CallFire.

The thrust of Plaintiff's response is that, although CallFire's FCC Form 499 Database Registration establishes that CallFire is in fact an FCC licensed common carrier entitled to common-carrier immunity, this registration only demonstrates that CallFire was a common carrier as of April 2014, before Plaintiff alleges he received the message in question on January 22, 2014. Opp. at 8; *see also* Compl. ¶ 10. This, according to Plaintiff, therefore relieves him of having to plead that CallFire had a "high-degree of involvement" in its customer's messages or "actual notice" that CallFire's customer was allegedly violating the TCPA in order to overcome CallFire's common-carrier immunity. Opp. at 8. As Plaintiff concedes, it is a judicially noticeable *fact* that CallFire's common carrier registration is current as of April 1, 2014, and as established below, as a matter of *law*, this can only be possible if CallFire was an FCC licensed common carrier in 2013.

Tellingly, although Plaintiff's counsel has apparently reviewed all of CallFire's papers in the other cases he identified, he does not confront any of the authority addressing the same argument that CallFire conclusively rebutted in its reply in the *Kauffman* case, which was filed the day before the court dismissed the case against CallFire. The FCC's 499 carrier database maintained by the FCC indicates whether a particular carrier is current with its obligations related to reporting its carrier revenues from the *previous calendar year*.[4] Indeed, much like an individual's tax return filed in April 2014 relates to that person's tax obligations incurred in 2013,

---

with facsimile broadcasters. Rather, it is an FCC order of general applicability conferring on a common carrier immunity for any "illegal use of its facilities" unless a Plaintiff pleads that the common carrier had a "high degree of involvement" or "actual notice" of the illegal use of its services. Mem. at 3.

[4] *See* 2014 FCC Form 499-A at 13 (directing carriers to "report revenue information for calendar year 2013" for the 2014 Form 499-A submission) (available at http://usac.org/_res/documents/cont/pdf/forms/2014/2014-FCC-Form-499A-Form-Instructions.pdf) (last accessed Oct. 1, 2014).

CallFire would not be listed by the FCC as being current with its carrier reporting obligations as of April 1, 2014 unless it was a licensed common carrier in 2013 and met its corresponding carrier reporting obligations for that year's operations.

Under the FCC's regulations, these annual filings are due for carriers on April 1 of each calendar year.[5] As a result, when the FCC indicates that CallFire's "registration [is] current as of April 1, 2014,"[6] that simply means CallFire timely reported its 2013 annual carrier revenues as part of this annual filing requirement. It does not mean, as Plaintiff suggests without any support, that CallFire was only a common carrier as of April 2014. Opp. at 8. In fact, if Plaintiff had conducted a cursory search of this carrier database, he would have noticed that AT&T,[7] Verizon,[8] Sprint,[9] Comcast,[10] and Qwest[11] are all similarly registered as being current as of April 1, 2014.

Even under Plaintiff's overly restrictive view of the facts susceptible to judicial notice, it is "generally known" that telephone service and FCC licensed common carriers existed prior to April of this year. Opp. at 7. Like all of these other common carriers, CallFire's FCC Form 499 Database Registration establishes that CallFire was in fact an FCC licensed common carrier in *2013* - before Plaintiff alleges he received the message in question – and CallFire timely reported its 2013 common carrier revenue to the FCC by April 1, 2014. Thus, CallFire is, and was at all times relevant to the Complaint, a common carrier that by Plaintiff's own allegations had no involvement in the telephone numbers its customer chose to call or control over the content of the

---

[5] *Id.* at 5 (requiring carriers to report their 2013 information on April 1, 2014).

[6] *See* http://apps.fcc.gov/cgb/form499/499detail.cfm?FilerNum=829923 (last accessed Oct. 1, 2014).

[7] *See* http://apps.fcc.gov/cgb/form499/499detail.cfm?FilerNum=806172 (last accessed Oct. 1, 2014).

[8] http://apps.fcc.gov/cgb/form499/499detail.cfm?FilerNum=808065 (last accessed Oct. 1, 2014).

[9] http://apps.fcc.gov/cgb/form499/499detail.cfm?FilerNum=804636 (last accessed Oct. 1, 2014).

[10] http://apps.fcc.gov/cgb/form499/499detail.cfm?FilerNum=822102 (last accessed Oct. 1, 2014).

[11] http://apps.fcc.gov/cgb/form499/499detail.cfm?FilerNum=808440 (last accessed Oct. 1, 2014).

message itself. Compl. ¶ 10.

