IMRAN KHALIQ (SBN 232607)
**ARENT FOX LLP**
55 Second Street, 21st Floor
San Francisco, CA 94105-3470
Telephone: 415.757.5500
Facsimile: 415.757.5501
Imran.Khaliq@arentfox.com

MICHAEL B. HAZZARD (*Admitted pro hac vice 10/15/14)*
**ARENT FOX LLP**
1717 K Street, NW
Washington, D.C. 20036
Telephone: 202.857.6000
Facscimile: 202.857.6395
Michael.Hazzard@arentfox.com

Attorneys for Defendants
CALLFIRE, INC. and CLUB TEXTING, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOHN LUNA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SHAC, LLC., dba SAPPHIRE GENTLEMEN'S CLUB, a Nevada corporation; CLUB TEXTING, INC., a corporation; and CALLFIRE, INC., a corporation<br><br>Defendants. | Case No. CV 14-00607 HRL<br><br>CLASS ACTION<br><br>**DEFENDANT CALLFIRE, INC.'S ANSWER TO FIRST AMENDED COMPLAINT** |

Defendant CallFire, Inc. ("Defendant" or "CallFire") hereby answers the First Amended Complaint (the "FAC") of John Luna and others similarly situated (collectively, "Plaintiff"). Except as expressly admitted herein, each and every allegation in the FAC is denied.

***INTRODUCTION***

1. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff JOHN LUNA brings this class action on behalf of himself and all others similarly situated against Defendants SHAC, LLC dba Sapphire Gentlemen's Club ("SHAC"), a Nevada corporation; CLUB TEXTING, INC. ("CLUB TEXTING"), a corporation; and CALLFIRE, INC. ("CALLFIRE"), a corporation.

**ANSWER**

CallFire admits that Plaintiff purports to bring this action individually and on behalf of a class against CallFire and Shac LLC ("Shac"). CallFire denies that it has engaged in any conduct violative of the Telephone Consumer Protection Act ("TCPA"). CallFire affirmatively states that it is an FCC licensed common carrier.[1] The FCC and the courts exempt common carriers and communications service providers from liability for their customers' transmissions. Common carriers are exempt from liability for the legality of a call unless they have a "high degree of involvement" or "actual notice" of the illegal use of their services.[2] Under the Administrative Orders Review Act, also known as the Hobbs Act, 28 U.S.C. § 2342(1), district courts are bound by the FCC's rulings. Defendant Shac has admitted in discovery that the common carrier telephone service that it received is as described in CallFire's publicly available Terms of Service,[3] which terms make clear that CallFire does not control the content, timing or recipients of the telephone calls its customers initiate through CallFire's telephone service.[4] CallFire

---

[1] *See* http://apps.fcc.gov/cgb/form499/499detail.cfm?FilerNum=829923 (last accessed October 10, 2014).

[2] *In the Matter of Enforcement of Prohibitions Against the Use of Common Carriers for the Transmission of Obscene Materials*, 2 FCC Rcd. 2819, 2820 (1987).

[3] Available at https://www.callfire.com/legal/terms (last accessed October 29, 2014).

[4] Defendant SHAC, LLC's Supplemental Responses to Plaintiff's First Set of Request for Production of Documents, Request No. 20 ("Supplemental Responses").

therefore admits only that its sole involvement in the messages controlled by Defendant Shac were to further transmit and route the messages Defendant Shac initiated itself, just like any common carrier transmits and routes its customers' messages.

Further, the TCPA only makes it actionable to ***initiate*** an otherwise unlawful message. *See* 47 C.F.R. §64.1200(a)(1)(iii) (making it unlawful to "**initiate** any telephone call" via an automatic telephone dialing system to a cellular telephone service without the recipients prior express consent) (emphasis added). On this independent ground, even if CallFire were not entitled to common-carrier immunity (which it is), the facts already known to Plaintiff establish that CallFire did not violate the TCPA, as Defendant Shac initiated its own messages which are the subject of this case.

