Mark E. Ferrario
California Bar No. 104062
Tyler R. Andrews
California Bar No. 250686
Greenberg Traurig, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002
ferrariom@gtlaw.com
andrewst@gtlaw.com

*Counsel for Defendant SHAC, LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHN LUNA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>*vs.*<br><br>SHAC, LLC dba SAPPHIRE GENTLEMEN'S CLUB, a Nevada corporation, CLUB TEXTING, INC., a corporation; and CALLFIRE, INC., a corporation,<br><br>Defendants. | CASE NO. CV 14-607<br><br>**DEFENDANT SHAC, LLC'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Filed Concurrently with Declaration of Tyler R. Andrews and [Proposed] Order]<br><br>Date: June 23, 2015<br>Time: 10:00 a.m.<br>Judge: Hon. Howard R. Lloyd<br>Courtroom: 2 |

**TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that at 10:00 a.m. on June 23, 2015, in Courtroom 2 of the above-captioned Court, located at 280 South First Street, San Jose, California, defendant SHAC, LLC ("SHAC") will and hereby does move for summary judgment on the basis that the alleged text messages at issue were not sent using an "automatic telephone dialing system" ("ATDS"), which the Telephone Consumer Protection Act ("TCPA") specifically defines as "equipment which has the capacity -- (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The platform used to send the alleged text message is not an ATDS within the meaning of the statute, and SHAC did not send the alleged text message without human intervention, nullifying potential liability under the TCPA. Thus, SHAC is entitled to summary judgment as a matter of law. *See* 47 U.S.C. § 227(a)(1) and (b)(1)(A).

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, Declaration of Tyler R. Andrews, and any arguments and evidence of counsel that may be presented at the hearing on this matter.

DATED: May 18, 2015

Respectfully submitted,

GREENBERG TRAURIG, LLP

By /s/Tyler R. Andrews
Mark E. Ferrario
Tyler R. Andrews
Attorneys for defendant,
SHAC, LLC
Email: andrewst@gtlaw.com

# TABLE OF CONTENT

I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 2

III. ARGUMENT ..... 5

A. Legal Standard ..... 5

B. SHAC Is Entitled To Summary Judgment Because The Alleged Text Message Was Not Sent Using An ATDS ..... 5

C. SHAC Is Entitled To Summary Judgment Because The Alleged Text Message Was Sent as a Result of Human Intervention. ..... 8

IV. CONCLUSION ..... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....5

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....5

*Chevron v. Natural Res. Def. Council, Inc.*,
467 U.S. 837 (1984)....7

*Dominguez v. Yahoo! Inc.*,
8 F. Supp. 3d 637, (E.D. Pa. March 20, 2014) ....2, 8

*Glauser v. GroupMe, Inc.*,
2015 WL 475111 (N.D. Cal. February 4, 2015)....2, 6, 9, 11

*Gragg v. Orange Cab Co., Inc.*,
2014 WL 494862 (W.D.Wash. Feb.7, 2014)....6

*Hunt v. 21st Mortgage Corp.*,
2014 WL 4260275 (N.D.Ala. Feb. 4, 2014)....6

*Marks v. Crunch San Diego*,
55 F. Supp. 3d. 1288, (S.D. Cal. October 23, 2014) ....1, 8, 9, 10

*McKenna v. WhisperText*,
2015 WL 428728 (N.D. Cal. Jan. 30, 2015)....2, 9, 10, 11

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, SoundBite Communications, Inc.*,
CG Docket No. 02-278, 27 FCC Rcd. 15391 (Nov. 26, 2012) ....7, 11

*Satterfield v. Simon & Schuster, Inc.*,
569 F.3d 946(9th Cir. 2009) ....*passim*

