Mark E. Ferrario
California Bar No. 104062
Tyler R. Andrews
California Bar No. 250686
Greenberg Traurig, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002
ferrariom@gtlaw.com
andrewst@gtlaw.com

*Counsel for Defendant SHAC, LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHN LUNA, individually and on behalf of all others similarly situated,<br>Plaintiffs,<br>*vs.*<br>SHAC, LLC dba SAPPHIRE GENTLEMEN'S CLUB, a Nevada corporation, CLUB TEXTING, INC., a corporation; and CALLFIRE, INC., a corporation,<br>Defendants. | CASE NO. CV 14-607<br>**DEFENDANT SHAC, LLC'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**<br>Date: June 23, 2015<br>Time: 10:00 a.m.<br>Judge: Hon. Howard R. Lloyd<br>Courtroom: 2 |

# TABLE OF CONTENTS


I. MEMORANDUM OF POINTS AND AUTHORITIES....................................1

A. Introduction ........................................................................1

B. Legal Argument....................................................................3

1. SHAC Did Not Use an ATDS to Send a Text Message to Plaintiff..........................................................................3

(a) Plaintiff's Cited FCC Language is Inapplicable to this Case Under *Satterfield* and Plaintiff's Hobbs Act Argument is Misplaced.............................................4

(b) The FCC Cannot and Did Not "Re-Define" an ATDS .............7

(c) The Stray FCC Commentary Cited by Plaintiff Does Not Apply to the Technology at Issue in This Case..........................8

2. The Text Message Received by Plaintiff Was Sent Through Human Intervention ..........................................................11

II. CONCLUSION..........................................................................166

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984) .......... 4, 5

*Davis v. Diversified Consultants, Inc.*, 36 F. Supp. 3d 217, 225-26 (D. Mass. June 27, 2014) .......... 14

*Dominguez v. Yahoo!, Inc.*, 8 F. Supp. 637 (E.D. Penn. 2014) .......... 4, 6, 7

*Glauser v. GroupMe, Inc.*, No. C 11-2584 PJH, 2015 WL 475111 (N.D. Cal. Feb. 4, 2015) .......... 11, 13

*Gragg v. Orange Cab Co.*, 995 F. Supp. 2d 1189 (W.D. Wash. 2014) .......... 13

*Griffith v. Consumer Portfolio Serv., Inc.*, 838 F. Supp. 2d 723 (N.D. Ill. August 16, 2011) .......... 14, 15

*Hernandez v. Collection Bureau of Am., Ltd.* (2014 WL 4922379) .......... 6

*Johnson v. Yahoo!, Inc.*, Nos. 14 CV 2028, 14 CV 2753, 2014 WL 700512 (N.D. Ill Dec. 11, 2014) .......... 6

*Marks v. Crunch San Diego, LLC*, 55 F. Supp. 3d 1288 (S.D. Cal. 2014) .......... 3, 4, 5, 7, 13

*McKenna v. WhipserText*, No. 5:14-CV-00424-PSG, 2015 WL 428728 (N.D. Cal. Jan. 30, 2015) .......... 13

*Moore v. Dish Network, L.L.C.*, 57 F. Supp. 3d 639 (N.D.W. Va. Oct. 15, 2014) .......... 14

*In the Matter of Rules & Regulations Implementing the TCPA of 1991*, 23 FCC Rcd. 559 (Jan. 4, 2008) .......... 8

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, SoundBite Communications, Inc.*, 27 FCC Rcd. 15391 (Nov. 29, 2012) .......... 3, 9

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) .......... 1, 3, 4, 5, 6

*Schneider v. Chertoff*,
450 F.3d 944 (9th Cir. 2008) ........ 5

*Sterk v. Path, Inc.*,
46 F. Supp. 3d 813 (N.D. Ill. May 30, 2014) ........ 14

*Sterkv. Path, Inc.*,
No. 1:13-cv-02330, Order, Dkt. No. 143 at 3 (N.D. Ill. Aug. 8, 2014) ........ 15

