*E-Filed: August 19, 2015*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN LUNA,

    Plaintiff,

    v.

SHAC, LLC, dba SAPPHIRE GENTLEMEN'S CLUB; et al.,

    Defendants.

Case No. 14-cv-00607-HRL

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 85

In February 2014, John Luna brought suit against Shac, LLC, dba Sapphire Gentlemen's Club, Club Texting, Inc. and CallFire, Inc. for violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Shac, the sole remaining defendant, moves for summary judgment. Dkt. No. 85. Plaintiff filed an opposition and Shac filed a reply. Dkt. Nos. 96, 97. In addition, Plaintiff filed two notices of new authority.[1] Dkt. Nos. 98, 101. All parties have expressly consented to having all matters proceed before a magistrate judge. A hearing was held on June 23, 2015. Based on the moving and responding papers, as well as the arguments presented at the hearing, the Court grants the motion for summary judgment.

---

[1] Plaintiff's request for judicial notice is granted. *See* Fed. R. Evid. 201; *Tovar v. Midland Credit Mgmt.*, No. 10-CV-2600 MMA (MDD), 2011 WL 1431988, at *2 (S.D. Cal. Apr. 13, 2011); *Michael v. New Century Fin. Servs.*, No. 13-CV-03892 BLF, 2014 WL 4099010, at *3 (N.D. Cal. Aug. 20, 2014).

## BACKGROUND

Shac operates the Sapphire Gentlemen's Club in Las Vegas, Nevada. Shac engaged CallFire, a third-party mobile marketing company, to provide a web-based platform (here, EXTexting.com) for sending promotional text messages to its customers. Andrews Decl., Exh. 1, at 19, 53-54; Exh. 2, at 68.

Sending text messages through EXTexting.com involved multiple steps. First, an employee of Shac would input telephone numbers into CallFire's web-based platform either by manually typing a phone number into the website, or by uploading or cutting and pasting an existing list of phone numbers into the website. *See id.*, Exh. 1, at 71. In addition, Shac's customers could add themselves to the platform by sending their own text messages to the system. *See* Exh. 1, at 69-72; Exh. 2, at 178. Next, the employee would log in to EXTexting.com to draft and type the message content. *Id.*, Exh. 1, at 20, 142. The employee would then designate the specific phone numbers to which the message would be sent, then click "send" on the website in order to transmit the message to Shac's customers. *Id.*, Exh. 1, at 20, 139-41; *see also id.*, Exh. 2, at 179-81. The employee could either transmit the messages in real time or preschedule messages to be transmitted "[a]t some future date." Zelenski Decl., Exh. 1, at 186-88.

As a result of this process, an allegedly unwanted text message was sent to Plaintiff, a customer of Shac, who had provided Shac with his cell phone number.

The First Amended Complaint (the operative complaint) asserts one claim against Shac, Club Texting, and CallFire: violation of the TCPA. Club Texting has been voluntarily dismissed from this action. CallFire is no longer a defendant to this action, as Plaintiff accepted an offer of judgment and dismissed all claims against CallFire with prejudice. Dkt. No. 82. Shac is the one remaining defendant. Shac moves for summary judgment. Dkt. No. 85.

///

///

## LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. *See Nissan Fire & Marine Ins. Co., Ltd.*, 210 F.3d at 1102. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. *See id.* A genuine issue of fact is one that could reasonably be resolved in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248-49.

"When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" D*evereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 325). Once the moving party meets this burden, the nonmoving party may not rest upon mere allegations or denials, but must present evidence sufficient to demonstrate that there is a genuine issue for trial. *Id*.

///

3

## DISCUSSION

First, Shac argues that it is entitled to summary judgment because the text message was not sent using an automatic telephone dialing system ("ATDS"). Under the TCPA, it is "unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . (iii) to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1). "The term 'automatic telephone dialing system' means equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

Plaintiff and Shac dispute the definition of ATDS. Shac argues that because the definition of ATDS is "clear and unambiguous," the court's "inquiry begins with the statutory text, and ends there as well." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) (internal quotation marks omitted). According to Shac, equipment must have the capacity to store or produce telephone numbers to be called using a random or sequential number generator in order to qualify as an ATDS. Plaintiff argues that Congress has expressly conferred authority on the Federal Communications Commission ("FCC") to issue interpretative rules pertaining to the TCPA, and the FCC has issued several regulations expanding the statutory definition of ATDS. The Court agrees with Plaintiff.

The Hobbs Act, 28 U.S.C. § 2342(1), and the Federal Communications Act, 47 U.S.C. § 402(a), operate together to restrict district courts from invalidating certain actions by the FCC. The Federal Communications Act provides: "Any proceeding to enjoin, set aside, annul, or suspend any order of the Commission under this chapter . . . shall be brought as provided by and in the manner prescribed in [the Hobbs Act]." 47 U.S.C. § 402(a). Under the Hobbs Act, "The

4

court of appeals (other than the United States Court of Appeals for the Federal Circuit) has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of—(1) all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47." 28 U.S.C. § 2342.  In other words, the Hobbs Act jurisdictionally divests district courts from ignoring FCC rulings interpreting the TCPA.  Accordingly, this court must look not only to the statutory language in applying the definition of an ATDS, but also to FCC rulings addressing the same.