The Complaint also does not allege that CallFire had notice of the alleged illegal use of its services by its customer in this case. At bottom, the FCC, the agency tasked with both regulating common carriers and implementing the TCPA, has made a final decision that common carriers are entitled to immunity under the facts alleged.[12] Indeed, Plaintiff himself states that "[i]f it turns out that, based on competent evidence, CallFire is a common carrier, then the Court … need only apply those FCC regulations that CallFire contends are controlling on that issue." Opp. at 16.

CallFire agrees. Combining the judicially noticeable fact that CallFire is an FCC licensed common carrier with the FCC's regulations conclusively establishing that CallFire was in fact so licensed at all times relevant to the complaint, there can be no question that Plaintiff must – but did not – plead sufficient facts to overcome CallFire's common-carrier immunity. Plaintiff therefore fails to state a claim against CallFire. Because any further amendment would be futile, the claims against CallFire should be dismissed with prejudice.

## III. CALLFIRE'S TERMS OF SERVICE ARE PROPERLY BEFORE THE COURT

Plaintiff argues that after putting CallFire's relationship with Defendant Shac and CallFire's service in general at issue, he should be able to hide behind his insufficient allegations and the Court should refuse to consider CallFire's Terms of Service and the declaration summarizing and authenticating the same. Opp. at 2. Plaintiff's argument falls apart because his Complaint necessarily relies on CallFire's Terms of Service and implicitly incorporates these terms by reference. "[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be

[12] The Court is bound to follow the FCC's rulings. The Administrative Orders Review Act, also known as the Hobbs Act, grants federal *appellate* courts exclusive jurisdiction to determine the validity of final FCC orders, *see* 28 U.S.C. § 2342(1), meaning they are binding on all district courts. *See*, *e.g.*, *Olney v. Job.com, Inc.*, CIV No. 12-cv-1742, 2014 WL 1747674, at *4 (E.D. Cal. May 1, 2014) ("The FCC's interpretations of the TCPA are controlling unless invalidated by a court of appeals."); *see also Leckler v. Cashcall, Inc.*, CIV No. 07-4002, 2008 WL 5000528, at *2 (N.D. Cal. Nov. 21, 2008) (vacating its own order because "it did not have jurisdiction to review the FCC's declaratory ruling.").

considered in a ruling on a 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds*. The Court can and should properly consider all facts that demonstrate the sheer implausibility of Plaintiff's claims.

Plaintiff alleges that his understanding of the service Defendant Shac received from CallFire is based on Defendant Shac's discovery responses:

> "[**b]ased**, in part, **on Defendant SHAC's responses to Plaintiff's first set of written discovery requests** served in the within action, Plaintiff is informed and believes, and based thereon alleges, that an entity named 'EZTexting.com' conducted Defendant SHAC's telemarketing and advertising text-messaging on Defendant SHAC's behalf, with Defendant SHAC's authorization, at SHAC's direction."

Compl. ¶ 9 (emphasis added).[13] Similarly, in his Opposition, Plaintiff characterizes his allegations as to CallFire as follows:

> CallFire was specifically hired by SHAC to send the January 2014 text message, and, more generally, to conduct SHAC's telemarketing and advertising campaign, **as noted in SHAC's responses to Plaintiff's written discovery requests in this action.**

Opp. at 9 (emphasis added). In point of fact, in his discovery requests to Defendant Shac, Plaintiff requested "[a]ll DOCUMENTS **describing the services to be provided by any outside vendor** since October 16, 2013 **for the delivery** of SHAC, LLC's telemarketing or advertising text messages to consumers."[14] Defendant Shac's only substantive response describing the service it received from CallFire was to point Plaintiff to CallFire's Terms of Service: "Terms and conditions of Defendant's third party vendor can be found at http://www.eztexting.com/terms."[15]

Thus, by Defendant Shac's own admission, the services it received from CallFire are only the services, and the terms under which such services were provided, as described in CallFire's Terms of Service. Given that CallFire's Terms of Service is the only discovery Defendant Shac

---

[13] Plaintiff never details any other "part" that formed the basis of his understanding of CallFire's role in the messages its customer allegedly initiated to Plaintiff beyond Defendant Shac's discovery responses.

[14] *See* Defendant SHAC, LLC's Supplemental Responses to Plaintiff's First Set of Request for Production of Documents, Request No. 20 (emphasis added) ("Supplemental Responses"). (Attached hereto as Exhibit A).