2. This class action seeks relief for claims arising from Defendants' violation of the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227, through Defendants' unwanted cellular-telephone contact of California consumers. Specifically, Defendants have violated the TCPA by sending unsolicited text messages that advertise Defendant SHAC's products and/or services— entertainment events—to unwilling consumers, invading their right to privacy.

**ANSWER**

CallFire admits that Plaintiff purports to bring this action for violations 47 U.S.C. § 227, *et seq*. CallFire denies the remainder of the allegations in paragraph 2 of the FAC.

3. Pursuant to 47 U.S.C. § 227(b)(3), Plaintiff and Class Members are entitled to, inter alia, statutory damages, injunctive relief, and attorney's fees for Defendants' violations.

**ANSWER**

The allegations in paragraph 3 of the FAC contain conclusions of law to which no response is required. To the extent a response is required, CallFire denies those allegations.

***JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT***

4. Jurisdiction. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331. Again, this action arises from a violation of the federal TCPA.

**ANSWER**

The allegations in paragraph 4 of the FAC contain conclusions of law to which no response is required. To the extent a response is required, CallFire denies those allegations.

5. Venue. As alleged more particularly below, venue is proper in the United States District Court for the Northern District of California because the harm, as well as the unlawful acts and omissions, alleged herein occurred within the County of Santa Clara.

**ANSWER**

The allegations in paragraph 5 of the FAC contain conclusions of law to which no response is required. To the extent a response is required, CallFire denies those allegations.

6. Intradistrict Assignment. As alleged more particularly below, assignment of this action to the San Jose Division is proper because this action arises in the County of Santa Clara.

**ANSWER**

The allegations in paragraph 6 of the FAC contain conclusions of law to which no response is required. To the extent a response is required, CallFire denies those allegations.

***PARTIES***

7. Plaintiff is, and at all times relevant to this action was, a California resident of the County of Santa Clara. He is, and at all times relevant to this action was, a "person" as defined under 47 U.S.C. § 153.

**ANSWER**

CallFire lacks sufficient information on which to admit or deny the allegations of paragraph 7 of the FAC, and on that basis, denies these allegations.

8. Plaintiff is informed and believes, and based thereon alleges, that Defendant SHAC is a Nevada corporation with its principal place of business at 3025 South Industrial Road, Las Vegas, Nevada 89109. Plaintiff is informed and believes, and based thereon alleges, that Defendant SHAC is authorized to conduct business, and does conduct business, within the State of California. Plaintiff is informed and believes, and based thereon alleges, that Defendant SHAC is, and at all times relevant to this action was, a "corporation" and a "person" as defined under 47 U.S.C. § 153. Defendant SHAC conducts business within the County of Santa Clara.

**ANSWER**

CallFire lacks sufficient information on which to admit or deny the allegations of paragraph 8 of the FAC, and on that basis, denies these allegations.

9. Based, in part, on Defendant SHAC's responses to Plaintiff's first set of written discovery requests served in the within action, Plaintiff is informed and believes, and based thereon alleges, that an entity named "EZTexting.com" conducted Defendant SHAC's telemarketing and advertising text-messaging campaign on Defendant SHAC's behalf, with Defendant SHAC's authorization, at SHAC's direction. Plaintiff is further informed and believes, and based thereon alleges, that "EZTexting.com" is a dba for Defendants CLUB TEXTING and CALLFIRE; that Defendant CLUB TEXTING is a New York corporation with its principal place of business in Hoboken, New Jersey; that Defendant CALLFIRE is a Delaware corporation with its principal place of business in Santa Monica, California; that Defendants CLUB TEXTING and CALLFIRE are, and at all times relevant to this action were, "corporations" and "persons" as defined under 47 U.S.C. § 153; and that Defendants CLUB TEXTING and CALLFIRE conduct business within the County of Santa Clara.