**Federal Statutes**

47 C.F.R. § 64.1200(a)(4)(vii) ....3

47 U.S.C.
§ 227(a)(1) .......... 1, 6, 7
§ 227(a)(1) and (b)(1)(A) .......... 1
§ 227 (b)(1)(A) .......... 6, 8

Federal Rule of Civil Procedure 56(a) .......... 5

Hobbs Act (28 U.S.C.
§ 2342(1)) .......... 9

**California Statutes**

TCPA .......... *passim*

Telephone Consumer Protection Act .......... 1

## I. INTRODUCTION

This is not a case that seeks to vindicate consumer rights against harassing calls made by a telemarketer to random individuals. Rather, the plaintiff John Luna and his lawyers have filed an opportunistic putative class action against SHAC, LLC ("SHAC") for allegedly sending Plaintiff *one* text message after he visited the Sapphire Gentlemen's Club and voluntarily provided his cellular telephone number to SHAC. *See* Compl. ¶¶ 10-16. Taking the complaint at face value, this one allegedly unwanted text message forms the entire basis for the plaintiff and his lawyers to seek uncapped statutory damages under the Telephone Consumer Protection Act ("TCPA"). SHAC, however, is entitled to summary judgment for the simple reason that the text message in question was not sent using an "automatic telephone dialing system" ("ATDS"), which the TCPA specifically defines as equipment with the capacity to dial numbers "using a random or sequential number generator." 47 U.S.C. § 227(a)(1). To the contrary, SHAC used a web-based software application that only allows users to send text messages to specific, identified phone numbers previously inputted into the platform. The system cannot be used to send texts to random or sequentially generated phone numbers. Indeed it is literally impossible for the platform to generate, store, or dial random or sequential numbers. Therefore, the platform is not an ATDS, and plaintiff cannot establish a critical element of his claims under the TCPA. *See* 47 U.S.C. § 227(a)(1) and (b)(1)(A).

Plaintiff's allegation that the system used by SHAC has the capacity to send text messages "*en masse* to consumers" (Compl. ¶ 12), is immaterial and unsupported by the statutory definition of an ATDS which the Ninth Circuit has held to be "clear and unambiguous." *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009). Indeed, Plaintiff's attempt to broaden the definition of ATDS beyond the plain terms of the statute has already been rejected by multiple recent decisions following *Satterfield*. *See Marks v. Crunch San Diego*, 55 F. Supp. 3d. 1288, 2014 WL 5422976, at *3 (S.D. Cal. October 23, 2014) (granting summary judgment for Defendant, a user of a nearly identical web-based text platform, because the platform "lacks a random or

sequential number generator" and is therefore "not an ATDS."); *Dominguez v. Yahoo! Inc.*, 8 F. Supp. 3d 637, 2014 WL 1096051, at *4-5 & n.6 (E.D. Pa. March 20, 2014) (granting summary judgment for the defendant because there was no evidence that the Yahoo system at issue had the capacity to randomly or sequentially generate numbers).

Further, recent decisions of this District make clear that even if the unambiguous text of the TCPA could be expanded to include phone numbers on existing customer contact lists such as SHAC's – which it cannot -- Plaintiff's claims would nonetheless fail because the process involved in sending the text message at issue involves "human intervention" at several steps and is therefore non-actionable. *See Glauser v. GroupMe, Inc.*, 2015 WL 475111, at *6 (N.D. Cal. February 4, 2015) (holding that mass text messages sent as a result of human intervention precludes any TCPA liability); *McKenna v. WhisperText*, No. 5:14-CV-00424-PSG, 2015 WL 428728 (N.D. Cal. Jan. 30, 2015) (granting Defendant's motion to dismiss where Plaintiff's claims necessarily involved human intervention prior to text messages being sent).

Accordingly, because the platform used by SHAC (1) lacks the capacity to store or produce phone numbers to be called using a random or sequential number generator, and (2) was sent only as a result of substantial human intervention, SHAC can face no liability under the TCPA as a matter of law on two independent grounds.

## II. STATEMENT OF FACTS

SHAC operates the Sapphire Gentlemen's Club in Las Vegas, Nevada. Like countless other businesses, SHAC uses a third party mobile marketing company to send promotional text messages to its existing customers. *See* Deposition of SHAC Director of Marketing and 30(b)(6) representative, Shai Cohen, ("Exhibit 1" to the Declaration of Tyler R. Andrews ("Andrews Decl.")) at 19:13-16, 53:15-54:3; Deposition of CallFire 30(b)(6) representative, Jagannathan Thinakaran, ("Exhibit 2" to Andrews Decl.) at 68:10-12. In this case, one allegedly unwanted text was sent to the plaintiff – a customer

of SHAC who provided SHAC with his cell phone number -- via a technology platform provided by former co-Defendant CallFire, Inc. ("CallFire").[1] *See id.*