*Swallows Holding, Ltd. v. C.I.R.*,
515 F.3d 162 (3d Cir. 2008) ........ 5

*U.S. v. Mead Corp.*,
533 U.S. 218 (2001) ........ 9

**Federal Statutes**

47 U.S.C. § 227(a) ........ 3, 7

47 U.S.C. § 227(a)(1) ........ 6, 9

**Regulations**

47 C.F.R. § 64.1200(f)(2) ........ 1, 3, 7, 8

**Other Authorities**

18 F.C.C.R. 14014 (2003) ........ 2, 9

23 F.C.C.R. 559 (2008) ........ 11

27 F.C.C.R. 15392 (2012) ........ 11

# I. MEMORANDUM OF POINTS AND AUTHORITIES

## A. Introduction

After receiving one allegedly unwanted text message from SHAC, Plaintiff John Luna – a customer who willingly provided his cell phone number – filed this TCPA lawsuit seeking crippling class wide damages that, if upheld, will effectively bankrupt SHAC for the sin of communicating with its existing customers via a web-based messaging platform. In doing so, Plaintiff attempts to stretch the TCPA's well-defined scope to ensnare conduct Congress never intended to punish. As demonstrated in SHAC's Motion, Plaintiff's TCPA claim fails as a matter of law because (1) SHAC did not send the text message using an automatic telephone dialing system (ATDS), and (2) the text message was sent only through substantial human intervention.

Plaintiff's Opposition fails to identify any material fact in dispute, and instead argues that this Court should ignore the unambiguous text of the TCPA, ignore the binding precedent of the Ninth Circuit, and deny SHAC's Motion based on an incorrect interpretation of FCC commentary. Specifically, Plaintiff argues that stray language in an unrelated FCC opinion creates an "expanded definition" of an ATDS, and urges the Court to adopt this new definition pursuant to the Hobbs Act. Plaintiff is incorrect. His cited FCC commentary is taken out of context and does not re-define an ATDS (nor would the FCC even have the authority to do so). In fact, the FCC's actual regulatory definition of an ATDS has never been changed and remains *exactly the same* as the statutory definition. *See* 47 C.F.R. § 64.1200(f)(2). Further, the FCC language in question relates exclusively to "predictive dialers" and has nothing to do with text message platforms such as SHAC's. But even assuming Plaintiff's argument held merit, this Court need not engage with the stray FCC language at all, because controlling Ninth Circuit precedent requires that this Court's interpretation "begins with the statutory text, and ends there as well" if, as here, "the text is unambiguous." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) ("[where] Congress spoke clearly, we need not look to the FCC's interpretations."). Because the TCPA's definition of an ATDS is

"clear and unambiguous," Plaintiff's cited FCC opinions are inapplicable and his lengthy Hobbs Act analysis is misplaced.

Finally, even if this Court were to fully agree with Plaintiff, disregard the actual statutory ATDS definition, and apply only the cited FCC opinions, summary judgment would still be warranted because Plaintiff's own cited FCC language makes clear that TCPA liability only applies when calls are made "without human intervention." *See, e.g.,* 2003 Report and Order, 18 FCC Rcd. 14014, ¶¶ 131-33 ("[t]he basic function of such equipment . . . [is] the capacity to dial numbers *without human intervention*."). Here, as demonstrated in the Motion, SHAC receives phone numbers only after direct contact with each customer, and each text messages is individually entered, curated, composed, scheduled, and sent out by a SHAC representative. Indeed, recent decisions from this District have dismissed similar TCPA text message actions based on far less "human intervention" than is present here. The Opposition does not contest SHAC's evidence nor distinguish its cited caselaw, but rather argues that these clearly relevant NDCA decisions should be "disregarded" because they somehow weaken FCC authority and "are not the final word on the issue." *See* Opp. at 16-17. Plaintiff's arguments are unavailing and contradictory. Indeed, Plaintiff tries to have it both ways by asserting on the one hand that the Court should disregard the clear statutory ATDS definition in the TCPA, but on the other hand should also disregard *his own cited FCC commentary* when courts apply it in any way contrary to his position because the "human intervention" language does not appear in the TCPA itself. *See* Opp. at 16 n. 14.

Regardless of whether the Court applies the clear text of the TCPA (as required under *Satterfield*), or whether it adopts Plaintiff's "expanded definition" of an ATDS pursuant to FCC commentary, the outcome remains the same. SHAC is entitled to summary judgment as it did not utilize any system with the capacity to generate random or sequential numbers (or to generate numbers at all), and did not send any text messages without direct human intervention at multiple steps in the process. Therefore, SHAC's Motion should be granted.

**B. Legal Argument**

To prevail on his TCPA claim, Plaintiff admits he must demonstrate that SHAC utilized an ATDS in sending the text message at issue. *See* Opp. at 5. If the system is not an ATDS "the TCPA does not apply and summary judgment should be granted, dismissing all TCPA causes of action with prejudice." *Marks v. Crunch San Diego, LLC*, 55 F. Supp. 3d 1288, 1291 (S.D. Cal. 2014).