In 2003, the FCC noted that, "[i]n the past, telemarketers may have used dialing equipment to create and dial 10–digit telephone numbers arbitrarily," but that "the evolution of the teleservices industry has progressed to the point where using lists of numbers is far more cost effective." 18 FCC Rcd. 14014, 14092 (2003). The FCC found it "clear from the statutory language and the legislative history that Congress anticipated that the FCC, under its TCPA rulemaking authority, might need to consider changes in technologies." *Id*. The FCC concluded that "predictive dialers," which dial numbers from customer calling lists, "fall[] within the meaning and the statutory definition of 'automatic telephone dialing equipment' and the intent of Congress." *Id*. at 14093.

In 2008, the FCC "affirm[ed] that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers," and in 2012, the FCC again confirmed that the statute covered systems with the "capacity to store or produce and dial those numbers at random, in sequential order, or from a database of numbers." 23 FCC Rcd. 559, 566 (2008); 27 FCC Rcd. 15391, 15392 n.5 (2012). Accordingly, through these implementing regulations, the FCC has indicated that the definition of ATDS now includes "predictive dialers," which may dial numbers from preprogrammed lists rather than generate numbers randomly or sequentially.  *See Glauser v. GroupMe, Inc.*, No. C 11-2584 PJH, 2015 WL 475111, at *5 (N.D. Cal. Feb. 4, 2015).

5

Shac argues that even if the court were to agree that the above-cited FCC regulations expand the definition of ATDS, this expanded definition encompasses only predictive dialers, not web-based text messaging platforms, like the one at issue here. However, this district has held that these FCC regulations are not limited to predictive dialers. *McKenna v. WhisperText*, No. 5:14-CV-00424-PSG, 2015 WL 428728, at *3 (N.D. Cal. Jan. 30, 2015); *Nunes v. Twitter, Inc.*, Case No. 14-CV-02843-VC, 2014 WL 6708465, at *1-2 (N.D. Cal. Nov. 26, 2014); *Fields v. Mobile Messengers Am., Inc.*, Case No. 12-C-05160-WHA, 2013 WL 6774076, at *3 (N.D. Cal. Dec. 23, 2013).

In addition, on June 18, 2015, the FCC voted on, and approved, FCC Chairman Tom Wheeler's omnibus proposal under the TCPA. Wheeler's "Fact Sheet" outlining the approved matters states, "as codified at 47 U.S.C. § 227(b)(2)," the "Telephone Consumer Protection Act explicitly empowers the Commission to enforce and interpret its consumer protection provisions," to "review questions related to the meaning of the TCPA's prohibitions," and "to prescribe regulations to implement the statute." First Notice of New Authority, Exh. 1, at 2. The FCC voted to "affirm[]" the current definition of "autodialer" "ensur[ing] the robocallers cannot skirt consumer consent requirements through changes in calling technology design or by calling from a list of numbers." *Id.*, Exh. 2, at 2; Exh. 1, at 1. In the Declaratory Ruling and Order following the FCC vote on June 18, 2015, the FCC reiterated that "[i]n the 2003 TCPA Order, the Commission found that, in order to be considered an automatic telephone dialing system, the equipment need only have the capacity to store or produce telephone numbers. The Commission stated that, even when dialing a fixed set of numbers, equipment may nevertheless meet the autodialer definition." Second Notice of New Authority, Exh. 1 ¶ 12 (internal quotation marks omitted). "Internet-to-phone text messaging technology" is expressly included in the definition of "automatic telephone dialing system." *Id.*, Exh. 1 ¶¶ 111-16.

Accordingly, the fact that CallFire's system has the ability to send text messages from

6

preprogrammed lists, rather than randomly or sequentially, does not disqualify it as an ATDS.

Second, Shac argues that it is entitled to summary judgment because the text message was sent as a result of human intervention. As indicated at the hearing, the parties do not dispute the law governing what constitutes "human intervention," nor do they dispute the material facts as to what led up to Plaintiff receiving the text message. Rather, the parties dispute the application of the facts to the law. Shac argues that these undisputed facts constitute human intervention, while Plaintiff argues that they do not.

In its 2008 ruling, the FCC indicated that the defining characteristic of an autodialer is "the capacity to dial numbers without human intervention." 23 FCC Rcd. at 566. In 2012, the FCC further discussed the definition of "autodialer," explaining that it "covers any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." 27 FCC Rcd. at 15392, n.5. Accordingly, the capacity to dial numbers without human intervention is required for TCPA liability. *Glauser*, 2015 WL 475111, at *6.