[15] *Id.* Because CallFire owns and controls www.EZTexting.com, CallFire's Terms of Service previously submitted to the Court are found at http://www.eztexting.com/terms.

produced that describes the service it received from CallFire before Plaintiff filed his First Amended Complaint,[16] it is unreasonable for Plaintiff to assert that the Complaint "is not premised on CallFire's Terms of Service." Opp. at 7.[17] If CallFire's Terms of Service were the only information Plaintiff had about CallFire's service that was produced by Shac and Plaintiff alleges he is basing his allegations about CallFire's service on Shac's discovery responses, CallFire's Terms of Service can be the *only* information Plaintiff relied upon to form his "information and belief" about CallFire's role in Defendant Shac's messages. CallFire's Terms of Service are therefore necessarily integral to the Complaint.

The Court therefore can and should consider CallFire's Terms of Service in ruling on its Motion to Dismiss without converting it to a motion for summary judgment. The Second Circuit's decision in *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991) is instructive. In it, the court stated that

> a finding that plaintiff has had notice of documents used by defendant in a 12(b)(6) motion is significant since … the problem that arises when a court reviews statements extraneous to a complaint generally is the lack of notice to the plaintiff that they may be so considered; it is for that reason—requiring notice so that the party against whom the motion to dismiss is made may respond—that Rule 12(b)(6) motions are ordinarily converted into summary judgment motions. Where plaintiff has actual notice of all the information in the movant's papers and **has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.**

*Id.* at 48 (considering "documents plaintiffs had either in its possession or had knowledge of and upon which they relied in bringing suit" because "[i]t did not lack notice of those documents" and "these papers were integral to its complaint") (emphasis added); *see also Bath Petroleum Storage, Inc. v. Mkt. Hub Partners,* L.P., 129 F. Supp. 2d 578, 581 (W.D.N.Y. 2000) *aff'd,* 229 F.3d 1135 (2d Cir. 2000) (considering documents not explicitly referenced in complaint because

---

16 Defendant Shac served its Supplemental Responses on August 5, 2014. Plaintiff filed his First Amended Complaint a week later on August 13, 2014.

17 It is equally disingenuous for Plaintiff to assert that there is nothing "specifically averring that SHAC itself agreed to these Terms." Opp. at 7. If CallFire's Terms of Service are the only information Defendant Shac produced about the service it received from CallFire, and the Terms of Service expressly state that the use of CallFire's service is subject to these Terms of Service, Defendant Shac necessarily agreed to these Terms of Service by using CallFire's service.

plaintiff had notice of documents and relied on them).

Again, CallFire's Terms of Service is the only document produced by Defendant Shac describing the service it received from CallFire. Plaintiff necessarily had notice of these terms as he added CallFire to this case a week after Defendant Shac produced this information. And Plaintiff must have also necessarily relied on CallFire's Terms of Service to form his "information and belief" about CallFire's role in Defendant Shac's messages because these terms were the only information Defendant Shac produced and Plaintiff expressly states his allegations are based on Defendant Shac's discovery responses. Stated differently, Plaintiff could not have relied on anything else, and he certainly does not identify any other material that formed the basis of his information and belief.

Dispositive here, however, CallFire's Terms of Service explain that it does not control the content, destination or timing of its customers' telephone calls that *they initiate* through CallFire's common carrier services. Mem. at 1-3. And as CallFire previously established, the FCC's regulations only make it actionable to *initiate* a message that is otherwise unlawful under the TCPA; intermediate message *transmission* that occurs after a customer initiates his own message is not separately actionable. Mem. at 6, 10.[18] On this independent ground, even if CallFire were not entitled to common-carrier immunity (which it is), the Complaint fails to state a claim that CallFire violated the TCPA.[19]

---

[18] To be clear, the fact that Plaintiff does not allege that CallFire initiated the message in question is only an alternative, generally applicable, ground to dismiss CallFire under the plain language of the FCC's regulations that district courts are bound to adhere to under the Hobbs Act. *See* 47 C.F.R. § 64.1200(a)(1)(iii). Plaintiff still was required, and failed, to plead sufficient facts to overcome CallFire's separate defense of common-carrier immunity.