**ANSWER**

CallFire admits that it has operated EZTexting.com (which is a website, not an entity) at all times relevant to the FAC, through which CallFire's customers initiate their own text messages that they have created to recipients selected solely by CallFire's customers. CallFire further admits that Shac was a customer of CallFire's common carrier telephone service. CallFire further admits that Defendant Shac responded to Plaintiff's first set of written discovery requests, but denies that Plaintiff was "informed" that EZTexting.com, or CallFire, "conducted Defendant SHAC's telemarketing and advertising text-messaging campaign on Defendant SHAC's behalf." Instead, in his discovery requests to Defendant Shac, Plaintiff requested "[a]ll DOCUMENTS describing the services to be provided by any outside vendor since October 16, 2013 for the delivery of SHAC, LLC's telemarketing or advertising text messages to consumers."[5] Defendant

[5] Supplemental Responses, Request No. 20.

Shac's only substantive response describing the service it received from CallFire was to point Plaintiff to CallFire's Terms of Service: "Terms and conditions of Defendant's third party vendor can be found at http://www.eztexting.com/terms."[6]

As described in these Terms, the services CallFire provides "consist of one or more of the following: a web-based interface, access to incoming telephone number or keywords, Direct Inward Dialing Numbers ("DIDs"), messaging applications, voice broadcast applications, SMS gateway access, data encryption, data transmission, data access, data storage and, if applicable, synchronization software, as well as software maintenance and upgrades and customer support, **that enable you to send text messages and/or voice broadcasts to recipients designated by you** (collectively, the "Services")."[7] CallFire therefore denies Plaintiff's allegation that CallFire "conducted Defendant SHAC's telemarketing and advertising text-messaging campaign[.]" CallFire provides web-based common carrier telephone services that enable CallFire's customers to initiate their own messages that they have created to recipients selected solely by CallFire's customers. CallFire further denies that this allegation had evidentiary support when made, as this allegation is contradicted by Defendant Shac's discovery responses, on which this allegation purportedly relies. *See* Fed. R. Civ. P. 11(b)(3).

Although Club Texting has been dismissed from this action, CallFire states affirmatively that it purchased the assets of Club Texting prior to the occurrence of the events alleged in the FAC and that Club Texting now exists in name only. CallFire admits that it is a Delaware corporation with a principal place of business in Santa Monica, California. The allegations in paragraph 9 of the FAC regarding 47 U.S.C. § 153 and whether CallFire conducts business within the County of Santa Clara are conclusions of law to which no response is required; to the extent a response is required, CallFire denies those allegations. CallFire lacks sufficient information on which to admit or deny the remainder of the allegations in paragraph 9 of the FAC, and on that basis, denies them.

---

6 *Id.* Because CallFire owns and controls www.EZTexting.com, CallFire's Terms of Service previously submitted to the Court are found at http://www.eztexting.com/terms.

7 *Id.* Section 2 – The Services (emphasis added).

### *GENERAL ALLEGATIONS*

10. On or around January 22, 2014, Plaintiff received an unsolicited text message on his cellular telephone (telephone number (---) --- – 4530) from Defendants. Plaintiff is informed and believes, and based thereon alleges, that Defendants CLUB TEXTING and CALLFIRE were hired and/or retained by Defendant SHAC to send this text-message, along with the other text messages described below, on Defendant SHAC's behalf. Plaintiff is further informed and believes, and based thereon alleges, that Defendant SHAC retained the right to control—and, in fact, did control—the content of those messages, as well as to whom Defendants CLUB TEXTING and CALLFIRE delivered the messages. At the time that the January 22, 2014, text message was received, Plaintiff was in the City of San Jose, County of Santa Clara. Plaintiff had never given any signed authorization to Defendants explicitly permitting them to use his cellular-telephone number for telemarketing or advertising purposes. The text message stated:

-SAPPHIRE- Hosts the BIGGEST & SEXIEST UFC/SUPER SUNDAY WEEKEND IN LV! Food, Raffles , Prizes & Half Time $1 Dances. 4 more info click http://bit.ly/slvsupersun