CallFire does not employ an "automatic telephone dialing system" ("ATDS"), as defined by the TCPA. Rather, CallFire's platform, which was utilized by SHAC, is a web-based software application -- not a telephone system -- and does not have the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to call those numbers. *See* Exhibit 1 at 53:24-54:3, 69:5-72:1, 141:3-11; *see also* Exhibit 2 at 175:21-176:20, 178:9-180:16, 256:2-6 (Q: *"It's a web-based system in other words?"* A: *"It's accessible to the web."* Q: *"Is it accessible in any other way?"* A: *"No."*). CallFire's customers, such as SHAC, manually log into a CallFire hosted website (in this case, the "EZTexting.com" website) to create the message, designate the specific phone numbers to which the message will be sent, and then direct the software to transmit the message. *See* Exhibit 1 at 20:10-16, 139:3-140:8, 141:3-11. CallFire's platform has no capability to generate telephone numbers to receive text messages. To the contrary, the platform can only be used to send text messages to specific, identified phone numbers that were inputted into the platform by a CallFire customer like SHAC. *See Exhibit 2 at* 179:21-23 (Q: *"…can CallFire's system send text messages to anyone who is not on the list of uploaded numbers?"* A: *"Absolutely not."*).

As testified by both SHAC and CallFire, the only means by which a telephone number can be inputted into CallFire's web-based platform are: (1) by manually typing a phone number into the CallFire hosted website, (2) by uploading or cutting/pasting an existing list of phone numbers into the CallFire hosted website, and (3) by an individual

---

[1] CallFire is no longer a Defendant in this action, as Plaintiff accepted its nominal $1.00 offer of judgment and dismissed all claims against it with prejudice. *See* Notice of Offer and Acceptance, Docket No. 82. Plaintiff's acceptance of CallFire's nominal offer was predicated on CallFire's likely protection from TCPA liability under the TCPA "common carrier" exception. *See* 47 C.F.R. § 64.1200(a)(4)(vii).

transmitting their own text message in order to add themselves to the platform.[2] *See* Exhibit 1 at 69:25-72:1; Exhibit 2 at 178:9-21.

Even if a customer like SHAC wanted to do so, it could not use the CallFire platform to add or send text messages to random or sequential phone numbers. For example, SHAC could not possibly use CallFire's platform to send messages to random or sequential phone numbers within a specified area code or geographic location, or to send messages to sequential blocks of phone numbers such as (111) 111-1111, (111) 111-1112, (111) 111-1113, and so on. *See Exhibit 2 at* 179:21-23; Exhibit 1 at 142:3-11 (Q: *"There's no capacity on the EXTexting website to generate telephone numbers?"* A: *"No, neither Club Texting nor EZTexting creates or provides any phone numbers."*)

Further, nothing about the CallFire web-based platform is automatic. SHAC did <u>not</u> utilize an outsourced automated telemarketing system which unconsciously determined how, when, and what to transmit to SHAC's consumers. To the contrary, each step of the process required significant human intervention and oversight by SHAC representatives, from collection and entry of the phone numbers themselves, to drafting the message content, to determining the timing of the message, and of actually clicking "send" once the message is drafted and ready to transmit. *See* Exhibit 1 at 20:14-16 (*"I would personally go into the website, log in, and type the message and send it off through their website."*), 71:7-72:1 (Q: *"Who at SHAC actually inputted the numbers one by one?"* A: *"I have."*), 108:9-13, 112:3-23 (*"numbers are then later added to ClubTexting/EZTexting…by guests either calling or providing us the phone number."*); 142:7-11 *("I would upload the numbers into the system. Nothing here was done – nothing was automated. I personally created every one of those messages."*), 139:23-140:8 (Q: *"…in order for the messages to be transmitted, you personally would have to*

[2] Phone numbers can be inputted into the platform when a consumer intentionally responds to a specific marketing campaign (also referred to as a "call to action") by texting a keyword associated with the campaign to a "short code" assigned to a customer such as SHAC. *See* Exhibit 1 at 70:13-20.

*log into the system and your own act of hitting 'send'*? A: *"...I would personally type and send each one of those messages."*); *see also* Exhibit 2 at 179:18-181:8 *("there is absolutely no way -- there is nothing automatic about CallFire, the platform. Everything has to happen with human intervention. And if contacts are not uploaded to the website and the customer does not hit the submit button and say send out these text messages, nothing happens."*), 208:12-209:1, 256:2-257:18.