**1. SHAC Did Not Use an ATDS to Send a Text Message to Plaintiff.**

The TCPA expressly defines an ATDS as "equipment which has the capacity (A) to store or produce telephone numbers to be called ***using a random or sequential number generator***, and (B) to dial such numbers." 47 USC § 227(a). As demonstrated in SHAC's Motion, and as uncontested by Plaintiff, the web-based platform at issue here (the "CallFire System") lacks the capacity to randomly or sequentially generate numbers (or to generate numbers at all). This Court's analysis should therefore "begin" and "end" with this simple statutory analysis, and summary judgment should be granted in SHAC's favor. *Satterfield*, 569 F.3d at 951, 953.

To prevent this outcome, Plaintiff argues that the TCPA's text should be disregarded in favor of a footnote in an unrelated 2012 FCC opinion on what constitutes consent. *See* Opp. at 7 (citing *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, SoundBite Communications, Inc.*, 27 FCC Rcd. 15391, 15392 n.5 (Nov. 29, 2012). Specifically, Plaintiff suggests that, pursuant to the Hobbs Act, the Court must adopt an "expanded definition" of an ATDS which allegedly applies to the text message at issue in this case. Plaintiff is wrong for three reasons. First, this Court need not even consider Plaintiff's cited FCC language because the Ninth Circuit has expressly held the statutory ATDS definition to be "clear and unambiguous" under *Satterfield*. Second, the FCC was never granted the authority by Congress to (and never intended to) "re-define" an ATDS. To the contrary, the FCC's regulatory definition of an ATDS remains identical to the TCPA definition. *See* 47 C.F.R. § 64.1200(f)(2). Finally, even assuming Plaintiff's FCC opinions are considered,

they apply only to "predictive dialers," which are not at issue in this case and have no bearing on SHAC's liability under the TCPA.

*(a)* *Plaintiff's Cited FCC Language is Inapplicable to this Case Under Satterfield and Plaintiff's Hobbs Act Argument is Misplaced.*

In *Satterfield*, the Ninth Circuit held that the TCPA's definition of ATDS is "clear and unambiguous." 569 F.3d at 951. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). Thus, as multiple district courts have held, because *Satterfield* found the statutory definition of an ATDS "clear and unambiguous," any FCC interpretation to the contrary is not binding on this court. *Marks v. Crunch San Diego, LLC*, 55 F. Supp. 3d 1288, 1291 (S.D. Cal. 2014) (holding that the FCC's 2012 commentary interpreting the definition of ATDS "does not bind the courts" because the definition of ATDS is clear and unambiguous.); *Dominguez v. Yahoo!, Inc.*, 8 F. Supp. 637, 643 n.6 (E.D. Penn. 2014) ("In light of the Ninth Circuit's determination, in *Satterfield*, that the statutory text of the TCPA regarding the definition of an ATDS is 'clear and unambiguous,' we are not bound by the FCC's interpretation.")

Plaintiff ignores these holdings and repeatedly asserts that applying *Satterfield* would run afoul of the Hobbs Act because "only courts of appeal have jurisdiction to determine the validity of FCC rulings." *See* Opp. at 8. Plaintiff misconstrues SHAC's argument. SHAC is not attempting to challenge the validity of an FCC ruling. To the contrary, *Satterfield* holds that this Court need not even *consider* the validity of an FCC ruling when the text of a statute is "clear and unambiguous."[1] It simply doesn't apply.

---

[1] Further, as outlined below, Plaintiff's cited FCC opinions (i) are factually inapplicable as they relate only to "predictive dialers," and (ii) do not purport to re-define an ATDS at all. The FCC's official ATDS definition is identical to the TCPA's and has never been changed by rule or otherwise. Therefore, even without *Satterfield's* binding precedent, Plaintiff's Hobbs Act argument would fail because SHAC cannot ask this court to "determine the validity" of an FCC "ruling" that was never made in the first place.

Plaintiff also misapplies the Supreme Court's *Chevron* deference standard. Plaintiff seems to suggest that the Court should look first to his cited FCC commentary, and only *then* look to wording of the TCPA itself to see if it comports with the FCC. Indeed, Plaintiff argues that "there is no Ninth Circuit opinion…holding that FCC rulings can be ignored at the trial court level." *See* Opp. at 1. This puts the cart before the horse. The far more applicable statement is that there is no Ninth Circuit opinion holding that the Hobbs Act somehow overrules *Satterfield*, which is binding precedent on this Court. Under both *Satterfield* and *Chevron's* two part test, courts must <u>first</u> look at Congress' intent through the language of the statute itself. If such language is clear and unambiguous, <u>the court's inquiry ends</u> and the plain meaning of the statute governs. *Schneider v. Chertoff*, 450 F.3d 944, 952 (9th Cir. 2008) (*citing Chevron*, 467 U.S. at 842-43); *see also Satterfield*, 569 F.3d at 951 ("Thus, [the court's] inquiry begins with the statutory text, and ends there as well if the text is unambiguous."); *Swallows Holding, Ltd. v. C.I.R.*, 515 F.3d 162, 170 (3d Cir. 2008) (holding that under *Chevron*, if the statutory language is clear and unambiguous, the court's inquiry ends and the plain meaning of the statute governs the action). Only if the statute is "silent or ambiguous with respect to the issue at hand" must the court apply the second step of the *Chevron* test and defer to the FCC. *Schneider*, 450 F.3d at 952.