Here, human intervention was involved in several stages of the process prior to Plaintiff's receipt of the text message, including transferring of the telephone number into the CallFire database, drafting the message, determining the timing of the message, and clicking "send" on the website to transmit the message to Plaintiff. Shai Cohen, Shac's person most knowledgeable, was involved in the process of sending Shac's text messages via the EZTexting website. Andrews Decl., Exh. 1, at 19. Cohen testified that he inputted telephone numbers into CallFire's web-based platform either by manually typing phone numbers into the website, or by uploading or cutting and pasting an existing list of phone numbers into the website. *See id.*, Exh. 1, at 71 ("Q: And who at Shac actually inputted the numbers one by one? A: I have. Q: And who at Shac did the exporting, to the extent exporting was used, input numbers? A: I have. Q: And that's also the case for uploading the numbers from a separate file? A: Yes."). Cohen drafted and typed the

7

message content. *Id.*, Exh. 1, at 20 ("I would personally go into the website, log in, and type the message and send it off through their website."); *id.*, Exh. 1, at 142 ("I would upload the numbers into the system. Nothing here was done—nothing was automated. I personally created every one of these messages."). Cohen personally clicked "send" on the website in order to transmit the messages to Shac's customers, including Plaintiff. *Id.*, Exh. 1, at 139-40 ("Q: . . . in order for the messages to be transmitted, you personally would have to log into the system and your own act of hitting 'send'? A: No, 100 percent. I would personally type and send each one of those messages. Q: Right. So the message couldn't go out unless you logged into the system? A: Correct. Q: And hit 'send'? A: Correct."); *see also id.*, Exh. 2, at 179-81 ("[I]f contacts are not uploaded to the website and the customer does not hit the submit button and say send out these text messages, nothing happens.").

This case is similar to *Glauser* and *McKenna v. WhisperText*, No. 5:14-CV-00424-PSG, 2015 WL 428728 (N.D. Cal. Jan. 30, 2015). In *Glauser*, the court found that "GroupMe obtained the telephone numbers of the newly added group members . . . through the actions of the group's creator" when the numbers were uploaded into the database. *Glauser*, 2015 WL 475111, at *6. The court in *Glauser* concluded that the text messages at issue "were sent to plaintiff as a direct response to the intervention of Mike L., the 'Poker' group creator." *Id.* In *McKenna*, the court found that "Whisper App can send SMS invitations only at the user's affirmative direction to recipients selected by the user." *McKenna*, 2015 WL 428728, at *3-4. Accordingly, the court in *McKenna* held that "under such circumstances, the action taken is with human intervention— disqualifying the equipment at issue as any kind of ATDS." *Id*. at *4.

Plaintiff asserts that *Glauser* and *McKenna* "ruled that the act of uploading customer telephone numbers to a database constitutes human intervention." Opp. at 16. Plaintiff argues that because these two cases "effectively eviscerate the FCC of its power to interpret the TCPA, they should be disregarded." *Id.* Plaintiff urges the court to instead follow several cases that

8

Plaintiff argues have held the contrary: *Moore v. Dish Network, LLC*, 2014 WL 5305960 (N.D. W. Va. Oct. 15, 2014); *Davis v. Diversified Consultants, Inc.*, 36 F. Supp. 3d 217 (D. Mass. 2014); *Sterk v. Path, Inc.*, 46 F. Supp. 3d 813 (N.D. Ill. 2014); and *Griffith v. Consumer Portfolio Serv., Inc.*, 838 F. Supp. 2d 723 (N.D. Ill. 2011).

Plaintiff's argument fails. As an initial matter, the court finds that human intervention was involved in several stages of the process prior to Plaintiff's receipt of the text message, and was not limited to the act of uploading the telephone number to the CallFire database, as Plaintiff argues. As explained above, human intervention was involved in drafting the message, determining the timing of the message, and clicking "send" on the website to transmit the message to Plaintiff.

Moreover, all of the cases cited by Plaintiff were decided outside of this district, and are not binding on the court. They are also distinguishable. In *Davis*, the court found the predictive dialer in question to be an ATDS because the system's default setting was for "sequential dialing," and the court did not conduct a human intervention analysis. *Davis*, 36 F. Supp. 3d at 225-26. In *Moore*, the court found the system to be an ATDS based on the fact that the only human involvement was typing a list of numbers into software, which then automatically transferred them to dialer hardware, which in turn automatically made calls. *Moore*, 2014 WL 5305960, at *13. In *Sterk* and *Griffith*, the automated dialing system at issue uploaded lists of numbers from individual users and required no human intervention by defendant. *Sterk v. Path, Inc.*, 46 F. Supp. 3d at 819-20; *Griffith*, 838 F. Supp. 2d at 727.

Accordingly, because the court finds that the subject text message was sent as a result of human intervention, the court grants summary judgment in favor of Shac.

///

///

///

9

**CONCLUSION**

For the reasons stated above, Shac's motion for summary judgment is granted.

**IT IS SO ORDERED.**

Dated: August 19, 2015

_____
HOWARD R. LLOYD
United States Magistrate Judge