[19] Plaintiff's argument that CallFire can be joint and severally liable for Defendant Shac's alleged TCPA violations therefore misses the mark on several grounds. First, this argument ignores CallFire's common-carrier immunity. Second, it is predicated on CallFire "actually commit[ing] the conduct that violated the TCPA." Opp. at 10. Because intermediate message transmission is not separately actionable under the TCPA, CallFire's message transmission service cannot violate the TCPA; only Defendant Shac's *initiation* of an allegedly unlawful message can violate the TCPA. Further, any other theory of liability would conflict with the fact that the TCPA does not contemplate liability for aiding and abetting another's statutory violation. Mem. at 11-12. Indeed, Plaintiff's "respondent inferior" theory of liability turns vicarious liability on its head by apparently arguing that a principal's agent can be vicariously liable for following the express instructions of the principal. *See* Restatement (Third) of Agency § 7.01 cmt. d (explaining that "there is no principal [*sic*] of 'respondeat inferior'").

## IV. PLAINTIFF'S RELIANCE ON *COUSER* IS MISPLACED

Plaintiff's last attempt to resuscitate his Complaint in the hopes of staving off dismissal so he can impose unnecessary discovery costs on CallFire is to rely on the Southern District of California's decision in the nuisance suit *Couser v. Pre-Paid Legal Shield Servs., Inc.*, CIV No. 12-2575-LAB-WVG, 2014 WL 197717 (S.D. Cal. Jan. 16, 2014). Opp. at 12-13. Although the court in *Couser* was "generally receptive to CallFire's arguments," *id.* at 4, it felt some limited discovery was necessary before ultimately dismissing CallFire. CallFire respectfully submits that here CallFire should be dismissed at present for multiple reasons.

First, the *Couser* decision is not controlling in this district. Indeed, it is not even controlling in the Southern District of California, as CallFire was summarily dismissed from the *Kauffman* case in the Southern District the day after it filed its reply in support of its motion. Opp. at 12. Moreover, the law in this district is that a plaintiff must allege that even a non-common carrier communications provider was the originator or controller of the content of the messages its customer was alleged to have sent through its service, or otherwise had a high degree of involvement or actual notice of the unlawful activity and failed to take steps to prevent the text transmissions. *See Mendez*, CIV No. 13-5914-EMC, Order Granting Defendant MobileStorm Inc.'s Motion to Dismiss. Plaintiff Luna has not met this burden.

Second, this case is factually distinguishable because the court in *Couser* found that the lack of "adversarial discovery" prevented him from dismissing CallFire at the pleading stage. Opp. at 15. In contrast, here Plaintiff has conducted adversarial discovery against Defendant Shac, and Defendant Shac has confirmed that the service it received was pursuant to CallFire's Terms of Service. There is therefore no need to keep CallFire in this case just to confirm what Plaintiff already knows, and what he has alleged: CallFire did not control the content, timing, or recipients of the messages Defendant Shac initiated itself.

Further, the court in *Couser* did not have the benefit of the FCC's *GroupMe Order*[20] that

---

[20] *In the Matter of GroupMe, Inc./Skype Commc'ns S.A.R.L. Petition for Expedited Declaratory Ruling, Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, CG Docket No. 02-278 at ¶ 12 (rel. Mar. 27, 2014), available at http://transition.fcc.gov/Daily_Releases/Daily_Business/2014/db0327/FCC-14-33A1.pdf (last

demonstrated that intermediaries involved in transmitting a message cannot be liable for the message initiator's TCPA violations. Mem. at 10. Moreover, the *Couser* court did not even address whether CallFire was entitled to common carrier immunity. The closest the *Couser* court came to addressing this issue was describing CallFire as "some kind of innocent middleman." *Couser*, 2014 WL 197717, at 4. But as noted above, the Hobbs Act grants federal *appellate* courts exclusive jurisdiction to determine the validity of final FCC orders, such as the FCC's decision conferring immunity on common carriers or its decision to only hold the initiator of a message liable for any TCPA violations. District courts, however, are bound to apply the FCC's rules and regulations.

The *Couser* court appears to have inadvertently conflated the message *transmission* service described in CallFire's Terms of Service with *initiating* a message, i.e., making a call. That said, *Couser* never found that the plaintiff there actually or plausibly alleged that CallFire was the initiator of its customers' messages. As a matter of common sense, however, all common carriers like CallFire transmit the telephone calls that their customers initiate. And just like CallFire, all of the multiple carriers handling a given telephone call at any point in the message flow transmit (i.e., carry) the message along their respective networks until it reaches the ultimate recipient. Under the Plaintiff's expansive reading of the TCPA, there would be no logical cut off of TCPA liability for any carrier in the call flow that simply transmits the message. Of course, the FCC has made a binding decision and provided a bright-line TCPA cutoff by only making it unlawful to *initiate* an unlawful message, rather than simply further transmit a message as an intermediary in the call flow like any common carrier, such as CallFire.