**ANSWER**

CallFire admits that Shac was a customer of CallFire's common carrier telephone service through which Defendant Shac initiated its own text messages that it controlled, and that Shac was subject to CallFire's publicly available Terms of Service. CallFire further admits that it provides common carrier services to its customers through which its customers may initiate their own text message calls, but CallFire does not control the content, recipients or timing of the messages its customers initiate themselves. CallFire denies that it "sends" text messages, as CallFire's only relevant role is as a common carrier that further transmits its customers' telephone calls that they initiate, or "send," themselves. CallFire lacks sufficient information on which to admit or deny the remainder of the allegations in paragraph 10 of the FAC, and on that basis, denies them.

11. The text message did not provide Plaintiff with an option to stop receiving messages. Again, at no time prior to receiving the text message did Plaintiff authorize or give

signed permission to Defendants explicitly permitting them to use his cellular-telephone number for telemarketing or advertising purposes.

**ANSWER**

CallFire denies that Plaintiff was not provided with an option to stop receiving messages from Defendant Shac at any time. CallFire lacks sufficient information on which to admit or deny the remainder of the allegations in paragraph 11 of the FAC, and on that basis, denies them.

12. Plaintiff's cellular-telephone number is linked to a subscription plan under which he is charged each month for cellular-telephone and data services.

**ANSWER**

CallFire lacks sufficient information on which to admit or deny the allegations in paragraph 12 of the FAC, and on that basis, denies them.

13. Plaintiff is informed and believes, and based thereon alleges, that Defendants entered his cellular-telephone number into a database and subsequently used equipment capable of storing and/or producing telephone numbers, as well as capable of dialing such numbers, to send the text message *en masse* to consumers, including Plaintiff. Indeed, given the sheer volume of generic text messages sent to the public—as described in paragraph 14, *infra*—Defendants could only send such messages using such automated equipment.

**ANSWER**

CallFire denies that it initiated any text message calls to Plaintiff or anyone else. CallFire further denies that it, or any equipment utilized by CallFire to further transmit its customers messages, plays any part in selecting or influencing the telephone numbers that its customers call. CallFire does not possess any information concerning what equipment Shac used to initiate its own messages, and thus lacks sufficient information on which to admit or deny the remaining allegations in paragraph 13 of the FAC, and on that basis, denies these allegations.

14. As is apparent from the text message itself, the text message was sent without an emergency purpose; instead, it was sent for the purposes of advertisement or telemarketing to encourage the purchase of goods and entertainment services at Defendant SHAC's establishment. Plaintiff is informed and believes, and based thereon alleges, that Defendants sent the above text

message, as well as thousands of similar, generic text messages, to the cellular-telephones of members of the general public using the equipment referenced in paragraph 13, *supra*. In addition, Plaintiff is informed and believes, and based thereon alleges, that Defendants continue to send thousands of similar, generic text messages to the cellular telephones of members of the general public using that equipment. Plaintiff is further informed and believes, and based thereon alleges, that Defendants never obtained signed authorizations explicitly permitting telemarketing or advertising messages from any of the individuals to whom these text messages were sent. Similarly, Plaintiff is informed and believes, and based thereon alleges, that none of these text messages provided a stop code or any other opportunity for the recipients to reject or prevent future messages from being placed to their cellular-telephone numbers.

**ANSWER**

CallFire denies that it initiated or continues to initiate any text message calls to Plaintiff or anyone else for any purpose. CallFire further denies that it plays any role in the content of the messages its customers choose to send through CallFire's common carrier service, and CallFire's sole role is to simply further transmit the telephone calls that its customers initiate themselves, just like any common carrier. CallFire lacks sufficient information on which to admit or deny the remaining allegations in paragraph 14 of the FAC, and on that basis, denies these allegations.