In short, it is simply not possible to use CallFire's platform to generate random or sequential telephone numbers or to send messages to random or sequential telephone numbers. Nor is it possible to use CallFire's platform without substantial human intervention at every step of the message creation and transmission process.

## III. ARGUMENT

### A. Legal Standard

A summary judgment motion is intended "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). Federal Rule of Civil Procedure 56(a) provides that a court shall grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." However, not every factual dispute defeats summary judgment; the requirement is that "there be no genuine issue of *material fact*." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A "material" fact is one that "might affect the outcome of the suit under the governing law." *Id.* at 248. .

### B. SHAC Is Entitled To Summary Judgment Because The Alleged Text Message Was Not Sent Using An ATDS

Summary judgment is warranted in this case because the alleged text at issue was not sent using an ATDS.

The TCPA prohibits any person from making

> any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any [ATDS] . . .
>
> (iii) to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call.

47 U.S.C. § 227 (b)(1)(A).

The TCPA defines an ATDS as "equipment which has the capacity -- (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."[3] 47 U.S.C. § 227(a)(1). The Ninth Circuit has held that the definition of an ATDS is "clear and unambiguous" and therefore the Court's analysis "begins" and "ends" with the statutory text. *Satterfield v. Simon & Schuster, Inc*., 569 F.3d 946, 951, 953 (9th Cir. 2009).

The CallFire platform used by SHAC to send the alleged text to Plaintiff does not involve use of an ATDS because it does not have the capacity to store or produce telephone numbers to be called using a random or sequential number generator, nor can it dial such numbers. *See* Exhibit 1. at 53:24-54:3, 69:5-72:1, 141:3-11; *see also* Exhibit 2 at 175:21-176:20, 178:9-180:16, 256:2-6. Indeed, the platform itself cannot generate *any* numbers, and is merely a web-based software application that customers including SHAC use to send text messages to specific telephone numbers inputted into the system, not

---

[3] Several courts, including courts in the Ninth Circuit and in this District, have limited the definition of "capacity" to *present*, as opposed to *potential*, capacity, to avoid opening the flood gates to frivolous TCPA claims. *See e.g., Gragg v. Orange Cab Co., Inc.*, 2014 WL 494862 (W.D.Wash. Feb.7, 2014) (reading statute to apply to potential capacity would lead to "absurd result"); *Hunt v. 21st Mortgage Corp.*, 2:12–CV–2697, 2014 WL 4260275, at *5 (N.D.Ala. Feb. 4, 2014) (noting that "[v]irtually every telephone in existence, given a team of sophisticated engineers working doggedly to modify it, could possibly store or produce numbers using a random or sequential number generator."); *Glauser v. GroupMe, Inc.*, 2015 WL 475111, at *8 (N.D. Cal. February 4, 2015) ("…the Court finds that the relevant inquiry under the TCPA is whether a defendant's equipment has the *present capacity* to perform autodialing functions.") (emphasis added).

phone numbers that are randomly or sequentially generated. *See id.* Nor does it have the capacity to send text messages to random or sequentially generated numbers because a customer must create the message and specifically designate the phone number(s) to send the text message to, and the date and time the message will be sent. *See id.* In sum, the platform used to send the texts does not involve use of an ATDS, and any text message sent by SHAC using the CallFire platform therefore cannot be deemed to violate the TCPA.

Plaintiff's allegation that the system used by SHAC is capable of sending text messages "*en masse* to consumers" (Compl. ¶ 12), even if true, is immaterial and does not create a disputed issue as to whether an ATDS was used in this instance. Indeed, Plaintiff's entire case is based on nonbinding commentary by the Federal Communications Commission (FCC). Plaintiff attorneys in TCPA cases (including counsel of record in this case) have sought crippling statutory damages against defendants for simply communicating with their existing customers – all based on a footnote in a FCC declaratory ruling. In that ruling, the FCC suggests that an ATDS "covers any equipment that has the specified *capacity* to generate numbers and dial them without human intervention, regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, SoundBite Communications, Inc.*, CG Docket No. 02-278, 27 FCC Rcd. 15391, 15392 n.5 (Nov. 26, 2012) (italics in original). However, *SoundBite* involved the issue of "prior express consent," did <u>not</u> construe or apply the statutory definition of ATDS under 47 U.S.C. § 227(a)(1), and is not binding on this Court. Rather, *Satterfield*, which is controlling Ninth Circuit precedent, instructs that because the statutory definition of ATDS is "clear and unambiguous," deference to FCC guidance under *Chevron v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), would be inappropriate. *See Satterfield*, 569 F.3d at 951, 953 (stating that "'[the court's] inquiry begins with the statutory text, and ends there

as well if the text is unambiguous'" and where "Congress spoke clearly, we need not look to the FCC's interpretations").