Here, because binding Ninth Circuit law holds that the ATDS definition is clear and unambiguous, this Court's inquiry ends: the plain language of the statute governs, and the Court need not reach the second step of *Chevron*. Indeed, the only two cases that have ever analyzed *Satterfield* in light of *Chevron* deference comport precisely with SHAC's position. In *Marks v. Crunch San Diego, LLC*, the court specifically cited to both *Satterfield* and *Chevron* in reaching the conclusion that the FCC's 2003 "statutory interpretation of an ATDS is not binding on the Court." 55 F. Supp. 3d at 1291. Similarly, in *Dominguez v. Yahoo!, Inc.*, the court cited both *Satterfield* and *Chevron* in reaching the same conclusion: that in "light of the Ninth Circuit's determination, in *Satterfield*, that the statutory text of the TCPA regarding the definition of an ATDS is

"clear and unambiguous," [the court is] not bound by the FCC's interpretation." 8 F. Supp. at 643 n.6.[2]

Plaintiff next argues that *Satterfield* should not apply because it primarily analyzed the "actual use versus capacity" dispute, which is not at issue in this case. *See* Opp. at 11-12. But this distinction is irrelevant. In *Satterfield*, the court examined the same statutory ATDS definition at central issue here, 47 U.S.C. § 227(a)(1). As the starting point for the court's analysis it "first look[ed] to the language of the statute to determine whether it has a plain meaning." *Satterfield*, 569 F.3d at 951. Only after concluding that the "statutory text [was] clear and unambiguous," did the court move on to the disputed "actual use versus capacity" issue in that case. Thus, a necessary element of the court's analysis was first determining whether the statute defining an ATDS was clear and unambiguous; which it was. And, because that is the only portion of the holding SHAC relies on, *Satterfield* is directly applicable here.

Try as he might, Plaintiff cannot escape the binding precedent of *Satterfield*, nor can he turn the Supreme Court's two step *Chevron* analysis on its head by arguing this Court should look to FCC commentary *before* it applies the text of the TCPA. There is no reason for the Court to engage with the language in Plaintiff's cited FCC opinions (which are not even factually applicable to this case) when the statutory text at issue is clear. Put simply, Plaintiff's suggested "expanded definition" of an ATDS is not in the

---

[2] Plaintiff's reliance on *Hernandez v. Collection Bureau of Am., Ltd.,* (2014 WL 4922379) to bolster his Hobbs Act argument is misplaced because the *Hernandez* court did not conduct a *Chevron* analysis to determine whether the FCC's commentary was binding in the first instance. The court cited *Chevron*, but only in the context of reciting defendant's argument. 2014 WL 4922379, at *3. Plaintiff's citation to *Johnson v. Yahoo!, Inc.*, Nos. 14 CV 2028, 14 CV 2753, 2014 WL 700512 (N.D. Ill Dec. 11, 2014) is similarly misplaced because, unlike this Court, that court was bound by Seventh Circuit authority conflicting with *Satterfield* (yet the *Johnson* court tellingly agrees with SHAC that "if tasked with applying only the statute's language, I would conclude that [the defendant's] system does not constitute an ATDS.") *Id.* at *3.

TCPA and thus is not binding on this Court. *Marks*, 55 F. Supp. 3d at 1291; *Dominguez*, 8 F. Supp. at 643 n.6.

*(b) The FCC Cannot and Did Not "Re-Define" an ATDS*

Even assuming *Satterfield* does not bind this Court to the text of the TCPA, Plaintiff's Hobbs Act argument would still fail because the FCC never intended to "re-define" an ATDS, nor does it even have the authority to do so.

Plaintiff suggests that Congress allowed the FCC to issue "interpretive rules" pertaining to the TCPA, including the ability to define statutory terms. Plaintiff is mistaken. Indeed, Plaintiff's own cited authority demonstrates that Congress never intended the FCC to modify or "interpret" the definition of an ATDS (which is contained in 47 USC § 227(***a***)). To the contrary, the TCPA holds that "the FCC shall prescribe regulations to implement the requirements" of *subsection* 227(***b***) *only***.** Because the ATDS definition Plaintiff seeks to expand is contained only in 227(a) and *not* in 227(b), the FCC was never "bestowed with the authority" to change this definition as Plaintiff suggests. *See Marks* 55 F. Supp. 3d. at 1291 ("Section 227(a) in contrast to § 227(b) and (c), does not include a provision giving the FCC rulemaking authority… *It is therefore undeniable that any FCC attempt to modify the statutory language of § 227(a) is impermissible*." (emphasis added)).