Plaintiff thus misses the point entirely by constantly arguing that "CallFire's business is to place calls for its customers." Opp. at 19 (emphasis added). As an initial matter, what common carrier does not "place" or "transmit" telephone calls on its customers' behalf? What Plaintiff fails to apprehend, or deliberately conflates, is this fundamental distinction that the court in *Couser* also failed to distinguish: **a common carrier *transmitting* a message is not the same as**

---

accessed Sep. 9, 2014) ("*GroupMe Order*").

**its customer *initiating* a message**. As the Ninth Circuit has explained, "**control lies** at the ends of the network **where the users are**, leaving **a simple network that is neutral** with respect ***to the data it transmits, like any common carrier***." *AT&T Corp. v. City of Portland*, 216 F.3d 871, 879 (9th Cir. 2000) (emphasis added).

Thus, not only does Plaintiff fail to allege that CallFire had the *high degree of* involvement necessary to overcome CallFire's common-carrier immunity, he does not – because he cannot – allege that CallFire was the entity that initiated the message he allegedly received. This Court should therefore disregard the decision in *Couser*,[21] apply the FCC's orders and regulations applicable to common carriers, and hold that Plaintiff fails to state any claim that CallFire violated the TCPA as a result.

## V. IF THE COURT DECLINES TO DISMISS THE COMPLAINT, THE COURT SHOULD REFER THIS MATTER TO THE FCC

If the Court declines to dismiss Plaintiff's Complaint, CallFire demonstrated that the Court should refer this matter to the FCC because it satisfies the requirements to invoke the primary jurisdiction doctrine: (1) the need for the expertise of the agency deferred to; and (2) the need for uniform interpretation of a statute or regulations. Mot. at 13-17.

Plaintiff asserts that he is not asking the Court to apply some novel application of the TCPA that requires the guidance of the expert agency. Opp. at 16. But as explained above, that is precisely what Plaintiff is asking the Court to do. By analogy, under Plaintiff's legal theory, a company such as Microsoft could be liable for CAN-SPAM Act violations simply because its customers could use its Outlook software to send spam. CallFire is aware of no decision, and Plaintiff certainly cites none, where a court found that an intermediary common carrier "initiates"

[21] On the date of this filing, Plaintiff also submitted to the Court its Statement of Recent Decision in Opposition to Defendant CallFire, Inc.'s Motion to Dismiss First Amended Complaint (Dkt. No. 59). The attached decision is from *Rinky Dink, Inc. v. Electronic Merchant Systems, Inc.*, CIV No. 13-1347 (W.D. Wash. Sep. 30, 2014), in which the court spent one paragraph addressing CallFire's motion to dismiss as it related to the plaintiff's failure to state a claim by simply deferring to the *Couser* court's holding, without any analysis of the FCC's regulations and decisions that are binding on district courts under the Hobbs Act. For the reasons stated above, the *Couser* decision is flawed for this reason, factually distinguishable, and conflicts with this District's controlling *Mendez* precedent.

a call under the TCPA, especially when it does not control the content, timing, or direction of the messages its customers send, just as Microsoft cannot be deemed to be "sending" Outlook users' emails.

Plaintiff, relying on the *Couser* decision, further argues that it is premature at this stage of litigation to refer this case to the FCC because, according to Plaintiff, it "only makes sense if CallFire, in fact, *is* a common carrier." *Id.* at 15 (emphasis in original). As noted above, the only way one can fail to recognize that CallFire is a common carrier at all relevant times to the Complaint is by simply ignoring the FCC's regulations applicable CallFire's FCC Form 499 Database Registration. And as also established above, Defendant Shac has already responded to Plaintiff's discovery requests by confirming that the service it receives from CallFire is as described in CallFire's Terms of Service. The FCC, therefore, could apply its expert analysis to the facts that have already been established in this case.

Plaintiff therefore submits no compelling reason why the Court should waste its own resources deciding an issue within the FCC's area of expertise. Accordingly, to the extent the Court does not dismiss the claims against CallFire pursuant to Rule 12(b)(6), the Court should refer the matter to the FCC.

## CONCLUSION

For the foregoing reasons, CallFire respectfully requests that the Court dismiss the Complaint with prejudice for failure to state a claim, or in the alternative, stay the entire case or dismiss the Complaint without prejudice and refer the issues related to CallFire's common carrier services to the FCC.

Dated: October 2, 2014

**ARENT FOX LLP**

By: */s/ Imran Khaliq*
IMRAN KHALIQ
Attorney for Defendants
CALLFIRE, INC. AND
CLUB TEXTING, INC.