***CLASS-ACTION ALLEGATIONS***

15. Plaintiff seeks to represent the following Class under Rule 23 of the Federal Rules of Civil Procedure: All persons throughout the United States who, since October 16, 2013, received one or more text messages from Defendants advertising or promoting Defendant SHAC. Plaintiff reserves the right to amend or modify the proposed Class, or to propose subclasses or limitations to particular issues, in response to facts later ascertained.

**ANSWER**

The allegations in paragraph 15 of the FAC contain conclusions of law as to Federal Rule of Civil Procedure 23 to which no response is required. To the extent a response is required, CallFire denies those allegations.

16. ***Numerosity***. The identities of Class Members may be ascertained from Defendants' own business and marketing records, as well as the records of Defendants' telephone provider(s). Joinder of all Class Members would be impracticable due to the sizeable number of such Members and their likely lack of resources to initiate individual claims. Plaintiff estimates that the total number of Class Members exceeds 1,000 people, given the number of tourists who visit the City of Las Vegas each year, as well as Defendant SHAC's own claim that it is "the world's largest Las Vegas Strip club." *See* www.sapphirelasvegas.com (last visited February 7, 2014). Also, as explained below, the amount that is owed to any given Class Member under the TCPA is relatively small, making it impractical for them to bring their own individual suits.

**ANSWER**

The allegations in paragraph 16 of the FAC contain conclusions of law as to Federal Rule of Civil Procedure 23 to which no response is required. To the extent a response is required, CallFire denies those allegations.

17. ***Commonality***. There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual Class Members. These common questions include, without limitation:

a) Whether Defendants' text messages constitute telemarketing or advertising within the meaning of the TCPA and its regulations (quoted below);

b) Whether the equipment that Defendants used to send the text messages constitutes an automatic telephone dialing system within the meaning of the TCPA and its regulations;

c) Whether Defendants were required under the TCPA and its regulations to secure prior express written consents from the text-message recipients; and

d) Whether Defendants' outright failure to secure any prior express written consents constitutes willful and knowing behavior within the meaning of the TCPA and its regulations.

**ANSWER**

The allegations in paragraph 17 of the FAC contain conclusions of law as to Federal Rule of Civil Procedure 23 to which no response is required. To the extent a response is required, CallFire denies those allegations.

18. ***Typicality***. Plaintiff's claims are typical of those of the Class because he received a telemarketing or advertising text message from Defendants after October 16, 2013; he never provided prior express written consent to receive the text message; and the text message was sent to him using the same equipment that Defendants used to send text messages to all Class Members.

**ANSWER**

The allegations in paragraph 18 of the FAC contain conclusions of law as to Federal Rule of Civil Procedure 23 to which no response is required. To the extent a response is required, CallFire denies those allegations.

19. ***Adequacy***. Plaintiff will fairly and adequately represent and protect the interests of the Class. He does not have any conflicts with Class Members, and he plans on pursuing the litigation vigorously. He has the same interests as those of the Class, and he has retained counsel who are competent and experienced in class-action litigation. In addition, he has been actively involved in the litigation, he will continue to participate and be available for the duration of the litigation, and he understands the fiduciary duties that he holds to the Class.

**ANSWER**

The allegations in paragraph 19 of the FAC contain conclusions of law as to Federal Rule of Civil Procedure 23 to which no response is required. To the extent a response is required, CallFire denies those allegations.

20. ***Superiority***. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Again, the individual joinder of all Class Members is impracticable because of the relatively small recovery amounts at stake and the relative lack of resources available for individual Class Members vis-à-vis the large corporate Defendants. Additionally, the judicial system would be burdened with multiple trials of the same issues, and

the potential for inconsistent or contradictory judgments would increase. The common questions detailed above, in fact, predominate in this action, as Class Members' claims arise out of the same course of conduct to which Plaintiff was himself subject. A class action would therefore conserve the resources of the parties and the Court while protecting the rights of Class Members. Defendants' conduct as described above is unlawful, continuing, capable of repetition, and will continue unless restrained and enjoined by the Court. Moreover, it is a matter of public interest to obtain definitive answers to the legality of Defendants' actions in a single case.