Following *Satterfield*, the term ATDS cannot be construed to apply to any system simply because it can be set up to automatically send texts from a stored list of cell phone numbers, which is unsupported by the plain terms of the statute. *See* 47 U.S.C. § 227(b)(1)(A); *see also Dominguez v. Yahoo! Inc.*, 8 F. Supp. 3d 637, 2014 WL 1096051, at *4-5 & n.6 (E.D. Pa. March 20, 2014) (relying on *Satterfield* in granting Yahoo summary judgment and stating that the statutory requirements of an ATDS "require more than simply that the system store telephone numbers and send messages to those numbers without human intervention.")

The United States District Court, Southern District of California recently upheld this position and granted summary judgment dismissing a purported TCPA class action nearly identical to Plaintiff's here. *Marks v. Crunch San Diego*, 55 F. Supp. 3d. 1288, 2014 WL 5422976 (S.D. Cal. October 23, 2014). The *Crunch* court held that a web-based text messaging platform -- nearly indistinguishable from CallFire's – was not an ATDS because it did not generate random or sequential numbers. *Id.* The Court further held that finding liability under such a system based on the plaintiff's "potential capacity" theory would lead to an "absurd result" *Id.* at *5-6. ("It seems unlikely that Congress intended to subject such a wide swath of the population to a law designed to combat unwanted and excessive telemarketing.") The *Crunch* court disregarded the plaintiff's attempt to rely on *Soundbite* by finding "the FCC does not have the statutory authority to change the TCPA's definition of an ATDS" Id at *4.

This Court should follow the reasoning of *Crunch*, *Dominguez*, and the clear language of the TCPA, and hold that SHAC is entitled to judgment as a matter of law because it did not use an ATDS to send the text message in question to Plaintiff.

**C. SHAC Is Entitled To Summary Judgment Because The Alleged Text Message Was Sent as a Result of Human Intervention.**

Even if this Court were to adopt Plaintiff's expanded extra-statutory definition of an ATDS, SHAC would still be entitled to summary judgment because the text message at issue was sent only through human intervention. As recently held by Chief Judge Phyllis J. Hamilton of this District, "…the capacity to dial numbers _without human intervention_ is required" before any liability under the TCPA can apply. *See Glauser*, 2015 WL 475111, at *10 (N.D. Cal. February 4, 2015) (emphasis added).[4] In *Glauser*, the text messages at issue were triggered only after an individual obtained the recipient's telephone numbers and added them to a specific contact group. The system used by Defendant GroupMe to send such text messages required human intervention and was therefore not an ATDS, warranting summary judgment in the defendant's favor. *Id.* at *11.

---

[4] Notably, the *Glauser* Court correctly found that "the TCPA's language **does appear to support** defendant's argument" that a system without the present capacity to dial numbers randomly or sequentially is not an ATDS and thus non-actionable. Despite this clear statutory language, however, the *Glauser* Court deferred to the FCC's extra-statutory expanded definition of an ATDS pursuant to the Hobbs Act (28 U.S.C. § 2342(1)). Defendant respectfully submits that such deference to the FCC under the Hobbs Act is improper in this instance, as "[the court's] inquiry begins with the statutory text, and ends there as well if the text is unambiguous…[where] Congress spoke clearly, we need not look to the FCC's interpretations." *See Satterfield*, 569 F.3d at 951, 953; *see also Marks v. Crunch*, 2014 WL 5422976 at *2 ("the FCC does not have the statutory authority to change the TCPA's definition of an ATDS…Section 227(a) [of the TCPA] does not include a provision giving the FCC rulemaking authority."). Reliance on the Hobbs Act to apply a broader definition of ATDS would read out "random or sequential number generator" from the statute, which would require legislative authority beyond this Court (or the FCC's) purview. Further, the FCC commentary cited by *Glauser* addresses only "predictive dialers" (a specific type of technology which predicts when a live person will answer the phone), and has no direct relevance to Plaintiff's allegations or to web-based text messaging platforms in general. Other than predictive dialers, the FCC has *never* explicitly ruled that equipment that merely dials numbers from a list constitutes an ATDS. But regardless of which ATDS definition is applied, SHAC would nonetheless be entitled to summary judgment under the "human intervention" exception found by both *Glauser* and *WhisperText*, and as outlined herein.