More importantly, the FCC's own official regulatory definitions prove that it never intended to change or expand this definition. In fact, the FCC's codified ATDS definition remains consistent with the TCPA statute, in providing that "[t]he terms *automatic telephone dialing system* and *autodialer* mean equipment which has the capacity to store or produce telephone numbers to be called ***using a random or sequential number generator*** and to dial such numbers." 47 C.F.R. § 64.1200(f)(2) (emphasis added). If the FCC's position were that an ATDS now includes *all devices* that simply dial numbers from a stored list, it would have amended section 64.1200(f)(2) to say so; that it did not underscores that the FCC's ATDS definition remains consistent

with the statutory definition, and that the FCC never purported to change it.[3] As such, Plaintiff's argument on this point fails at the outset.

*(c) The Stray FCC Commentary Cited by Plaintiff Does Not Apply to the Technology at Issue in This Case*

To accept Plaintiff's argument, this Court would have to (i) construe stray language in an FCC footnote as though it were formal FCC rulemaking, (ii) ignore the text of the actual rule promulgated by the FCC and codified in the C.F.R., and (iii) assume that the FCC intended to change a definition where no statutory authority exists to do so.

But even setting aside the dispositive fact that the FCC's actual C.F.R. definition of an ATDS remains identical to the TCPA's definition of an ATDS, Plaintiff's argument still fails because his cited FCC opinions do not even relate to the technology at issue in this case. To the contrary, the FCC commentary that Plaintiff urges this Court to adopt relates only to "predictive dialers," which are specialty devices used solely to initiate voice phone calls – not text messages – and which are undisputedly not at issue here. *See In the Matter of Rules & Regulations Implementing the TCPA of 1991*, 23 FCC Rcd. 559, 563 n.23 (Jan. 4, 2008) ("a predictive dialer is equipment that dials numbers and, when certain computer software is attached, *assists telemarketers in predicting when a sales agent will be available to take calls*.") Plaintiff does not contend that the website used by SHAC is a predictive dialer (nor could it be), so these opinions simply do not apply.

Plaintiff nonetheless attempts to expand the FCC's language about predictive dialers to cover the text message at issue here. He cannot do so.[4] The FCC has never suggested that a web-based text messaging system that merely contacts existing

---

[3] Contrary to Plaintiff's position, the Final Rules attached as Appendix A to the 2003 Report and Order show no changes to section 64.1200(f)(2).

[4] Tellingly, none of Plaintiff's cited authority (which allegedly suggests that this Court defer to FCC commentary rather than simply applying the text of the TCPA) actually analyzes the FCC commentary itself, nor does it reference the existing FCC regulatory definition of an ATDS at 47 C.F.R. § 64.1200(f)(2), which has never been "expanded."

customers (but does not randomly or sequentially generate phone numbers) is nonetheless an ATDS. Indeed none of Plaintiff's cited FCC opinions hold that an ATDS was somehow being "re-defined" for all purposes and for all possible technologies beyond predictive dialers.[5]

Moreover, the FCC did not expand any language regarding predictive dialers through the 2012 *SoundBite* declaratory ruling, as Plaintiff incorrectly suggests. *SoundBite* only decided what constitutes "prior express consent" – which is not at issue here -- and did not address what constitutes an ATDS nor construe the statutory definition under 47 U.S.C. § 227(a)(1). Plaintiff relies on a footnote that loosely paraphrased language from the 2003 Report and Order discussing predictive dialers. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, SoundBite Communications, Inc.*, CG Docket No. 02-278, 27 FCC Rcd. 15391, 15392 n.5 (Nov. 26, 2012) (citing to the predictive dialer decisions and stating that an ATDS "covers any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists"). The FCC has *never* extended its predictive dialer analysis to text messaging platforms, and in any event, the *SoundBite* footnote is dicta and not entitled to such broad deference. *See U.S.*

---

[5] Plaintiff cannot extrapolate earlier FCC language to apply to a very different type of technology that was never the basis for the FCC's findings. The FCC explained that it only sought to "ensure that the prohibition on *autodialed calls* not be circumvented" by predictive dialers. *See* 18 FCC Rcd 14014, at 14092-93 (2003) ¶133 (citing to the *statutory definition* of an ATDS). The FCC was clearly not attempting to label equipment such as the CallFire System as an ATDS. Rather, the FCC was seeking to prevent telemarketers from skirting around the TCPA's requirements by uploading large amounts of unknown numbers from a database and then generating numbers to automatically dial from that "given set of numbers" using a "predictive dialer." *Id.* It does not follow that any device that dials numbers from a list constitutes an ATDS even if it does not have the capacity to generate numbers randomly or sequentially (or at all), which is a misreading of the FCC documents and inconsistent with Ninth Circuit precedent under *Satterfield.*