**ANSWER**

The allegations in paragraph 20 of the FAC contain conclusions of law as to Federal Rule of Civil Procedure 23 to which no response is required. To the extent a response is required, CallFire denies those allegations.

***FIRST CLAIM FOR RELIEF***

*Violation of the TCPA*

*47 U.S.C. § 227*

21. Plaintiff re-pleads, re-alleges, and incorporates by reference each and every allegation set forth in this Complaint.

**ANSWER**

CallFire incorporates its above responses to paragraphs 1-21 of the FAC as though fully set forth herein.

22. The United State Congress enacted the TCPA in order to protect and balance individual privacy rights against legitimate telemarketing practices. In enacting this statute, Congress found:

> (47) The use of the telephone to market goods and services to the home and other businesses is now pervasive due to the increased use of costeffective telemarketing techniques.
>
> . . . .
>
> (10) Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.

> (11) Technologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer.
>
> (12) Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

Telephone Consumer Protection Act of 1991, PL 102–243, December 20, 1991, 105 Stat 2394.

**ANSWER**

CallFire admits only that the Telephone Consumer Protection Act of 1991, PL 102–243, December 20, 1991, 105 Stat 2394, speaks for itself, and CallFire denies any allegations inconsistent with 47 U.S.C. §§ 227, *et seq*.

23. The TCPA specifically prohibits automated calls or messages to consumers' cellular- telephone numbers without the express consent or permission of the consumers:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . (iii) to any telephone number assigned to a . . . cellular telephone service . . . .

47 U.S.C. § 227(b)(1). According to the Ninth Circuit, a text message is a "call" within the meaning of the TCPA. *Satterfield v. Simon & Schuster, Inc*., 569 F.3d 946, 954 (9th Cir. 2009).

**ANSWER**

CallFire admits only that the TCPA is a statute that speaks for itself and that the Ninth Circuit has affirmed the FCC's determination that a text message is a call for the purposes of the TCPA. CallFire denies any allegations inconsistent with this statute. CallFire affirmatively states that the FCC, the agency tasked by Congress to implement this statute, has clarified in its regulations implementing the TCPA that to "make a call" means to be the person or entity that initiates the message. *See* 47 C.F.R. §64.1200(a)(1)(iii) (making it unlawful to "**initiate** any telephone call" via an automatic telephone dialing system to a cellular telephone service without the recipients prior express consent) (emphasis added).

24. Under the relevant regulation, effective October 16, 2013, "prior express consent" as used in subsection (b)(1)(A)(iii) of the TCPA means "prior express *written* consent" for all

telemarketing or advertising messages. 47 C.F.R. § 64.1200(a)(2) (emphasis supplied). Such consent must be signed by the consumer, must state that the consumer is agreeing to receive future telemarketing or advertising messages, and must be executed independent of any purchase of goods or services. *Id.* § 64.1200(f)(8).

**ANSWER**

CallFire admits only that the TCPA and 47 C.F.R. § 64.1200 speak for themselves, and CallFire denies any allegations inconsistent with the statute and regulation.

25. The foregoing acts and omissions of Defendants constitute a direct violation of the TCPA.

**ANSWER**

The allegations in paragraph 25 of the FAC contain conclusions of law to which no response is required. To the extent a response is required, CallFire denies those allegations.

26. The TCPA establishes a private right of action for sending unauthorized messages to consumers:

> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or (C) both such actions. If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3). Pursuant to 47 U.S.C. § 227(b)(3)(B), Plaintiff and Class Members are entitled to an award of $500 in statutory damages for each and every text message that they received. Defendants are jointly and severally liable for such damages under theories of either direct or vicarious liability. Moreover, because Defendants willfully and knowingly violated the TCPA as alleged above, Plaintiff and the Class are entitled to treble damages. Finally, pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff and the Class are entitled to injunctive relief.