Magistrate Paul S. Grewal of this District recently dismissed all claims alleged against Defendant *Whispertext* on similar grounds. *See McKenna v. WhisperText*, No. 5:14-CV-00424-PSG, 2015 WL 428728 (N.D. Cal. Jan. 30, 2015). The *WhisperText* order confirmed that no TCPA liability can apply where a platform sends text messages "only at the user's affirmative direction to recipients selected by the user." *Id.* at *8. "Under such circumstances, *the action taken is with human intervention* – disqualifying the equipment at issue as any kind of ATDS." *Id.* (emphasis added). Even the mere act of uploading customer telephone numbers to a database requires "human curation and intervention," thus defeating liability under the TCPA. *Id.* at *10-11, *citing Marks v. Crunch*, 2014 WL 5422976 at *3.

This Court should reach a similar outcome. Here, Plaintiff was a customer of SHAC who provided his phone number to SHAC.[5] At each stage of the process prior to Plaintiff's receipt of the text message at issue, from the actual collection of his phone number, manual entry of the phone number into SHAC's transportation system, manual transfer of the phone number into the CallFire database, physically drafting and typing the message content, determining the timing of the message, and actually clicking "send" on the website to transmit the message to Plaintiff, "human intervention" was involved in every step. *See* Exhibit 1 at:

- 108:9-13, 112:3-23 (*"numbers are added to [CallFire]…by guests either calling or providing us the phone number."*); ("*where people call to reserve a pickup through our limo service… we have to get a guest contact name, number as part of the process, and those numbers are then later added"* to CallFire.)

[5] SHAC acknowledges that Plaintiff Luna disputes whether SHAC was provided written consent to contact Plaintiff for telemarketing purposes at the telephone number he provided. However, the factual dispute over express written consent is immaterial to the legal arguments in SHAC's instant Motion, as it has no bearing on whether or not an ATDS was used to transmit the text message to Plaintiff.

- 71:7-72:1 (Q: *"Who at SHAC actually inputted the numbers one by one?"* A: *"I have."*)
- 142:7-11 *("I would upload the numbers into the system. Nothing here was done – nothing was automated. I personally created every one of those messages."*),
- 20:14-16 (*"I would personally go into the website, log in, and type the message and send it off through their website."*)
- 139:23-140:8 (Q: *"…in order for the messages to be transmitted, you personally would have to log into the system and your own act of hitting 'send'*? A: *"…I would personally type and send each one of those messages."*).

*see also* Exhibit 2 at:

- 179:18-181:8 *("there is absolutely no way -- there is nothing automatic about CallFire, the platform. Everything has to happen with human intervention. And if contacts are not uploaded to the website and the customer does not hit the submit button and say send out these text messages, nothing happens."*),
- 208:12-209:1 ("*…there is nothing automatic about CallFire.*")
- 256:2-257:18 ("*…the customers get onto their laptops, PDAs, or whatever it is, get to the web site, upload their contacts, decide what to send, when to send it, and CallFire transmits those messages downstream.*")

Indeed, this level of human intervention at multiple stages of the text message transmission process goes far further than the relatively small intervention found to prohibit TCPA liability under both *Glauser* and *WhisperText*.

Accordingly, because the statutory definition of ATDS is "clear and unambiguous," and the platform used by SHAC does not have the capacity to store or produce telephone numbers to be called using a random or sequential number generator, or to dial such numbers, the alleged text was not sent using an ATDS and therefore is not

actionable under the TCPA. Further, even assuming Plaintiff can rely on the non-binding FCC declaratory ruling in *SoundBite* in order to expand the definition of ATDS beyond the clear language of the statute, the text message at issue was sent with human intervention and thus non-actionable under the TCPA.

**IV. CONCLUSION**

For the foregoing reasons, SHAC is entitled to summary judgment as a matter of law.

DATED: May 18, 2015

Respectfully submitted,

GREENBERG TRAURIG, LLP

By /s/Tyler R. Andrews
Mark E. Ferrario
Tyler R. Andrews
Attorneys for defendant,
SHAC, LLC
Email: andrewst@gtlaw.com