*v. Mead Corp.*, 533 U.S. 218, 230-31 (2001) (stating that "the overwhelming number of our cases applying *Chevron* deference have reviewed the fruits of notice-and-comment rulemaking or formal adjudication"; holding that a tariff classification ruling letter issued by the U.S. Customs Service was not entitled to *Chevron* deference). The FCC, as a federal agency, cannot issue a formal rule by way of a footnote in an unrelated opinion, and it defies logic and the principles of administrative law to pretend that the FCC did so in *Soundbite*. *See, e.g.*, Natural Resources Defense Council v. U.S. E.P.A., 279 F.3d 1180, 1186 (9th Cir. 2002) (noting that under the APA, 5 U.S.C. § 553(b)-(c), an agency must fairly apprise interested persons of the issue before it, and holding a final rule to be invalid where interested parties could not reasonably have anticipated it).

Nonetheless, even if *Soundbite* arguably applies to technology beyond predictive dialers, the footnote in question makes plain that equipment must have the "specified *capacity to generate numbers*" (as required by the statute), and here it is undisputed that the CallFire System used by SHAC lacks the capacity to generate *any* phone numbers (whether randomly, sequentially, or otherwise). *See* Cohen Depo, Motion at Ex. 2, 141:3-8 (*Q: There's no capacity on the EZTexting website to generate telephone numbers? A: No, neither Club Texting or EZTexting creates or provides any phone numbers*). Plaintiff has not contradicted this testimony and has not pointed to any evidence that the CallFire System "generates numbers" at all. Instead, Plaintiff tellingly omits this key term from his Opposition and argues only the immaterial fact that "CallFire's system…has the capacity to *store and dial* telephone numbers from a calling list." *See* Opp. at 16 (emphasis added). But "store and dial" does not mean "generate." Indeed, as discussed below, the only way such "stored and dialed" numbers were "generated" in the first place was not by the web-based CallFire System, but by individual contact with each SHAC customer. *See* Cohen Depo, Ex. 2, 108:3-4 (*"Those numbers were given to us by the customers."*); 112:10-13 ("*A guest would show up and provide us their phone number so that they can receive future messages about things that we have going on.*").

Therefore, even accepting each of Plaintiff's FCC arguments as true, applying the Hobbs Act, disregarding *Satterfield*, disregarding the FCC's own formal rulemaking as codified in the actual C.F.R. definition of an ATDS, and reading the 2012 *Soundbite* footnote to remove the "random and sequential" requirement from any conceivable messaging system, SHAC would still not be liable under the TCPA, as the web-based CallFire System does not generate numbers in any form, and is therefore not an ATDS.

**2. The Text Message Received by Plaintiff Was Sent Through Human Intervention**

As demonstrated in the Motion, SHAC is entitled to summary judgment regardless of whether this Court follows the binding precedent of *Satterfield*, or whether it disregards the TCPA's statutory language and instead adopt an "expanded definition" of an ATDS pursuant to FCC commentary. That is because the FCC commentary Plaintiff seeks to apply makes clear that "'…the capacity to dial numbers *without human intervention* is required' before any liability under the TCPA can apply." *See Glauser*, 2015 WL 475111, at *10 (*citing* 23 F.C.C.R 559, 566 (2008), 27 F.C.C.R. at 15392 n.5 (2012)).

Here, SHAC's Motion presents uncontroverted testimony from CallFire's own person most knowledgeable that "there is nothing automatic about [the Callfire System]. *Everything has to happen with human intervention*." *See* Thinakaran Depo., Ex. 2 at 179;18-181:8 (emphasis added). SHAC's Motion also demonstrates that every step of its messaging process, from individual contact with customers, gathering each specific number, logging in to the CallFire website, manually inputting numbers into the system, curating which numbers receive which messages, drafting the content of each message, determining when to send each message, and actually transmitting the message, is done with human intervention and not automatically. *See* Cohen Depo., Ex. 1 at 108:9-13, 112:3-23 (*"numbers are added to [CallFire]…by guests either calling or providing us the phone number."*); (*"where people call to reserve a pickup through our limo service… we have to get a guest contact name, number as part of the process, and those numbers*

*are then later added"* to CallFire.); 20:14-16 (*"I would personally go into the website, log in, and type the message and send it off through their website."*), 71:7-72:1 (Q: *"Who at SHAC actually inputted the numbers one by one?"* A: *"I have."*), 108:9-13, 112:3-23 (*"numbers are added to ClubTexting/EZTexting…by guests either calling or providing us the phone number."*); 142:7-11 *("I would upload the numbers into the system. Nothing here was done – nothing was automated. I personally created every one of those messages."*), 139:23-140:8 (Q: *"…in order for the messages to be transmitted, you personally would have to log into the system and your own act of hitting 'send'*? A: *"…I would personally type and send each one of those messages."*).