**ANSWER**

CallFire admits only that the TCPA is a statute that speaks for itself, and CallFire denies any allegations inconsistent with this statute. The remainder of the allegations in paragraph 26 of the FAC contain conclusions of law to which no response is required. To the extent a response is required, CallFire denies those allegations.

**AFFIRMATIVE DEFENSES**

Without admitting any of Plaintiff's allegations or conceding the burden of proof as to any issue found to be an element of the causes of action included in Plaintiff's FAC, CallFire alleges the following separate Affirmative Defenses based on information and belief.

**FIRST AFFIRMATIVE DEFENSE**

Plaintiff's claims against CallFire are barred by the doctrine of waiver and other equitable doctrines.

**SECOND AFFIRMATIVE DEFENSE**

Plaintiff's claims against CallFire are barred, in whole or part, because Plaintiff lacks standing to assert the claims alleged in this action. Plaintiff further lacks standing to pursue claims for injunctive relief because there is no risk of future injury.

**THIRD AFFIRMATIVE DEFENSE**

Plaintiff's claims against CallFire are barred, in whole or in part, because the damages or injury allegedly suffered by Plaintiff would be the proximate result, either in whole or part, of acts or omissions of persons or entities other than CallFire.

**FOURTH AFFIRMATIVE DEFENSE**

Plaintiff knowingly and voluntarily assumed any and all risks associated with the matters alleged in the FAC and, pursuant to the doctrines of assumption of the risk and/or informed consent, such conduct bars, in whole or in part, the damages that Plaintiff seeks to recover herein.

**FIFTH AFFIRMATIVE DEFENSE**

Plaintiff has not incurred any actual damage, including physical injury, pecuniary injury, dignitary injury, emotional distress, out-of-pocket harm, or other injuries justifying a claim for actual damages as a result of the alleged conduct of CallFire.

**SIXTH AFFIRMATIVE DEFENSE**

The United States Constitution bars or limits the relief requested by Plaintiff, on his behalf and on behalf of the putative class, if and to the extent the relief would unfairly subject CallFire to punishment and or to an unfairly extreme remedy without advance notice or opportunity to protect itself, or the relief would amount to a taking, or the relief would be out of proportion to the alleged conduct, or the remedy is unrestricted by sensible standards, or the relief would have an unfair economic impact on CallFire.

**SEVENTH AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred, in whole or in part, because Plaintiff consented to the receipt of the alleged call.

**EIGHTH AFFIRMATIVE DEFENSE**

Plaintiff's  claims are barred, in whole or in part, because the alleged call at issue is excepted from and/or do not fall within the purview of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*

**NINTH AFFIRMATIVE DEFENSE**

This action is not appropriate for certification as a class action because the requirements of Rule 23 of the Federal Rules of Civil Procedure are not met.

**TENTH AFFIRMATIVE DEFENSE**

This action is not appropriate for certification as a class action because individual issues predominate over issues common to the class, and a class action is not superior to other available methods for the fair and efficient adjudication of the controversy.

**ELEVENTH AFFIRMATIVE DEFENSE**

All putative class allegations and claims should be stricken or dismissed because this case is not appropriate for certification as a class action under Federal Rule of Civil Procedure 23.

**TWELFTH AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred, in whole or in part, because CallFire's role, if any, in the making of the alleged call at issue falls under the common carrier exemption.

**PRAYER FOR RELIEF**

Having responded to the allegations of Plaintiff's FAC as set forth above, CallFire denies that Plaintiff is entitled to any relief sought, and requests that the Court (1) order that Plaintiff take nothing by the FAC and dismiss the FAC with prejudice; (2) enter judgment in CallFire's favor; (3) award CallFire its costs of suit and attorneys' fees; and (4) award CallFire any other relief as the Court deems just and proper.

Dated: October 31, 2014

**ARENT FOX LLP**

By: */s/ Imran Khaliq*
IMRAN KHALIQ
MICHAEL B. HAZZARD
Attorneys for Defendants
CALLFIRE, INC. and CLUB TEXTING, INC.