Plaintiff's Opposition fails to rebut any of this human intervention evidence. Instead Plaintiff asserts only that a tangential feature of the CallFire website – the ability to schedule a specific message to be sent at a later specified time – somehow negates the substantial human intervention involved because it demonstrates a "capacity" to automate the very last step. *See* Opp. at 16. This argument misconstrues CallFire's testimony.[6] Just because the CallFire website offers an added feature to schedule future messages "without *further* action" does not mean that any human intervention leading up to its use is somehow erased from an ATDS analysis. Indeed, this feature has no bearing on (i) how numbers were individually added, (ii) how numbers were individually curated, (iii) how the messages were individually drafted, (iv) how the specific messages were selected for each recipient or group, (v) how the website was separately logged into for

[6] Plaintiff also misconstrues the capacity of modern cellphones in attempting to distinguish them from the CallFire System and downplay fears of a TCPA slippery slope. *See* Opp. at 17 n.15. Far from operating "purely in real time," and sending a message only when someone hits "send," a "typical person's iPhone" has *dozens if not hundreds* of common apps and software options with the capacity to schedule text messages for later dates, send recurring messages, send batch messages, and add numbers to existing recurring messages. Just a small sample of these end-user text messaging apps for the iPhone alone (which are nearly indistinguishable from the capacities of the CallFire System) include: Autotext, SMS Scheduler Pro, Auto Schedule SMS Helper, TxTot, iSchedule, TextMinder, Later, Fast Msg, IFTTT, Capsule, iDelay Messages, NEXT Messaging, and MassGroupTextScheduler.

each use, (vi) how the specific transmission details were entered for each message, or (vii) what message was ultimately received by SHAC's customers. *See* Cohen Depo., Ex. 1 at 108:9-13; 112:3-23; 20:14-16; 71:7-72:1; 108:9-13; 112:3-23; 142:7-11; 139:23-140:8; Thinakaran Depo., Ex. 2 at 179;18-181:8. Each of these steps requires human intervention and there would simply be no message – whether sent today or scheduled for tomorrow -- without that intervention. In fact, the capacity to "send at a later time" only bolsters SHAC's human intervention argument because it creates yet *another* variable to be specified by the sender (the exact date and time the message should be received) rather than a purely automated process of sending messages at unknown future times and without any human involvement.

Put simply, Plaintiff provides this Court with no basis to deny SHAC's Motion. Courts throughout the Ninth Circuit have disposed of TCPA lawsuits based on the same or even substantially less human interaction than that present here. For example, in *Gragg v. Orange Cab Co.*, 995 F. Supp. 2d 1189 (W.D. Wash. 2014), the court found the text message system was not an ATDS where the *only* human intervention was a cab driver clicking "accept" on a computer screen within their cab. Unlike here, even the content of that message was computer generated and sent automatically to the customer. *See generally*, *Id*; *see also Marks* 55 F. Supp. 3d at 1289 (defendant Crunch not liable where – just like SHAC here – it manually uploaded customers' phone numbers into a web-based platform, drafted the text message to be sent, and selected the specific time/date on which the message would be sent.); *McKenna*, 2015 WL 428728 at *10-11 (uploading customer telephone numbers to a database requires "human curation and intervention" *citing Marks*); *Glauser*, 2015 WL 475111 at *6 (no ATDS where the system "never sent messages without human intervention.")

Faced with the unambiguous holdings of cases in this circuit and district that validate SHAC's human intervention argument, Plaintiff asks the Court to simply "disregard" such precedent. *See* Opp at 16. In fact, rather than attempting to distinguish the facts of Judge Hamilton's holding in *Glauser* and Judge Grewal's holding in

*McKenna*, Plaintiff asserts that "they must be ignored" because they "create a collateral-attack-end-run around the Hobbs Act." *See* Opp. at 17. Plaintiff is wrong, and does not cite to any authority suggesting that *Glauser* or *McKenna* improperly found human intervention to exist under Plaintiff's own cited FCC opinions.[7]

Instead, Plaintiff cites to non-binding and easily distinguishable cases from other circuits. *Moore v. Dish Network, L.L.C.*, 57 F. Supp. 3d 639 (N.D.W. Va. Oct. 15, 2014); *Davis v. Diversified Consultants, Inc.*, 36 F. Supp. 3d 217, 225-26 (D. Mass. June 27, 2014); and *Griffith v. Consumer Portfolio Serv., Inc.*, 838 F. Supp. 2d 723, 726-27 (N.D. Ill. August 16, 2011) each involved a "predictive dialer" for automated phone calls, not text messages, and are thus completely inapplicable to this case. Indeed, the court in *Davis* found the predictive dialer in question to be an ATDS because the system's default setting was for "*sequential dialing,*" and the Court did not even conduct a human intervention analysis. Further, the system in *Moore* was found to be an ATDS based on the fact that the only human involvement was typing a list of numbers into software which then *automatically* transferred them to dialer hardware, which then in turn *automatically* made calls without any human intervention or involvement whatsoever. *Moore* at 654-55. Plaintiff's final citation to *Sterk v. Path, Inc.*, 46 F. Supp. 3d 813 (N.D. Ill. May 30, 2014) -- the only cited case involving text messages -- was bound by Seventh Circuit law, limited its analysis to whether a system compared to a "predictive dialer" used by telemarketers, and is also factually distinguishable for the same reasons as *Moore*, *Davis*, and *Griffith*; namely, the automated dialing system at

---

[7] Amazingly, after spending the majority of his Opposition arguing that the Court cannot follow *Satterfield* nor apply the clear statutory ATDS definition under the TCPA due to FCC opinions and the Hobbs Act, Plaintiff now reverses course and argues that SHAC's cited cases finding human intervention cannot be followed because "human intervention nowhere appears within the TCPA's definition of an ATDS" but rather appears only in an FCC opinion. *See* Opp. at 16 n.14. Plaintiff cannot have it both ways. If *Satterfield* applies (as it should) SHAC wins under the plain terms of the TCPA. If *Satterfield* does not apply, the "human intervention" standard appears in the very FCC authority Plaintiff urges this Court to adopt in lieu of *Satterfield*.

issue uploaded lists of numbers from individual users and required no human intervention by the defendant whatsoever. *Id*., at 818-19.[8]

Here, the web-based CallFire system required SHAC to individually curate and input both the phone numbers of customers, the content of each text message sent, the numbers to which each text would apply, and the timing of the delivery. Moreover, the numbers themselves were only uploaded after each SHAC customer individually provided them to SHAC, and a SHAC employee manually entered each number into a form that was later (again manually) uploaded via the CallFire website. *See* Cohen Depo., Ex. 1. It was literally impossible for the CallFire System to send a single message without human intervention. *See* Thinakaran Depo., Ex. 2 at 179;18-181:8. Therefore, SHAC's conduct falls squarely in line with the human intervention discussions in *Gragg, Marks, McKenna*, and *Glauser* from this circuit and district. Plaintiff has not contested SHAC's evidence and his attempts to divert the Court's attention to inapplicable non-binding district court opinions falls flat.

//

//

//

//

---

[8] In fact, Plaintiff cites to the wrong *Sterk* decision. Upon reassignment, the new Judge in *Sterk* certified the issue for interlocutory appeal to the Seventh Circuit and found the plaintiff's argument (and the court's earlier reading) of the FCC's *Soundbite* ruling to be "incomplete" because the system must have the "*capacity to generate numbers*" by some means. *See Sterkv. Path, Inc.*, No. 1:13-cv-02330, Order, Dkt. No. 143 at 3 (N.D. Ill. Aug. 8, 2014). Here, as testified by CallFire's representative and as uncontroverted by Plaintiff, the CallFire website has no capacity to generate numbers at all, whether randomly, sequentially, or otherwise. As such, the complete record in *Sterk* only supports SHAC's Motion.

## II. CONCLUSION

For the foregoing reasons, SHAC is entitled to summary judgment as a matter of law.

DATED: June 8, 2015

Respectfully submitted,

GREENBERG TRAURIG, LLP

By /s/Tyler R. Andrews

Mark E. Ferrario
Tyler R. Andrews
Attorneys for defendant,
SHAC, LLC
Email: andrewst@gtlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was duly served upon the Plaintiff through his counsel, by means of electronic delivery through CM/ECF, on the date indicate below:

Served electronically through CM/ECF:

| | |
|---|---|
| Michael J. Jaurigue, Esq. | Michael@jlglawyers.com |
| Abigail A. Zelenski, Esq. | abigails@jlglawyers.com |
| David Zelenski, Esq. | david@jlglawyers.com |

DATED this June 8, 2015

/s/ Lee Hutcherson
AN EMPLOYEE OF GREENBERG TRAURIG, LLP